# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MYLAN N.V., HEATHER BRESCH, RAJIV MALIK, ANTHONY MAURO, and KENNETH PARKS,<br><br>Defendants. | Case No. 2:20-cv-00955-NR<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS <u>LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 6

    I.     MISSISSIPPI SHOULD BE APPOINTED LEAD PLAINTIFF .................................. 6

          A.    Mississippi Has Timely Moved For Appointment As Lead Plaintiff .................... 6

          B.    Mississippi Has The Largest Financial Interest In The Relief
               Sought By The Class ............................................................................................. 6

          C.    Mississippi Satisfies The Requirements of Rule 23 ............................................. 7

               1.    Mississippi's Claims Are Typical Of Those Of The Class ........................... 7

               2.    Mississippi Will Fairly And Adequately Protect The Interests
                    Of The Class ................................................................................................ 7

    II.    THE COURT SHOULD APPROVE MISSISSIPPI'S CHOICE OF
          COUNSEL ............................................................................................................. 9

CONCLUSION ................................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                             **PAGE(S)**

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..........................................................................6, 7, 8, 9

*Gaer v. Educ. Mgmt. Corp.*,
  2010 WL 4687791 (W.D. Pa. Nov. 10, 2010) .........................................................7

**STATUTES**

15 U.S.C. § 78u-4(a)(3) ................................................................................ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4)..................................................................................7

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)......................9

The Public Employees' Retirement System of Mississippi ("Mississippi") respectfully submits this memorandum of law in support of its motion for the entry of an Order: (i) appointing Mississippi as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) approving Mississippi's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the Class; and (iii) granting such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

On June 26, 2020, Mississippi filed the first and only complaint on behalf of itself and purchasers of the common stock of Mylan N.V. ("Mylan" or the "Company"). Mississippi filed that complaint to recover the significant losses it and other Mylan investors suffered because of the fraud perpetrated by Mylan and certain of its senior executive officers (collectively with Mylan, "Defendants") in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, Mississippi alleges that between February 16, 2016 and May 7, 2019, inclusive (the "Class Period"), Defendants misrepresented Mylan's adherence to federal quality-control regulations, including at the Company's flagship Morgantown, West Virginia manufacturing facility. Mylan investors, including Mississippi, incurred significant losses when it was revealed through a series of corrective disclosures that Mylan had violated federal quality-control regulations, which forced the Company to dramatically restructure its Morgantown facility, including by, among other things, terminating hundreds of employees.

The PSLRA requires this Court to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which

movant has the "largest financial interest" in the relief sought and whether that movant has made a *prima facie* showing that it meets the adequacy and typicality requirements under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As shown below, Mississippi is the "most adequate" plaintiff by virtue of, among other things, the significant losses it incurred on purchases of hundreds of thousands of shares of Mylan common stock during the Class Period.[1]

In addition to asserting the largest financial interest, Mississippi readily satisfies the relevant requirements of Rule 23 because its claims are typical of all Class members and it will fairly and adequately represent the Class.  Mississippi is a paradigmatic Lead Plaintiff under the PSLRA because it is a dedicated institutional investor with a real financial interest in the litigation, and Mississippi has significant experience serving as a lead plaintiff and supervising the work of outside counsel in other complex securities class actions.  Furthermore, if appointed Lead Plaintiff, Mississippi's prosecution of this action would be managed by the Office of the Attorney General of the State of Mississippi.  As set forth in greater detail in the Declaration of Special Assistant Attorney General Ta'Shia S. Gordon, Mississippi fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake these responsibilities to ensure the vigorous prosecution of this action.[2]  Indeed, through its experience serving as a lead plaintiff, Mississippi has repeatedly demonstrated its ability and expertise in serving as an extraordinarily qualified and effective advocate on behalf of investors in securities class actions.  *See* Burkardt

---

[1] Mississippi's PSLRA-required Certification is attached as Exhibit A to the Declaration of M. Janet Burkardt in Support of the Motion of the Public Employees' Retirement System of Mississippi for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel (the "Burkardt Decl.").

[2] *See* Declaration of Ta'Shia S. Gordon in Support of the Motion of the Public Employees' Retirement System of Mississippi for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel, Burkardt Decl., Ex. B.

Decl., Ex. B ¶¶ 3, 11-12.  This experience has resulted in the successful prosecution of over 20 securities class actions since the passage of the PSLRA, with combined recoveries of over $3.8 billion for investors.  *See id.* ¶ 3.  Moreover, Mississippi has already demonstrated its commitment and ability to effectively prosecute this action, including through its filing of the first and only complaint asserting these claims.

Mississippi has further demonstrated its adequacy by selecting Bernstein Litowitz and Kessler Topaz, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, Mississippi respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

## FACTUAL BACKGROUND

Headquartered in Canonsburg, Pennsylvania, Mylan is the world's second largest generic drug manufacturer, with roughly 55 manufacturing and R&D facilities globally.  Mylan's largest U.S. manufacturing facility is located in Morgantown, West Virginia.  At the start of the Class Period, the Morgantown facility manufactured approximately 17 billion doses of medication every year, comprising 85% of all medicine Mylan sold in the United States in 2016.

In September 2015, a former Mylan employee turned whistleblower disclosed to the Food and Drug Administration ("FDA") that, under the direct leadership of Mylan President Rajiv Malik, Mylan employees had been manipulating drug test results to achieve passing quality-control results, and deliberately corrupting testing data by, among other devices, intentionally crashing Mylan testing computers to evade FDA detection.  On November 7, 2016, after receiving the whistleblower complaint, FDA inspectors arrived at Mylan's Morgantown plant to conduct an 11-day investigation.  Upon investigating, the FDA discovered thousands of random files containing what appeared to be forbidden exploratory tests, a tactic used to prevent detection of quality-control failures.  The FDA also found bins full of shredded documents, including quality-control

records, in areas of the facility where such documentation is supposed to be preserved, and suspected that Mylan laboratory staff had recorded passing scores on drugs that originally fell short of U.S. quality standards.  As a result, on November 18, 2016, the FDA issued Mylan a citation that detailed these findings and put Mylan on notice that remediation efforts were to promptly begin.

Throughout the Class Period, Defendants falsely attributed Mylan's strong financial results, in part, to the performance of its Morgantown plant, which the Company claimed to be a "center[] of excellence."  In addition, Defendants falsely claimed that its Morgantown facility complied with FDA regulations.  As a result of these misrepresentations, shares of Mylan common stock traded at artificially inflated prices during the Class Period.

The truth began to be revealed on June 27, 2018, when *Bloomberg* reported that the FDA had conducted a four-week investigation into the Morgantown facility in the Spring of 2018.  This investigation culminated in Mylan receiving its second citation from the FDA in less than two years.  Specifically, the FDA's investigation detailed 13 significant deficiencies in Mylan's operations and found that, among other violations, Mylan's attempts to remedy its previous deficiencies identified during the FDA's November 2016 inspection were "inadequate," and that Mylan exhibited poor quality-control oversight, major lapses in equipment cleaning, and ineffective controls.  As a result, the price of Mylan's shares declined $1.12 per share, or approximately 3%, from $37.45 per share to $36.33 per share.

On August 8, 2018, Mylan disclosed that it had "undertaken a restructuring and remediation program in Morgantown" that included a "discontinuation of a number of products" and would have a "negative impact on production levels, product supply and operations."  As a

result, the price of Mylan's shares declined $2.62 per share, or approximately 7%, from $39.23 per share to $36.61 per share.

On November 9, 2018, the FDA issued a formal warning letter to Mylan concerning its Morgantown facility, citing "significant violations of current good manufacturing practice[s]" and finding that products at the Morgantown plant were "adulterated." As a result, the price of Mylan's shares declined $1.01 per share, or approximately 3%, from $36.95 per share to $35.94 per share.

On February 26, 2019, Mylan reported an 18% decrease in net sales from the prior year, attributing this shortfall, in part, to its Morgantown plant restructuring, which included the discontinuation of nearly 250 products. In addition, Mylan announced that investors should expect "no significant new product revenue" from the Morgantown plant in 2019. As a result, the price of Mylan's shares declined $4.61 per share, or approximately 15%, from $30.62 per share to $26.01 per share.

Then, on May 7, 2019, Mylan reported a surprise loss for the first quarter of 2019 due, in part, to additional costs associated with the restructuring of Mylan's Morgantown plant. Specifically, the Company reported year-over-year declines of 7% and 15% in its revenues and earnings-per-share, respectively, as Mylan discontinued manufacturing certain products at its Morgantown facility. Mylan also reported severely deficient adjusted free cash flow for the quarter, attributing the decline to, among other factors, "the Morgantown remediation" and disclosed an additional $70 million in expenses tied to the facility's restructuring. As a result, the price of Mylan's shares declined $6.73 per share, or approximately 24%, from $28.26 per share to $21.53 per share.

## ARGUMENT

## I.   MISSISSIPPI SHOULD BE APPOINTED LEAD PLAINTIFF

Mississippi should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 243 (3d Cir. 2001).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant with "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### A.   Mississippi Has Timely Moved For Appointment As Lead Plaintiff

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On June 26, 2020, Mississippi filed the first and only securities class action asserting claims under Sections 10(b) and 20(a) of the Exchange Act against Defendants.  *See* ECF No. 1.  That same day, counsel for Mississippi, Bernstein Litowitz, published a notice on *PR Newswire* alerting investors to the pendency of the action and informing them of the August 25, 2020 deadline to seek appointment as Lead Plaintiff.  *See* Burkardt Decl., Ex. C.  Accordingly, Mississippi has timely moved for appointment as Lead Plaintiff through the filing of this motion.

### B.   Mississippi Has The Largest Financial Interest In The Relief Sought By The Class

Mississippi sustained significant losses on its Class Period purchases of hundreds of thousands of shares of Mylan common stock.  *See* Burkardt Decl., Ex. A.  Mississippi is presently unaware of any other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, Mississippi has the largest financial interest of any qualified

movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**C.   Mississippi Satisfies The Requirements of Rule 23**

In addition to possessing the largest financial interest, Mississippi otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See Cendant*, 264 F.3d at 263 (finding that at the lead plaintiff stage, movants are only required to make a "*prima facie* showing of typicality and adequacy"). Mississippi unquestionably satisfies both requirements.

**1.   Mississippi's Claims Are Typical Of Those Of The Class**

The typicality requirement is satisfied if the Lead Plaintiff movant's claims are not markedly different than those of the other Class members and the legal theories do not differ. *See id.* at 265. Mississippi plainly satisfies this requirement because, like all other Class members, it purchased Mylan common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and suffered damages as a result. *See Gaer v. Educ. Mgmt. Corp.*, 2010 WL 4687791, at *3 (W.D. Pa. Nov. 10, 2010) (typicality satisfied where proposed lead plaintiff "purchased shares in [the company] during the Class Period at prices artificially inflated by the false statements and omissions of the defendants and suffered damages as a result"). Thus, Mississippi's claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other Class members.

**2.   Mississippi Will Fairly And Adequately Protect The Interests Of The Class**

Rule 23's adequacy requirement is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To fairly

and adequately represent the Class, a Lead Plaintiff must be represented by adequate counsel and have no claims that conflict with or are antagonistic to the Class. *See Cendant*, 264 F.3d at 265. Mississippi satisfies these elements because it is a committed institutional investor with significant resources that has experience serving as a fiduciary and possesses a substantial financial stake in the litigation, which further bolsters Mississippi's incentive and ability to vigorously represent the Class. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mississippi and other Class members.

Further, based on its experience serving as a lead plaintiff in other complex securities class actions, Mississippi is aware of the Lead Plaintiff's obligations under the PSLRA to oversee and supervise the litigation separate and apart from counsel. *See* Burkardt Decl., Ex. B ¶¶ 3, 7-8. This understanding is based on, among other matters, Mississippi's successful prosecution of over 20 securities class actions since the passage of the PSLRA, which have resulted in combined recoveries of over $3.8 billion for investors. *See, e.g.*, *In re Merck & Co. Sec., Derivative & "ERISA" Litig.*, No. 05-cv-1151 (D.N.J.) (recovering $1.06 billion); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-cv-397 (S.D.N.Y.) (recovering $500 million); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-cv-397 (D.N.J.) (recovering $473 million). Moreover, Mississippi benefits from the resources and dedicated personnel of the Office of the Attorney General for the State of Mississippi. *See* Burkardt Decl., Ex. B ¶¶ 11-13. These personnel are highly experienced in conducting and supervising complex litigation and have repeatedly demonstrated their ability to oversee counsel and successfully prosecute securities class actions under the PSLRA. *See id*.

In addition, Mississippi is exactly the type of investor Congress sought to empower to lead securities class actions through PSLRA—an experienced and committed institutional investor with

a substantial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Cendant*, 264 F.3d at 244 (identifying Congress's preference for institutional investors as lead plaintiffs).  As such, Mississippi is a sophisticated institutional investor with the experience and resources to adequately litigate the action and supervise Class counsel.

Last, Mississippi has demonstrated its adequacy through its selection of Bernstein Litowitz and Kessler Topaz to serve as Lead Counsel to represent the Class.  As discussed more fully below, Bernstein Litowitz and Kessler Topaz are highly qualified and experienced in securities class action litigation.  Accordingly, Mississippi satisfies the typicality and adequacy requirements of Rule 23.

## II.    THE COURT SHOULD APPROVE MISSISSIPPI'S CHOICE OF COUNSEL

The Court should approve Mississippi's selection of Bernstein Litowitz and Kessler Topaz to serve as Lead Counsel.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to court approval, select and retain counsel to represent the class they seek to represent, and the court should not disturb plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cendant*, 264 F.3d at 276 (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").

Bernstein Litowitz is among the preeminent securities class action law firms in the country.  *See* Burkardt Decl., Ex. D (Bernstein Litowitz's Firm Résumé).  Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288-DLC (S.D.N.Y.), in which settlements totaling more than $6 billion—one of the largest recoveries in securities class

action history—were obtained for the class.  Bernstein Litowitz also served as lead counsel in *In re Cendant Corporation Securities Litigation*, No. 98-cv-1664 (D.N.J.), in which settlements in excess of $3.3 billion in cash and extensive corporate governance reforms were obtained on behalf of the class—the largest securities class action recovery in the Third Circuit.  More recently, Bernstein Litowitz secured a $1.06 billion recovery (inclusive of attorneys' fees) for the class in *In re Merck*, No. 05-cv-1151, in which Mississippi served as co-lead plaintiff.

Other significant examples in which courts in the Third Circuit, including this District, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re Schering-Plough*, No. 08-cv-397 (recovering $473 million for investors with Mississippi serving as co-lead plaintiff); *In re Merck & Co. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (D.N.J.) (recovering $215 million for investors); *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-cv-621 (D.N.J.) (recovering $667 million for investors); *In re DaimlerChrysler Securities Litigation*, No. 00-cv-993 (D. Del.) (recovering $300 million for investors); and *In re EQT Corporation Securities Litigation*, No. 19-cv-754 (W.D. Pa.) (currently serving as co-lead counsel).

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field.  *See* Burkardt Decl., Ex. E (Kessler Topaz's Firm Résumé).  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including in *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (D.N.H.) ($3.2 billion recovery) and *Luther v. Countrywide Financial Corp.*, No. 12-cv-5125 (C.D. Cal.) ($500 million recovery).  Further, Kessler Topaz is currently serving as lead counsel in some of the most significant securities fraud class actions across the country, including *Sjunde AP-Fonden v.*

*General Electric Co.*, No. 17-cv-8457 (S.D.N.Y.), *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.,* No. 18-cv-12084 (S.D.N.Y.), and *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-cv-3187 (N.D. Ill.).  Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Moreover, Bernstein Litowitz and Kessler Topaz have a history of successfully prosecuting securities fraud class actions together.  Bernstein Litowitz and Kessler Topaz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel); *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Bernstein Litowitz as lead counsel and Kessler Topaz as additional counsel); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel); and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with Bernstein Litowitz and Kessler Topaz as co-lead counsel).  Furthermore, Bernstein Litowitz and Kessler Topaz are currently serving together as co-lead counsel in: *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (D.N.J.); *In re Kraft Heinz Securities*

*Litigation*, No. 19-cv-1339 (N.D. Ill.); *In re HP Inc. Securities Litigation*, No. 20-cv-1260 (N.D. Cal.); and *Cohen v. Luckin Coffee Inc.*, No. 20-cv-1293 (S.D.N.Y.).

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve Mississippi's selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the Class.

## **CONCLUSION**

For the reasons stated above, Mississippi respectfully requests that the Court: (i) appoint Mississippi as Lead Plaintiff; (ii) approve Mississippi's selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the Class; and (iii) grant such other relief as the Court may deem just and proper.

DATED: August 25, 2020                    Respectfully submitted

**WEISS BURKARDT KRAMER LLC**

*/s/ M. Janet Burkardt*
M. Janet Burkardt (PA. I.D. #85582)
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219
Telephone: (412) 391-9890
Facsimile: (412) 391-9685
jburkardt@wbklegal.com

*Liaison Counsel for Proposed Lead Plaintiff Public Employees' Retirement System of Mississippi*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

Gerald H. Silk
Avi Josefson
Michael D. Blatchley
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

**KESSLER TOPAZ MELTZER &**
**CHECK, LLP**

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*
*and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2020, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's CM/ECF automated filing system.

*/s/ M. Janet Burkardt*
M. Janet Burkardt (PA. I.D. #85582)