**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE MYLAN N.V. SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR<br><br>CLASS ACTION<br><br>**Electronically Filed** |

**LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**NOTICE OF SUPPLEMENTAL AUTHORITY**

Lead Plaintiff respectfully submits this response to Defendants' Notice of Supplemental Authority regarding the recent decision in *In re Peabody Energy Corporation Securities Litigation*, No. 20-cv-8024 (PKC), 2022 WL 671222 (S.D.N.Y. Mar. 7, 2022). Defendants incorrectly assert that this out-of-Circuit decision supports dismissal of the Complaint because "the district court dismissed certain statements as non-actionable puffery and aspirational statements of compliance." ECF No. 62 (citing *Peabody*, 2022 WL 671222, at *12-14). If anything, *Peabody* undercuts Defendants' motion to dismiss.

*First*, the *Peabody* court dismissed as immaterial, vague, aspirational statements about the defendant company's "commitment" to safety. 2022 WL 671222, at *13. These statements included, for instance, a general assurance that "Safety is the most important—safety for us as employees, safety for our personal lives"; and the defendant CEO's statements merely thanking Peabody's employees for their "continued commitment to ensuring safe, productive operations." *Id*. These generalized aspirational statements about what defendants in *Peabody* ***hoped*** to do are nothing like Defendants' concrete, detailed, and specific statements about what Mylan ***was*** purportedly doing to ensure its drugs were safe, including the "advanced" processes and procedures the Company had supposedly implemented to ensure quality and CGMP compliance.

¶¶67, 258.[1] Defendants here told investors, for instance, that Mylan's "internal teams conduct reviews of all products, start to finish," while, in truth, Mylan failed to perform even nominal quality testing on the vast majority of the drugs manufactured at Morgantown and failed to investigate known product quality deficiencies. ¶¶66, 254, 255. Likewise, Defendants touted Mylan's "state-of-the-art monitoring systems that can automatically evaluate and reject a product that does not meet specifications," but failed to disclose that the Company *systematically bypassed* those testing and monitoring systems by, among other things, shredding and falsifying root cause reports, crashing computer systems, and altering drug sample sets. ¶¶67, 255, 260.

Moreover, while Defendants trumpeted the oversight provided by Mylan's "Quality Council program," including the dozens of CGMP audits it performed, the FDA specifically warned Mylan that the Quality Council had failed to appropriately apply and enforce CGMP standards consistent with both FDA regulations and Mylan's own operating requirements, citing "numerous instances of a lack of appropriate oversight." ¶¶292, 294. Further, Mylan held out its purported ability "to manufacture tens of billions of doses of medicine annually, all to stringent quality standards" as a key competitive advantage that would gird the Company against price erosion; in truth, and as the Company privately admitted, the overwhelming output demands Mylan placed on its flagship Morgantown facility rendered it impossible to comply with its regulatory obligations. ¶¶68, 283.

These statements are a far cry from the vague, aspirational statements about mine safety that the plaintiffs alleged as false in *Peabody*—they are concrete, detailed, and, critically, verifiable. As discussed in a prior submission, *see* ECF No. 58, the statements at issue here parallel those sustained by Chief Judge Hornak in *Howard v. Arconic Inc.*, 2021 WL 2561895, at *11

---

[1] "¶__" refers to a paragraph in the Consolidated Class Action Complaint. ECF No. 39.

2

(W.D. Pa. June 23, 2021) (*see* ECF No. 58) and by the Second Circuit in *Meyer v. Jinkosolar Holdings, Co. Ltd.*, 761 F.3d 245, 251 (2d Cir. 2014) (statements touting advanced monitoring equipment and processes misleading where "in fact the equipment and . . . team were then failing to prevent substantial [regulatory] violations")—precedent that was binding on the *Peabody* court and which the opinion nowhere purported to reject.[2]

*Second*, *Peabody* sustained statements like those at issue in this case, in which Defendants put a specific subject or corporate event "in play," but failed "to disclose the whole truth about the situation." 2022 WL 671222, at *12. For example, the *Peabody* court sustained statements the defendants made following a fire at Peabody's key mine that "noted elevated gas levels but omit[ed] any discussion of smoke or fire at the [mine]." 2022 WL 671222, at *12. As in *Peabody*, Defendants here reassured investors that Mylan was successfully addressing the warning letter it received in connection with its Nashik, India facility—and, indeed, told investors that the Nashik's CGMP violations were an anomaly identified at "just one of Mylan's 50 manufacturing sites"—while failing to disclose that the FDA had issued Mylan a Form 483 identifying the same serious violations at its flagship Morgantown facility and told Defendant Malik directly that those violations failures were "egregious." ¶¶277, 278. Likewise, in April 2018, Defendants told investors that Mylan was "right-sizing" its workforce by laying off 15% of Morgantown's employees, but they failed to disclose that this "right-sizing" was driven by the Company's receipt of a **second** Morgantown Form 483 citing rampant CGMP and data integrity failures, which had forced Mylan to shutter the plant and dramatically reduce its drug portfolio.¶¶164-80, ¶290.  As in

---

[2] Moreover, here, unlike *Peabody*, Plaintiff specifically alleges that Defendants knew the alleged misstatements were false and misleading. ¶¶69, 91-94, 97-106, 132, 157, 201-03; *see Peabody*, 2022 WL 671222, at *13 ("While, as noted, puffery may be actionable if the declarant knew the contrary to be true, plaintiff has not plausibly alleged that the declarants of these general statements and opinions about Peabody's safety culture knew that the statements were false.")

*Peabody*, Defendants continued to withhold "the whole truth about the situation" in their statements to investors. 2022 WL 671222, at \*12.

For the reasons stated above and in Lead Plaintiffs' previous submissions in opposition to Defendants' motion to dismiss, Defendants' motion should be denied.

Dated:  April 11, 2022

Respectfully submitted,

*/s/ Katherine M. Sinderson*
Katherine M. Sinderson (admitted *Pro Hac Vice*)
Abraham Alexander (admitted *Pro Hac Vice*)
Kate W. Aufses (admitted *Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1448
katiem@blbglaw.com
abe.alexander@blbglaw.com
kate.aufses@blbglaw.com

Andrew L. Zivitz (PA I.D. # 76554)
David A. Bocian (PA I.D. # 315542)
Nathaniel C. Simon (PA I.D. # 326467)
**KESSLER TOPAZ
MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056
azivitz@ktmc.com
dbocian@ktmc.com
nsimon@ktmc.com

*Counsel for Lead Plaintiff and
Lead Counsel for the Class*

**WEISS BURKARDT KRAMER LLC**
M. Janet Burkhardt (PA I.D. #85582)
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219

4

Tel.: (412) 391-9890
Fax: (412) 391-9685
jburkardt@wbklegal.com

*Liaison Counsel for Lead Plaintiff*

5

## **CERTIFICATE OF SERVICE**

I, Katherine M. Sinderson, herby certify that on April 11, 2022, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's CM/ECF automated filing system.

_/s/ Katherine M. Sinderson_
Katherine M. Sinderson