**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE MYLAN N.V. SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR |

**DEFENDANTS' RESPONSE TO LEAD PLAINTIFF'S
NOTICE OF SUPPLEMENTAL AUTHORITY**

Nina F. Locker (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Michael S. Sommer (*pro hac vice*)
Jessica L. Margolis (*pro hac vice*)
Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200

*Counsel for Defendants Mylan N.V., Heather
Bresch, Rajiv Malik, and Kenneth Parks*

Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks (collectively, "Defendants") respectfully submit this response to Lead Plaintiff's Notice of Supplemental Authority (Dkt. No. 69) regarding the recent decision in *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, No. 2:20-cv-02155-SRC-CLW, 2022 WL 3273879 (D.N.J. Aug. 11, 2022) ("*Becton II*"). As explained below, Lead Plaintiff's reliance on *Becton II* is misplaced because the facts in *Becton II* are wholly distinguishable from the facts at issue here.

*Becton II* concerns a third amended complaint ("TAC") that remedied pleading defects that the court identified in the previously-dismissed second amended complaint ("SAC"). *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, No. 2:20-cv-02155-SRC-CLW, 2021 WL 4191467 (D.N.J. Sept. 15, 2021) ("*Becton I*").[1] In *Becton I*, the plaintiff alleged that Becton, Dickinson & Co. ("BD") and its officers' statements concerning product improvements, earnings guidance, and risk disclosures were misleading because they failed to disclose that the FDA would require BD to submit a new medical device application (*i.e.*, a 510(k) application) before it could continue to market and sell BD's Alaris infusion pumps. *Becton I*, 2021 WL 4191467, at *11-12. The plaintiff alleged facts showing that the infusion pumps suffered from pervasive defects that BD had attempted to correct through numerous modifications without the required FDA clearances over a five-year period, placing the product at imminent risk of adverse FDA action. *Id.* at *4-6, *11. In dismissing the SAC, the court held that the plaintiff's allegations – supported by former employee ("FE") allegations who were *not* alleged to have had any communication with the individual defendants or representatives of the FDA – failed to demonstrate that the defendants specifically knew the FDA was going to require a 510(k) application to continue selling the Alaris products. *Id.* at *12-13. In addition, the court held that

---

[1] *Becton I* was previously submitted by Defendants as supplemental authority (Dkt. No. 60).

the defendants were under no standalone duty to disclose the Form 483 that BD had received because Form 483s merely provide "interim FDA feedback[.]" *Id.* at *12 n.18 (citation omitted).

In *Becton II*, the TAC presented new allegations from senior level FEs that resolved the pleading defects the court had previously identified in the order dismissing the SAC. The TAC included specific allegations from one FE who personally attended the pivotal meeting between the FDA and BD during which the FDA directly and unambiguously informed BD that it needed to file a 510(k) application for approval before the Alaris products could continue to be shipped, as well as FEs who personally spoke to BD executives who attended that meeting. *Becton II*, 2022 WL 3273879, at *5-6, *11. In addition, the TAC included specific allegations that BD instituted a shipping hold on Alaris products within hours of the meeting with the FDA at the FDA's instruction. *Id.* Supported by these new, highly-specific FE allegations, which were expressly based on the FE's ***personal*** knowledge, the TAC alleged that the defendants' statements that the shipping hold was due to BD's desire to improve the product were misleading because BD failed to disclose the FDA's direct involvement in imposing that hold. *Id.* at *6-8.

With these additional FE allegations, the district court sustained the TAC as to the CEO's statements with respect to the shipping hold and the company's risk factor about the potential impact of adverse FDA determinations. *Id.* at *11-13. The TAC's new allegations made clear that the FDA's directive to institute a shipping hold went far beyond the mere "interim … feedback" at issue in *Becton I*, and instead was an "adverse and inflexible" "determination" requiring disclosure. *Id.* at *11; *cf. Becton I*, 2021 WL 4191467, at *12 n.18. The new FE allegations also supported the requisite strong inference of scienter as to BD's CEO because there were specific allegations from one senior FE who was "*personally involved in reporting up and out*" about BD's meetings with the FDA, and thus knew that the CEO had been briefed on

all FDA meetings and had been informed of the FDA's instruction to institute a ship hold before making his statements. *Becton II*, 2022 WL 3273879, at \*15-17 & n.27 (emphasis added).

Even with the additional FE allegations, however, the *Becton II* court still held that the TAC failed to allege scienter as to the other individual defendants (*id.* at \*19-20), failed to allege scienter as to any statements not specifically drafted by an individual defendant (*id.* at \*16 & n.27), and firmly rejected the application of corporate scienter absent a showing that at least one individual officer acted with scienter (*id.* at \*15 & n.24). This underscores the importance of allegations based on reliable sources with firsthand knowledge of what the individual defendants were told or what they said, did, or thought – which do not exist in the instant case. *See* Mot. at 12-19; Reply at 19-21.

The newly pled allegations in the TAC sustained by *Becton II* are wholly distinguishable from the allegations in the Complaint here. Indeed, the Complaint is analytically identical to the previously dismissed SAC in *Becton I*. Just like in *Becton I*, the Complaint is devoid of any credible FE allegations providing firsthand accounts of FDA meetings or the Individual Defendants' personal knowledge or state of mind as to the events described. Mot. at 12-19; Reply at 19-21.[2] As shown, the Complaint fails to identify a single specific report that the Individual Defendants actually reviewed that was at odds with any compliance-related statements that Mylan made. Mot. at 51-52; Reply at 25. And because the Complaint here is devoid of any credible FE allegations based on personal knowledge, "the heart" of the Complaint is that Mylan should have immediately disclosed the 2016 and 2018 Form 483s, notwithstanding

---

[2] As demonstrated in Defendants' Motion to Dismiss, these deficient FE allegations, as well as those borrowed from *Bottle of Lies* and Bloomberg, do not satisfy the heightened pleading standards that the Third Circuit requires for allegations based on anonymous sources and must be disregarded. Mot. at 12-24, 50-52; Reply at 19-22.

that Defendants were engaged in ongoing discussions with the FDA and reasonably believed they could address and resolve the FDA's concerns in a reasonable period of time. *Becton I*, 2021 WL 4191467, at *11; Mot. at 6-9, 55-58; Reply at 27-28. But as *Becton I* held, Form 483s are "interim FDA feedback" and, without more, do not require disclosure. 2021 WL 4191467, at *12 n.18 (citation omitted); *see also* Dkt. No. 60; Mot. at 26-30; Reply at 2-7, 16-18. Further, the Complaint does not allege facts that, prior to the 2018 Warning Letter (which Mylan promptly disclosed), the FDA provided Mylan with any "adverse and inflexible" "determination" requiring disclosure. *Becton II*, 2022 WL 3273879, at *11; Mot. at 6-10, 12-19; Reply at 2-7.

Lead Plaintiff's reliance on *Becton II*'s holdings as to BD's risk factor and the PSLRA's safe harbor is also unwarranted. BD's risk factor statement was actionable because it warned that adverse FDA action was merely *possible* – which is easily distinguished by the allegation in *Becton II* that the FDA had already *demanded* that BD stop shipping its Alaris products. *Becton II*, 2022 WL 3273879, at *13. Moreover, Mylan's risk factor stands in stark contrast to those issued by Becton; it *affirmatively disclosed* that it had received, and would continue to receive, manufacturing and quality-related observations and FDA correspondence. Mot. at 30-33; Reply at 7-9.[3] Likewise, BD's forward-looking statements were actionable in *Becton II* because – unlike Mylan's disclosures – BD's statements involved representations of present facts and were not accompanied by meaningful cautionary language. *Becton II*, 2022 WL 3273879, at *13-14; Mot. at 44 n.24; Reply at 17-18 & n.15.

The Complaint must be dismissed for pervasive and substantive pleading failures similar to the deficient allegations dismissed in *Becton I*.

---

[3] Contrary to Plaintiff's repeated assertions, *e.g.*, Dkt. No. 61 at 2 & n.2, Mylan never affirmatively represented that it was CGMP compliant. Mot. at 30-33; Reply at 5.

4

Dated: September 15, 2022

Respectfully submitted,

By: /s/ *Nina F. Locker*
Nina F. Locker (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
nlocker@wsgr.com

Michael S. Sommer (*pro hac vice*)
Jessica L. Margolis (*pro hac vice*)
Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
msommer@wsgr.com
jmargolis@wsgr.com
sbassin@wsgr.com

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200
wp@pietragallo.com

*Counsel for Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks*

5

## <u>CERTIFICATE OF SERVICE</u>

I, Nina F. Locker, attorney for Defendants, hereby certify that on this 15th day of September, 2022, I served a true and correct copy of Defendants' Response to Lead Plaintiff's Notice of Supplemental Authority on all parties and/or their counsel via the Court's ECF electronic filing system.

Dated: September 15, 2022

Respectfully submitted,

By: /s/ *Nina F. Locker*
Nina F. Locker (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
nlocker@wsgr.com

Michael S. Sommer (*pro hac vice*)
Jessica L. Margolis (*pro hac vice*)
Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
msommer@wsgr.com
jmargolis@wsgr.com
sbassin@wsgr.com

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200
wp@pietragallo.com

*Counsel for Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks*