WSGR Proposed Edits: 6/16/2023

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE MYLAN N.V. SECURITIES LITIGATION | Master File No. 2:20-cv-00955<br>Judge J. Nicholas Ranjan |

**Fed. R. Civ. P. 26(f) REPORT OF THE PARTIES**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, attorneys for Lead Plaintiff the Public Employees' Retirement System of Mississippi ("Lead Plaintiff") and Defendants Mylan N.V. ("Mylan"), Heather Bresch, Rajiv Malik, and Kenneth Parks (collectively, "Defendants") met and conferred on June 9, X, and X, 2023 to discuss case management issues. Lead Plaintiff and Defendants (the "Parties") jointly submit this 26(f) Report.

As set forth below, after meeting and conferring in good faith, the Parties were unable to reach agreement on several of the items in this 26(f) Report and, accordingly, the Parties' respective positions are set forth below in separate subsections where applicable.

1. **Subjects of Fact Discovery:**

The Parties could not reach agreement on the scope of fact discovery. Accordingly, their respective positions are set forth below.

Lead Plaintiff's Position on the Subjects of Fact Discovery:

- Defendants' statement published in *Bloomberg* on January 31, 2019, that Mylan manufactures all of its products at all of its facilities "under stringent processes, procedures and rigorous testing designed to ensure that they meet the highest standards for quality, safety and efficacy," including concerning the design or implementation of these processes, procedures, and testing, and efforts to ensure that the facilities meet quality, safety, or efficacy standards, including FDA regulations and CGMP during the Relevant Period;

- Defendants' statement published in *Bloomberg* on January 31, 2019, that "Any explicit or implicit suggestion in that Mylan employees circumvented data and quality systems that jeopardized the quality of the medications we manufacture—for time pressures or any other reason—is simply false," including concerning the subject-matter of the *Bloomberg* investigation to which Defendants were responding; any CGMP or data integrity failures at Mylan's facilities during the Relevant Period; the FDA's inspection of and communication with Mylan about its regulatory compliance, including the Forms 483; and the FE allegations in the Complaint;

- practices at Mylan that the Complaint pleads were deceptive or manipulative, including the use of "cooked" data in generic drug applications, corruption of data files, intentionally

crashing computers, altering drug samples, testing into compliance, falsifying CGMP remediation efforts, attempting to dissuade the FDA from more stringent (and public) regulatory actions, and any other efforts to conceal from the FDA and/or investors Mylan's violations of FDA regulations, including those governing manufacturing practices, data integrity, and product quality and safety;

- the materiality of Mylan's compliance or noncompliance with FDA regulations, including CGMP, during the Class Period;

- the materiality of Mylan's manufacturing processes, quality control, and CGMP and data integrity failures during the Class Period;

- Mylan's disclosure obligations under FDA regulations, and Mylan's compliance or noncompliance with such obligations;

- the drops in Mylan's stock price that followed Defendants' disclosures to the market on June 28, 2018; August 8, 2018; February 26, 2019; and May 7, 2019, which the Complaint alleges revealed relevant facts regarding Defendants' (1) materially false and misleading statements and omissions, and (2) deceptive and/or manipulative acts in further of a scheme to deceive the FDA and/or the market;

- investigations by any governmental authority concerning the facts described in the Complaint;

- Mylan's and the Individual Defendants' knowledge and/or state of mind with respect to the above-described topics; and

- whether the Individual Defendants were controlling persons of Defendant Mylan.

Defendants' Position on the Subjects of Fact Discovery:

Defendants respectfully submit that it would be best to defer a discussion on the appropriate subjects for discovery in this matter because Defendants intend to file a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) after their Answer to the Amended Complaint is filed on July 14, 2023—i.e., once the pleadings are closed. Defendants anticipate that their Rule 12(c) Motion, if granted, will be case determinative.

Because Defendants intend to file a Rule 12(c) Motion, Defendants believe that the automatic stay of discovery pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") remains in place unless and until the Court denies Defendants' Motion for Judgment on the Pleadings in whole or in part.

Specifically, the relevant language of the PSLRA discovery stay provides that "all discovery and other proceedings *shall* be stayed during the pendency of *any* motion to dismiss[.]" 15 U.S.C. § 78u-4(b)(3)(B). Numerous decisions across the country recognize that "'a Rule 12(c) motion is a 'motion to dismiss' within the meaning of the PSLRA automatic stay provision,'" and, therefore, the PSLRA stay applies during the pendency of Rule 12(c) motions for judgment on the pleadings. *In re eHealth Inc. Sec. Litig.*, Case No. 20-cv-02395-JST (LJC), 2023 WL 3951178,

2

*2 (N.D. Cal. June 12, 2023) (citation omitted); *see also, e.g.*, *Gardner v. Major Auto. Companies*, No. 11-cv-1664 FB, 2012 WL 1230135, at *4 (E.D.N.Y. Apr. 12, 2012) (same). Accordingly, Defendants intend to file a Motion to Enforce the PSLRA Discovery Stay during the pendency of their Rule 12(c) Motion alongside their Rule 12(c) motion.

Irrespective of the anticipated motion practice outlined above—which may resolve the case without discovery and, therefore, renders a discussion of discovery premature in Defendants' view—Defendants also note that Lead Plaintiff's enumerated subjects for discovery fail to reflect the significantly narrowed scope of the action following the Court's order on Defendants' Motion to Dismiss. *See* ECF Nos. 87, 88. Specifically, the Court has narrowed the claims at issue to one actionable alleged misrepresentation: the statement published in *Bloomberg* on January 31, 2019 that "[a]ny explicit or implicit suggestion that Mylan employees circumvented data and quality systems that jeopardized the quality of the medications we manufacture—for time pressures or any other reason—is simply false." ECF No. 88 at 30, 40.

Despite the fact that the Court narrowed this action to that single statement, Lead Plaintiff purports to seek discovery on exceedingly broad subject matters, including for example and without limitation: quotations from the January 31, 2019 *Bloomberg* article that the Court did not find to be adequately pled[1]; the "practices at Mylan that the Complaint pleads were deceptive or manipulative" without any limitation to the narrowed nature of the action; and purported drops in Mylan's stock price that occurred ***before*** the single remaining statement was made.[2]

Defendants submit that Lead Plaintiffs' expansive position regarding discovery is neither consistent with the Court's order on Defendants' Motion to Dismiss (ECF Nos. 87, 88) nor does it reflect a proportionate approach to discovery as required by Federal Rule of Civil Procedure 26(b)(1).

In the event that the Court does not grant Defendants' Rule 12(c) motion and/or discovery proceeds, Defendants will endeavor to work with Lead Plaintiff to resolve all discovery disputes regarding their discovery requests in good faith.

Defendants anticipate that, if discovery proceeds, the topics of discovery that Defendants would seek include whether this case can or should be certified as a class action; whether the proposed class representative satisfies the requirements of Federal Rule of Civil Procedure 23;

---

[1] Lead Plaintiff's first purported topic for discovery is the statement that Mylan manufactures products "under stringent processes, procedures and rigorous testing designed to ensure that they meet the highest standards for quality, safety, and efficacy[,]" which was published in *Bloomberg* on January 31, 2019, but was not found to be adequately pled in the Court's order. *See* ECF No. 88 at 30.

[2] Specifically, in addition to the alleged corrective disclosures that followed the sole remaining statement in this action, Lead Plaintiff purports to seek discovery regarding the "the drops in Mylan's stock price that followed Defendants' disclosures to the market on June 28, 2018 [and] August 8, 2018[.]" Because the only remaining challenged statement occurred ***months after*** the alleged corrective disclosures in June and August 2018—and could not have caused inflation in Mylan's stock price ***before*** it was made—these earlier alleged corrective disclosures are irrelevant.

discovery relating to causation and damages relating to the sole remaining challenged statement; and any discovery necessary to support Defendants' affirmative defenses.

2.

**Subjects of Expert Discovery:**

The Parties could not reach agreement on the scope of expert discovery. Their respective positions are set forth below.

Lead Plaintiff's Position on the Subjects of Expert Discovery:

- CGMP and any other applicable regulatory standards set by the FDA, and Mylan's compliance or noncompliance with such standards;

- efficiency of the market in which Mylan common stock traded;

- Mylan's disclosure obligations under FDA regulations, and Mylan's compliance or noncompliance with such obligations; and

- damages, which will reflect the losses that investors suffered as a result of purchasing Mylan's common stock while its price was artificially inflated due to Defendants' scheme to deceive the market, including through (1) Defendants' January 31, 2019, statement in *Bloomberg*, which the Complaint alleges was materially false and misleading, and (2) Defendants' acts that the Complaint alleges were deceptive and/or manipulative.

Defendants' Position on the Subjects of Expert Discovery:

Defendants submit that it would be most appropriate to defer discussion of the subjects of expert discovery in light of the anticipated motion practice on Defendants' Rule 12(c) motion and to enforce the PSLRA discovery stay set forth above. However, irrespective of that motion practice, Defendants believe that expert discovery should reflect the significantly narrowed nature of the action. For example, although Defendants believe that expert discovery into market efficacy and damages is appropriate, the expert discovery regarding those topics must reflect the narrowed nature of the action. Moreover, Defendants do not agree with Lead Plaintiff's suggestion that broad expert discovery is appropriate on the topic of "CGMP and any other applicable regulatory standards set by the FDA" or "Mylan's disclosure obligations under FDA regulations" without any limitation that would relate those topics to the single remaining statement in the case.

In the event that the Court does not grant Defendants' Rule 12(c) motion and/or discovery proceeds, Defendants will endeavor to work with Lead Plaintiff to resolve all discovery disputes regarding expert discovery in good faith.

4

### 3. **Can fact and expert discovery occur at the same time? Why/why not?**

No. With the exception of class certification motion practice, which requires certain expert discovery relating to the requirements of Federal Rule of Civil Procedure 23, the parties agree that this case warrants staggered fact and expert discovery, with non-class certification expert discovery to follow the substantial completion of fact discovery., and intend to negotiate and present to the Court a proposed schedule that contemplates staggered fact and expert discovery.

### 4. **Pre-trial Deadlines:**

The Parties disagree with respect to pre-trial deadlines.  Lead Plaintiff takes the position that [Plaintiff to add].

As discussed above, Defendants maintain that, in light of their forthcoming Rule 12(c) Motion, the PSLRA automatic discovery stay mandates that discovery is inappropriate until after a resolution on the Rule 12(c) motion.  Defendants are amenable, however, to setting certain deadlines to be triggered by the Court's decision on their forthcoming Rule 12(c) motion in the event that the Court denies that motion in whole or in part and the case moves into discovery. Defendants contend that setting any other discovery deadlines now is premature in light of its forthcoming Motion to Enforce the PSLRA Discovery Stay, which it will file with the Court's permission.

Lead Plaintiff's Position:

|   |   |   |
|---|---|---|
| **a.** | Date for Initial Disclosures: | 6/23/2023 |
| **b.** | Date for joinder/amendment: | 3/15/2024 |
| **c.** | Date for close of fact discovery: | 5/17/2024 |
| **d.** | Date for close of expert discovery, if bifurcated: | 9/20/2024 |

Defendants' Position:

**a.**  Date for initial disclosures:  21 days after a decision on Defendants' Rule 12(c) Motion[3]

---

[3] Defendants believe that initial disclosures are not appropriate at this time due to the continued imposition of the PSLRA discovery stay, which provides that "*all* discovery and *other* proceedings *shall* be stayed" during the pendency of Defendants' Rule 12(c) motion. *See* 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).

    **b.** Date for joinder/amendment:  60 days after a decision on Defendants' Rule 12(c) Motion

    **c.** Date for close of fact discovery:  18 months after a decision on Defendants' Rule 12(c) Motion

    **d.** Date for close of expert discovery, if bifurcated:  2 years after a decision on Defendants' Rule 12(c) Motion

## 5. Do the parties want a Rule 502 non-waiver order – Yes or No?

~~No~~Yes.

## 6. Are there any ESI issues to address?

Consistent with the "Guidelines for the Discovery of Electronically Stored Information,"[4] the Parties are in the process of working through the Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information[5] and will present to the Court a stipulated protocol governing ESI in this case.  The timing of presenting the stipulated ESI protocol remains in dispute. Defendants contend that the stipulated ESI protocol should be filed, if necessary, following a decision on their Rule 12(c) motion.

Should the Parties encounter any issues with ESI through th~~at~~e process of preparing an ESI protocol, they will promptly raise the issues consistent with the Court's practices.

## 7. Protective Order – Yes or No? If yes, please explain:

The Parties believe that it is likely that they will produce documents in this case that are confidential under Fed. R. Civ. P. 26(c)(1)(G). ~~If that is the case, then the~~The Parties will negotiate and present to the Court, at the appropriate time before discovery commences, a stipulated protective order that will govern the production and use of confidential information in this case.

Respectfully submitted,

<table>
<tr><td>

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ DRAFT*
Salvatore J. Graziano (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
Abe Alexander (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax: (212) 554-1144

</td><td>

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

*/s/ DRAFT*
William Pietragallo II (PA I.D. #16413)
John A. Schwab (PA I.D. #89596)
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel.: (412) 263-1818
Fax: (412) 263-4200
wp@pietragallo.com

</td></tr>
</table>

---

[4] *See* App'x LCvR 26.2.C-Guidelines.

[5] *See* App'x LCvR 26.2.C-Checklist.

salvatore@blbglaw.com
katiem@blbglaw.com
abe.alexander@blbglaw.com

Caitlin C. Bozman (*pro hac vice*)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel.: (310) 819-3478
caitlin.bozman@blbglaw.com

**KESSLER TOPAZ METZLER**
  **& CHECK LLP**
Andy Zivitz
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056
azivitz@ktmc.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Class*

**WEISS BURKARDT KRAMER LLC**
M. Janet Burkhardt (PA I.D. #85582)
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219
Tel.: (412) 391-9890
Fax: (412) 391-9685
jburkardt@wbklegal.com

*Liaison Counsel for Lead Plaintiff*

jas@pietragallo.com

**WILSON SONSINI GOODRICH &**
**ROSATI, P.C.**
Nina F. Locker (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
650 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 493-9300
Fax: (650) 565-5100
nlocker@wsgr.com
eseite@wsgr.com

Michael S. Sommer (*pro hac vice*)
Jessica L. Margolis (*pro hac vice*)
Sheryl Shapiro Bassin (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
msommer@wsgr.com
jmargolis@wsgr.com
sbassin@wsgr.com

*Counsel for Defendants*

7