## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE MYLAN N.V.<br>SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR |

## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS

Nina F. Locker (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

Michael S. Sommer (*pro hac vice*)
Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200

*Counsel for Defendants Mylan N.V., Heather
Bresch, Rajiv Malik, and Kenneth Parks*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.      PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ...................................... 2

        A.      Plaintiff Misstates the Pleading Standard for Loss Causation ............................... 2

        B.      Plaintiff Concedes that the Alleged Corrective Disclosures in February
                and May 2019 Did Not Reveal Circumvention of Data and Quality
                Systems at Mylan ................................................................................................. 4

        C.      The February and May 2019 Disclosures Regarding the Morgantown
                Remediation Revealed No New Information as a Matter of Law ......................... 8

        D.      Loss Causation Is Not Pled Based on any Disclosures About Morgantown ........ 12

II.     PLAINTIFF'S SCHEME CLAIM FAILS AS A MATTER OF LAW ........................... 13

CONCLUSION ............................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ........................................................................................1, 15, 16

*Banks v. Thaler*,
    583 F.3d 295 (5th Cir. 2009) ...........................................................................12

*Bartesch v. Cook*,
    941 F. Supp. 2d 501 (D. Del. 2013)..................................................................7

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...............................................................................15, 16, 17

*Benak v. Alliance Capital Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006)...............................................................................9

*Cent. States v. Fed. Home Loan Mortg. Corp.*,
    543 F. App'x 72 (2d Cir. 2013) .......................................................................10

*Cutrary v. Lazzara*,
    2020 WL 13841323 (W.D. Pa. Oct. 8, 2020),
    *report and recommendation adopted*,
    2020 U.S. Dist. LEXIS 229635 (W.D. Pa. Dec. 4, 2020) .................................9

*Dalberth v. Xerox Corp.*,
    766 F.3d 172 (2d Cir. 2014)............................................................................11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................11

*Galati v. Commerce Bancorp, Inc.*,
    220 F. App'x 97 (3d Cir. 2007) ......................................................................14

*Gov't of Guam Ret. Fund v. Invacare Corp.*,
    2014 WL 4064256 (N.D. Ohio Aug. 18, 2014)...........................................10, 11

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019)....................................................3, 11

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
    59 F.4th 55 (3d Cir. 2023) ..............................................................................12

*Howard v. Arconic Inc.*,
    2021 WL 2561895 (W.D. Pa. June 23, 2021).....................................................3

*In re Able Lab'ys Sec. Litig.*,
    2008 WL 1967509 (D.N.J. Mar. 24, 2008).......................................................17

*In re Anadigics, Inc., Sec. Litig.*,
2011 WL 4594845 (D.N.J. Sept. 30, 2011),
*aff'd*, 484 F. App'x 742 (3d Cir. 2012) ........................................................................12

*In re Boston Sci. Corp. Sec. Litig.*,
708 F. Supp. 2d 110 (D. Mass. 2010);
*aff'd sub nom. Miss. Public Emps.' Ret. Sys. v. Boston Sci. Corp.*,
649 F.3d 5 (1st Cir. 2011) ............................................................................................11

*In re Citigroup Sec. Litig.*,
2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ........................................................12, 13

*In re DVI, Inc. Sec. Litig.*,
2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) .................................................................3, 5

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022) ....................................................................13, 14

*In re EQT Corp. Sec. Litig.*,
504 F. Supp. 3d 474 (W.D. Pa. 2020) ...........................................................................3, 7

*In re FirstEnergy Corp. Sec. Litig.*,
2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ..................................................................16

*In re Merck & Co. Inc. Sec., Deriv. & ERISA Litig.*,
2011 WL 3444199 (D.N.J. Aug. 8, 2011) .......................................................................3

*In re Ocugen, Inc. Sec. Litig.*,
2023 WL 2351695 (E.D. Pa. Mar. 3, 2023),
*appeal docketed*, No. 23-1570 (3d Cir. Apr. 3, 2023) ...................................................13

*In re Pfizer Inc. ERISA Litig.*,
2013 WL 1285175 (S.D.N.Y. Mar. 29, 2013) .................................................................6

*In re Sanofi Sec. Litig.*,
155 F. Supp. 3d 386 (S.D.N.Y. 2016) ...........................................................................14

*In re Splunk Inc. Sec. Litig.*,
592 F. Supp. 3d 919 (N.D. Cal. 2022) .............................................................................7

*In re Tellium, Inc. Sec. Litig.*,
2005 WL 2090254 (D.N.J. Aug. 26, 2005) .....................................................................5

*In re Urb. Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015) ...........................................................................3, 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*,
2 F.4th 1199 (9th Cir. 2021) ..........................................................................................16

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
2023 WL 2592134 (M.D. Tenn. Feb. 24, 2023) .......................................................17, 18

*Johnston v. HBO Film Mgmt., Inc.*,
265 F.3d 178 (3d Cir. 2001) ........................................................................................15, 16

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000) ...................................................................................16

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) .......................................................................................2

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020),
*aff'd on other grounds*, 848 F. App'x 278 (9th Cir. 2021) .........................................10, 11

*Mele v. FRB*,
359 F.3d 251 (3d Cir. 2004)..........................................................................................6

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) .......................................................................................7

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ...........................................................................4, 5

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) .......................................................................................2

*Ortero v. Pfizer, Inc.*,
2013 WL 1687099 (S.D.N.Y. Apr. 18, 2013)...............................................................6

*Payne v. DeLuca*,
433 F. Supp. 2d 547 (W.D. Pa. 2006).......................................................................4, 5

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
2013 WL 1831427 (E.D. Mo. Apr. 30, 2013)...............................................................7

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
679 F.3d 972 (8th Cir. 2012) ...........................................................................6, 14, 18

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
705 F. Supp. 2d 1088 (E.D. Mo. 2010).........................................................................7

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
499 F. Supp. 3d 49 (D. Del. 2020),
*aff'd on other grounds*, 2022 WL 3442353 (3d Cir. 2022) .............................................10

*Smith v. Antares Pharma, Inc.*,
2020 WL 2041752 (D.N.J. Apr. 28, 2020) ...................................................................5

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
552 U.S. 148 (2008)....................................................................................................15

*Utesch v. Lannett Co.*,
385 F. Supp. 3d 408 (E.D. Pa. 2019) .......................................................................2, 3

*Vanderhoef v. China Auto Logistics Inc.*,
2020 WL 5105243 (D.N.J. Aug. 31, 2020) ................................................................3, 8

iv

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
　　325 F.R.D. 280 (D. Minn. 2018)..........................................................................................16

*Waggoner v. Barclays PLC*,
　　875 F.3d 79 (2d Cir. 2017)...................................................................................................16

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
　　2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) .......................................................................8

*Wilson v. Comtech Telecomms. Corp.*,
　　648 F.2d 88 (2d Cir. 1981)...................................................................................................16

*Winer Fam. Tr. v. Queen*,
　　503 F.3d 319 (3d Cir. 2007).................................................................................................15

*Wu v. GSX Techedu Inc.*,
　　2023 WL 2207422 (D.N.J. Feb. 24, 2023) .........................................................................2, 5

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| "¶" or "Complaint" | Consolidated Class Action Complaint, filed November 13, 2020, ECF No. 39 |
| CGMP | Current Good Manufacturing Practices |
| "Company" or "Mylan" | Mylan N.V. |
| "Defendants" | Collectively, Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks |
| "Ex." or "Exs." | Exhibit(s) attached to the Supplemental Declaration of Evan L. Seite in Further Support of Defendants' Motion for Judgment on the Pleadings, filed contemporaneously herewith |
| "FDA" | U.S. Food & Drug Administration |
| "Motion" or "Mot." | Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings, ECF No. 106 |
| "Motion to Dismiss Opinion" or "Op." | This Court's opinion granting in part and denying in part Defendants' motion to dismiss the Complaint for failure to state a claim, ECF No. 88 |
| Plaintiff | The Public Employees' Retirement System of Mississippi |
| "Plaintiff's Opposition" or "Resp." | Lead Plaintiff's Omnibus Brief in Further Support of its Motion for Clarification and in Opposition to Defendants' Motion for Judgment on the Pleadings, ECF No. 110 |

## **INTRODUCTION**[1]

Defendants' Motion showed that Plaintiff's remaining misrepresentation claim fails as a matter of law because Plaintiff has not pled loss causation.  The alleged corrective disclosures in February and May 2019 did not reveal ***anything*** about the subject matter of the single remaining challenged statement—*i.e.*, the statement in a January 2019 *Bloomberg* article that "[a]ny explicit or implicit suggestion that Mylan employees circumvented data and quality systems that jeopardized the quality of the medications we manufacture—for time pressures or any other reason—is simply false."  Defendants also showed that Plaintiff's scheme claim fails because that statement was the only basis on which Plaintiff can attempt to plead reliance and loss causation, both of which are required elements of any Section 10(b) claim.

In response, Plaintiff argues that it can plead loss causation through essentially any purported "causal link" between the challenged statement and the purported corrective disclosures, even without identifying a disclosure that reveals the falsity of the challenged statement.  Not so. Plaintiff's own authorities demonstrate that Plaintiff's characterization of its pleading burden is baseless, and Plaintiff's attempt to conjure a purported "linkage" between "circumvention of quality and data systems" and later disclosures—which concededly relate only to the continued impact of already-disclosed issues related to Mylan's remediation efforts in Morgantown—finds no basis in law or fact.

With respect to its scheme claim, Plaintiff attempts to recast its claims as "material omissions" to try to invoke the *Affiliated Ute* presumption of reliance, which applies to cases involving omissions rather than affirmative misstatements.  But Plaintiff makes a critical concession in this regard:  it ***admits*** that a material omission requires that there be a ***duty to disclose***

---

[1] All emphasis is added, and all citations are omitted, unless otherwise noted.

*in the first place*.  And, here, Plaintiff must adequately allege a statement that was rendered misleading by omission to establish that duty, and it has not.  Nor can Plaintiff attempt to invoke a truth-on-the-market theory of reliance given that the sole remaining challenged statement is not actionable.  Finally, Plaintiff's Opposition expressly confirms that its scheme claim is, in fact, an impermissibly repackaged misrepresentation claim, which is another reason the claim fails.

## ARGUMENT

### I.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

#### A.    Plaintiff Misstates the Pleading Standard for Loss Causation

Defendants' Motion showed that to satisfy the loss causation requirement, Plaintiff must show that that the revelation of an alleged misrepresentation was a substantial factor in causing a decline in the security's price.  Mot. at 6-8 (citing authorities).  Thus, for purposes of loss causation, "allegations will not suffice . . . if there is no 'assertion that any wrongdoing was disclosed to the market.'" *Wu v. GSX Techedu Inc.*, 2023 WL 2207422, at *15 (D.N.J. Feb. 24, 2023).  In response, Plaintiff argues that under Rule 8(a) it need only allege a "'sufficient causal nexus between the loss and the alleged misrepresentation'" and that it has done so because the alleged corrective disclosures "reveal[ed] [the] negative regulatory and financial impacts associated with the discovery and remediation of Mylan's pervasive CGMP violations[.]"  Resp. at 5, 7 (quoting *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 424 (E.D. Pa. 2019)).

As Defendants explained (Mot. at 7 n.5), the Third Circuit has not yet weighed in on whether Rule 9(b) should apply to the element of loss causation, and, for the reasons set forth in the Ninth Circuit's *Apollo* decision,[2] Defendants believe it should.  However, this Court need not

---

[2] *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604-05 (9th Cir. 2014); *see also Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 & n.5 (4th Cir. 2011) (applying Rule 9(b) to loss causation); Mot. at 7 & n.5 (collecting cases).

2

decide that issue, as Plaintiff's loss causation allegations fall well short under either standard. Indeed, Plaintiff's own authorities—each of which was decided under Rule 8(a)—demonstrate that, for there to be a "'sufficient causal nexus between the loss and the alleged misrepresentation,'" as Plaintiff concedes is required, "Plaintiff *must allege* . . . 'that the stock price *dropped in response to disclosure of the alleged misrepresentations*.'" *Utesch*, 385 F. Supp. 3d at 424; *see also, e.g.*, *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 501 (W.D. Pa. 2020) (to establish loss causation, plaintiff must allege "'that the misstatement or omission concealed something from the market that, *when disclosed*, negatively affected the value of the security'"); *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *27 (D.N.J. Dec. 27, 2019) (loss causation is adequately pled "'so long as the plaintiff alleges that the public disclosure *reveals* that the defendant company *made false claims*'"); *In re Merck & Co. Inc. Sec., Deriv. & ERISA Litig.*, 2011 WL 3444199, at *29 (D.N.J. Aug. 8, 2011) ("establishing loss [causation] for securities fraud requires that the share value have depreciated *as a result of the disclosure of the information that was misrepresented or concealed*"); Resp. at 7-8 (citing the same authorities).[3]

Given the uniformity of these decisions, the law is clear that to plead loss causation, Plaintiff must allege corrective disclosures that revealed the falsity of the challenged statement. The Court should reject Plaintiff's effort to water down its pleading burden with cherry-picked

---

[3] Indeed, Plaintiff's Opposition is replete with authorities confirming this bedrock principle of pleading loss causation. *E.g.*, *Howard v. Arconic Inc.*, 2021 WL 2561895, at *17 (W.D. Pa. June 23, 2021) (corrective disclosures insufficient where they "*did not reveal the falsity or misleading nature of the[] misrepresentations*"); *Vanderhoef v. China Auto Logistics Inc.*, 2020 WL 5105243, at *4 (D.N.J. Aug. 31, 2020) (to plead loss causation "'plaintiff must show that *the revelation of [an alleged] misrepresentation or omission* was a substantial factor in causing a decline in the security's price'"); *In re Urb. Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 655 (E.D. Pa. 2015) ("To satisfy loss causation, a plaintiff must show that 'the share price fell significantly *after the truth became known*.'"); *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *11 (E.D. Pa. Sept. 3, 2010) ("'the *critical component* of loss causation'" is "'*the exposure of the falsity of the fraudulent representation* [to the market]'"); *see also* Resp. at 7-8, 10 n.3 (citing same).

language while ignoring the relevant pleading standard.

      **B.**      **Plaintiff Concedes that the Alleged Corrective Disclosures in February and May 2019 Did Not Reveal Circumvention of Data and Quality Systems at Mylan**

Defendants showed that Plaintiff's allegations fail to plead loss causation because the February and May 2019 disclosures did not reveal ***anything*** about purported circumvention of data and quality systems at Morgantown, Nashik, or any other Mylan facility. Mot. at 8-11. In response, Plaintiff does not claim that these disclosures revealed anything about circumvention—rather, it claims that they disclosed new information about the "scope and impact" of remediation efforts at Morgantown. *E.g.*, Resp. at 4-5, 8-9, 10. Defendants' authorities showed that such allegations are insufficient. Mot. at 9-11 (citing authorities).

For example, in *Payne v. DeLuca*, plaintiffs alleged that the defendants engaged in a scheme to fraudulently conceal an "ever-increasing liquidity crisis[.]" 433 F. Supp. 2d 547, 555 (W.D. Pa. 2006). The court held that announcements disclosing "the precarious financial condition of the company"—such as disappointing quarterly earnings, suspension of a dividend payment, and, ultimately, declaration of bankruptcy—did not plead loss causation because "not one of the alleged misrepresentations or omissions . . . is disclosed in the announcements [p]laintiffs alleged caused the precipitous drops in the stock price." *Id.* at 610. Similarly, in *PharmaNet*, the court held that plaintiffs failed to establish loss causation based on a series of disclosures of backlog reductions, contract cancellations, financial guidance reductions, and a goodwill impairment charge that plaintiffs alleged revealed the "full scope" and "severity" of defendants' fraudulent misrepresentations regarding client dissatisfaction, backlog inflation, inappropriate revenue recognition, and failure to timely record impairment charges. *Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 526, 560-61 (D.N.J. 2010). The court explained that "noticeably absent is any assertion that any wrongdoing was disclosed to the market." *Id.*

Likewise, in *Smith v. Antares Pharma, Inc.*, plaintiffs alleged that an FDA letter stating it had identified deficiencies that would delay product approval revealed defendants' concealment of safety risks associated with its a new drug delivery system. 2020 WL 2041752, at *1-2 (D.N.J. Apr. 28, 2020). The court disagreed, holding that the FDA letter did not establish loss causation because it did not disclose the allegedly concealed safety issues. *Id.* at *10. These decisions—which are joined by many others[4]—are directly on point.

Plaintiff seeks to distinguish Defendants' authorities by claiming that it has alleged the "requisite linkage between the [February and May 2019] disclosures concerning fallout from the Morgantown remediation and Mylan's practice of circumventing data and quality controls at that facility." Resp. at 14-15. But to plead loss causation, Plaintiff's own authorities confirm that Plaintiff must show that the ***market*** learned of the purported "linkage" through a corrective disclosure. *PharmaNet*, 720 F. Supp. 2d at 561 ("There are no allegations . . . ***that the market learned*** that 'client dissatisfaction' with PharmaNet's performance ***was the cause of*** . . . contract cancellations"); *Payne*, 433 F. Supp. 2d at 610 ("While the precarious financial condition of the Company was publicly acknowledged . . . ***nothing indicated that the cause of its demise was the result of Defendants' fraudulent activities***."); *see also, e.g.*, *DVI*, 2010 WL 3522090, at *6 ("plaintiff must 'provide proof that ***the market recognized a relationship between the event disclosed and the fraud***'"); Resp. at 8 (citing same).

In that regard, Plaintiff does not provide any plausible allegation that the ***market***

---

[4] Mot. at 10 n.10 (citing additional authorities); *see also, e.g.*, *Wu*, 2023 WL 2207422, at *15 (loss causation not pled where "the [complaint] does not clearly explain which corrective disclosure allegedly revealed to the market that GSX contracted with its VIE subsidiaries for brushing [*i.e.*, the subject of the alleged fraud]"); *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *3 (D.N.J. Aug. 26, 2005) (no loss causation where disclosure of lower-than-expected revenue did not reveal the "subject" of the purported fraud, *i.e.*, misrepresentations about contractual commitments and false sales and revenue projections).

***understood*** that Mylan's disclosures regarding the continuing impact of remediation at Morgantown were "linked" to purported circumvention of data and quality systems.[5]  Indeed, as Defendants explained in the Motion, Plaintiff's reliance on disclosures solely concerning the purported "scope and impact" of the Morgantown remediation is premised on a logical flaw: remediation can occur whenever there is something to address for any reason, and circumvention of data and quality systems need not have occurred for Mylan to undertake remediation.  Mot. at 9-10.  Thus, Plaintiff has no plausible basis to claim that the market understood disclosures about the continued impact of remediation to reveal anything about purported circumvention of data and quality systems.  Plaintiff does not respond to this point, presumably because it cannot.

Unsurprisingly, the authorities on which Plaintiff relies all involve precisely the allegations that are missing here, *i.e.*, disclosures revealing new information to the market that directly revealed the falsity of the alleged misrepresentation.  For example, Plaintiff claims that the corrective disclosures in this action "closely resemble" the corrective disclosures at issue in the *KV Pharmaceutical* litigation (Resp. at 10), but there, the challenged statements at issue were KV Pharmaceutical's repeated claim that it was "in material compliance with cGMP" despite receiving seven Form 483s reflecting multiple repeat observations.  *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 976, 981-84 (8th Cir. 2012).  Loss causation was adequately alleged through a

---

[5] Although Plaintiff points generally to "analyst commentary" following the February and May 2019 disclosures in support of its loss causation argument (Resp. at 16), none of the quoted commentary says anything regarding the circumvention of data or quality systems (¶¶ 215-16, 220), and nothing in any of the reports cited in these paragraphs—which are properly considered at the pleading stage—mentions anything regarding circumvention of data or quality systems. *Ortero v. Pfizer, Inc.*, 2013 WL 1687099, at *1 n.1 (S.D.N.Y. Apr. 18, 2013) (court may consider "documents upon which [p]laintiffs relied in bringing suit," including "analyst reports"); *In re Pfizer Inc. ERISA Litig.*, 2013 WL 1285175, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (same); *see also Mele v. FRB*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (allowing court to consider documents "'integral to or explicitly relied upon in the complaint'"); Exs. 18-26.  Rather, the analyst commentary was focused on the continuing impact of remediation.  Exs. 18-26.

6

"materialization of a concealed risk" theory where disclosures revealed, *inter alia*, that KV Pharmaceutical's audit committee was investigating allegations of misconduct linked to FDA regulations and compliance matters, the company was suspending all manufacturing activities and was recalling most of its products, and the FDA opened a criminal investigation into misconduct.[6]

Here, unlike *KV Pharmaceutical*, Plaintiff is not proceeding on a materialization of a concealed risk theory, nor has the Third Circuit ever endorsed such an approach. Mot. at 7-8 n.6; *see also, e.g.*, *Bartesch v. Cook*, 941 F. Supp. 2d 501, 512 (D. Del. 2013) ("The Third Circuit has not adopted the 'materialization of risk' test but, instead, requires that there have been corrective disclosures that exposed the alleged fraud.").[7]   Moreover, unlike the disclosures in *KV Pharmaceutical* that revealed information directly undermining the challenged statements, *i.e.*, that KV Pharmaceutical was "in material compliance with cGMP" standards, Plaintiff here does not allege any corrective disclosure that revealed ***anything*** about circumvention of data or quality systems at Mylan.  This fact likewise distinguishes Plaintiff's other authorities, each of which involved corrective disclosures that revealed facts directly contradicting earlier misstatements.[8]

---

[6] *Compare Pub. Pension Fund Grp. v. KV Pharm. Co.*, 2013 WL 1831427, at *3-4 (E.D. Mo. Apr. 30, 2013), *with Pub. Pension Fund Grp. v. KV Pharm. Co.*, 705 F. Supp. 2d 1088, 1094-96 (E.D. Mo. 2010) (subsequent history omitted).

[7] In addition, although Plaintiff is expressly relying on a "truth was revealed" theory of loss causation (*e.g.*, ¶¶ 20, 329-332), it points to the Ninth Circuit's decision in *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018), which endorsed an alternative theory of loss causation where defendants made misrepresentations regarding manufacturing defects that ultimately caused an earnings miss. Resp. at 8 n.2. The Third Circuit has not adopted *First Solar*, and, in any event, *First Solar* confirms that where "plaintiffs plead a causation theory based on market revelation of the fraud," as is the case here, "the court naturally evaluates whether plaintiffs have pleaded or proved facts ***relevant to their theory***."  881 F.3d at 754.

[8] *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 951 (N.D. Cal. 2022) (where defendants concealed the suspension of investments in marketing and hiring freezes, loss causation adequately pled when defendants expressly attributed an earnings miss to those factors); *EQT*, 504 F. Supp. 3d at 501-02 (where defendants made misstatements regarding drilling successes, post-acquisition synergies and costs, loss causation was adequately pled where investor calls revealed operational

At bottom, Plaintiff tacitly concedes, as it must, that the alleged corrective disclosures in February and May 2019 did not disclose anything regarding purported circumvention of data and quality controls. Defendants respectfully submit that this can, and should, end the analysis.

### C. The February and May 2019 Disclosures Regarding the Morgantown Remediation Revealed No New Information as a Matter of Law

Defendants' Motion showed that, even assuming *arguendo* that the February and May 2019 disclosures regarding remediation somehow revealed the "truth" about purported circumvention of quality and data systems, Plaintiff still cannot plead loss causation because those disclosures revealed no new information as a matter of law. Mot. at 12-14. Plaintiff argues that Mylan's February and May 2019 disclosures "revealed for the first time that the reduction in volume and products at Morgantown was permanent and had resulted in previously undisclosed negative financial results." Resp. at 16-17. But, long before those disclosures, Mylan had told the market that (i) it had received a Form 483 following the FDA's 2018 inspection at Morgantown; (ii) it had, as a result, implemented an extensive remediation and restructuring program at Morgantown; (iii) that program involved the "discontinuation of a number of products" and would have a "significantly negative impact on production levels, product supply and operations"; (iv) it

---

issues, inefficiencies, increased costs and understated and erroneously adjusted capital costs); *Vanderhoef*, 2020 WL 5105243, at *1, *4 (where defendants failed to disclose related party transactions and misrepresented that they would cooperate in an ongoing investigation, loss causation adequately pled based on disclosures of a material weakness in controls for related party transactions and that the company was actively impeding the investigation); *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2019 WL 4597518, at *1, *8 (N.D. Ill. Sept. 23, 2019) (where the company was alleged to have issued false financial guidance predicting $9.0 to $9.5 billion in EBIT, loss causation adequately pled based on re-issuance of new guidance that revealed a shortfall of $1.8 to $2.3 billion to the original target); *Urb. Outfitters*, 103 F. Supp. 3d at 655-57 (where defendants misrepresented sales trends and concealed increased markdowns within a particular division, loss causation adequately pled based on disclosure of sales results below market expectations and concurrent analyst commentary expressly linking the disappointing results to a sales slowdown in that division).

could not put any "time frames" around when "operations [would] begin to normalize" at Morgantown; (v) Mylan had received a warning letter from the FDA based on the earlier Form 483 and was addressing the issues raised in that letter within the context of the previously announced remediation and restructuring program; and (vi) remediation and restructuring had cost $185 million since it began, was expected to continue into 2019, and that future expenses for remediation and restructuring could not reasonably be estimated. Mot. at 13; ECF No. 107-7 at 9-10.[9] Thus, as this Court observed, Mylan was "forthright about the challenges facing the Morgantown facility" and "painted a grim picture of the circumstances" well before the February and May 2019 disclosures. Op. at 27-28. As a result, the only "new" information Plaintiff could claim was "revealed" by the purported disclosures was the continued impact of remediation. Mot. at 13. As Defendants showed, such allegations fail because the disclosure of the ongoing impact from already-disclosed issues cannot establish loss causation. *Id.* (citing authorities).

Plaintiff does not meaningfully dispute any of this. It concedes (as it must) that the February and May 2019 disclosures merely revealed decreases in net sales, discontinuations, and additional costs, which Plaintiff claims were caused by the ongoing remediation. Resp. at 4-5, 16-17. And, while Plaintiff mischaracterizes Defendants' argument as a "truth on the market" defense that, it claims, "cannot be resolved at the pleading stage," (Resp. at 16) it does not even attempt to

---

[9] Plaintiff argues that the Court should not take judicial notice of the exhibits submitted with Defendants' Motion, arguing that the materials are being used to "'create a defense to the Complaint's otherwise well-pled allegations[.]'" Resp. at 6. Defendants appropriately seek judicial notice of the relevant exhibits to demonstrate what information Mylan disclosed to the market, which is entirely permissible. *See Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (taking judicial notice of newspaper articles "to indicate what was in the public realm at the time"). Notably, Plaintiff does not dispute the accuracy of the information contained in the documents subject to judicial notice and does not dispute that the Court need not consider any allegations that "'contradict matters properly subject to judicial notice.'" *Cutrary v. Lazzara*, 2020 WL 13841323, at *3 (W.D. Pa. Oct. 8, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 229635 (W.D. Pa. Dec. 4, 2020) (Ranjan, J.).

9

address Defendants' pleading-stage authorities on loss causation, which demonstrate that the February and May 2019 disclosures did not reveal new information as a matter of law.[10]

*Lopes v. Fitbit* is particularly instructive. There, plaintiffs attempted to plead loss causation through a series of negative disclosures regarding Fitbit's financial health. 2020 WL 1465932, at *12. Fitbit disclosed that it was seeing "'flattening demand'" for its products and was "unsure as to whether demand would recover" when it provided revised financial guidance for its fourth quarter in November 2016 and again in December 2016 when it commented on performance. *Id.* at *9-10, *12. In January 2017, Fitbit issued a press release (the final alleged corrective disclosure) again lowering its guidance for the fourth quarter due to disappointing results caused by "'weaker than expected demand' and 'higher than expected inventory levels.'" *Id.* at *12. The court rejected plaintiffs' contention that the January 2017 press release was a corrective disclosure because "[t]he only new information that this press release included were results which did not live up to Fitbit's revised guidance." *Id.* "Because [d]efendants had already disclosed the flattening demand which served as the basis for these results, the press release 'added no new information' to the market which was 'publicly revealed for the first time.'" *Id.* The Ninth Circuit affirmed dismissal.

This case is on all fours with *Fitbit*, and Plaintiff does not attempt to distinguish it.[11] Just

---

[10] *See, e.g.*, *Cent. States v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 74-75 (2d Cir. 2013) (affirming dismissal for failure to plead loss causation; plaintiffs were "on notice of the true gravity of Freddie's situation" due to disclosures that occurred before alleged corrective disclosure); *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 70-71 (D. Del. 2020) (granting motion to dismiss where the "structure of the arrangements and the associated risks had been disclosed" previously), *aff'd on other grounds*, 2022 WL 3442353 (3d Cir. 2022); *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *12 (N.D. Cal. Mar. 23, 2020), *aff'd on other grounds*, 848 F. App'x 278 (9th Cir. 2021); Mot. at 13-14 & n.11 (citing same).

[11] Plaintiff relies on *Gov't of Guam Ret. Fund v. Invacare Corp.*, 2014 WL 4064256 (N.D. Ohio Aug. 18, 2014) to claim that the ongoing impact of remediation qualifies as "new information" sufficient to plead loss causation. Resp. at 16-17. But there, unlike Mylan's "forthright" and "grim" disclosures regarding remediation, the defendants' earlier disclosures regarding FDA

like the January 2017 press release in *Fitbit*, the only "new information" in the February and May 2019 disclosures was the continued impact of the previously disclosed remediation and restructuring program. *Fitbit*, 2020 WL 1465932, at \*12. Because Mylan "already disclosed . . . the basis for th[ose] results" by painting a "grim picture" of the circumstances of the Morgantown remediation before February and May 2019, those disclosures added no new information to the market, and do not plead loss causation. *Id.*; Op. at 27.[12]

Finally, Plaintiff is left to suggest that stock price declines following the February and May 2019 disclosures somehow, standing alone, support loss causation. Resp. at 16. But, as the Supreme Court observed in *Dura*, without any corresponding revelation of truth, a lower stock price "may reflect . . . changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events[.]" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). To allow such a theory would impermissibly "transform a private securities action into a partial downside insurance policy," which is why Plaintiff must plead loss causation. *Id.* at 347-48.

---

compliance were "positive-sounding [and] upbeat" and inaccurately claimed that the FDA's warning letter only related to documentation issues, did not call into question the safety or efficacy of Invacare products, and that production had not been impacted. *Invacare*, 2014 WL 4064256, at \*8. The court found loss causation adequately pled where later disclosures revealed the FDA's concerns involved more than just documentation issues but, rather, included "'serious problems in [Invacare's] manufacturing and quality assurance systems,'" safety complaints, and production delays. *Id.* at \*6, \*8. In other words, *Invacare* involved corrective disclosures that revealed the falsity of the defendants' statements, *i.e.*, precisely the kind of corrective disclosure that is not pled here. Plaintiff's reliance on *Hall* is also inapt as that decision involved disclosures that revealed previously concealed and misrepresented information, including that Johnson & Johnson had known its talc products contained asbestos since the 1970s. 2019 WL 7207491, at \*6, \*27-28.

[12] *See also Dalberth v. Xerox Corp.*, 766 F.3d 172, 188 (2d Cir. 2014) (quarterly earnings miss attributed to a reorganization did not establish loss causation because prior disclosures already revealed "operational difficulties" as a result of the reorganization); *In re Boston Sci. Corp. Sec. Litig.*, 708 F. Supp. 2d 110, 128-29 (D. Mass. 2010) (disclosure of a recall did not establish loss causation where the market had been informed of the facts leading to the recall); *aff'd sub nom. Miss. Public Emps.' Ret. Sys. v. Boston Sci. Corp.*, 649 F.3d 5 (1st Cir. 2011).

**D.**      **Loss Causation Is Not Pled Based on any Disclosures About Morgantown**

Although the Court need not reach this issue to grant Defendants' Motion, Defendants also showed that Plaintiff has failed to plead loss causation because the allegedly false statement is about Mylan's ***Nashik*** plant, whereas the alleged corrective disclosures are about Mylan's ***Morgantown*** plant. *See* Mot. at 11-12. Plaintiff's responses fall flat.

At the outset, contrary to Plaintiff's contention (Resp. at 11), the Court has not already decided whether the remaining challenged statement refers to only the Nashik plant or to all of Mylan's plants. To argue otherwise, Plaintiff takes snippets from Defendants and the Court out of context. *Compare* ECF No. 46 at 35 n.9 (Defendants arguing about lack of corroboration for Complaint's confidential witnesses), *with* Op. at 30 (Court describing allegations to which Mylan responded in *Bloomberg* article). "Not having been 'actually decided,' law of the case cannot" preclude the Court from deciding this issue now. *See Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 62 (3d Cir. 2023); *Banks v. Thaler*, 583 F.3d 295, 324 (5th Cir. 2009) (similar).

Plaintiff's next argument—that the scope of the remaining statement is "a factual dispute that cannot be resolved through a Rule 12 motion" (Resp. at 11)—fails because the only reasonable interpretation is that the statement was about Nashik. As previously explained, the context of the remaining statement is an article about regulatory challenges in India and the statement is a direct response to purported comments by anonymous employees at Mylan's plant in Nashik, India. *See* ECF No. 107-11; Mot. at 11-12; *see also, e.g.*, *In re Anadigics, Inc., Sec. Litig.*, 2011 WL 4594845, at *25-26 (D.N.J. Sept. 30, 2011) (dismissing claim because court "agree[d] with Defendants that taken in context, [the challenged] statement about 'where we care, we are perfectly aligned' with customer demand is reasonably viewed as referring to customers such as Qualcomm, not Samsung or LG"), *aff'd*, 484 F. App'x 742 (3d Cir. 2012); *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at *6, *18-19 (S.D.N.Y. Mar. 24, 2023) (cabining the meaning of a challenged statement because it

12

"was made in response to a question about [specific] systems" and not "more broadly").

Although Plaintiff contends that "Mylan's spokeswoman expanded the scope of her response to address 'all medications at the company's facilities'" (Resp. at 12), Plaintiff ignores that the portion of the article it quotes (1) is not part of the sentence that the Court ruled was actionable, (ECF No. 107-11 at 6; Op. at 30), and (2) is not within the quotation from Mylan's spokesperson. *See In re Ocugen, Inc. Sec. Litig.*, 2023 WL 2351695, at *12 n.19 (E.D. Pa. Mar. 3, 2023) ("Plaintiff's reliance on the *Reuters* article suffers from an additional flaw because [defendant's] quoted statement does not explicitly reference the FDA; rather, it is the author who provides the necessary context for [defendant's] statement.").

## II.   PLAINTIFF'S SCHEME CLAIM FAILS AS A MATTER OF LAW

Defendants' Motion showed that this Court was both quite clear and supported by the law when it "narrowed the *claims* at issue [*i.e.*, the misrepresentation and scheme liability claims] to the one actionable misrepresentation." Op. at 38, 40; *see also* Mot. at 14-18. Defendants also showed that, because Plaintiff has failed to plead loss causation for the remaining alleged misrepresentation, Plaintiff cannot establish reliance or loss causation, both of which are essential elements of its scheme claim. Mot. at 16-17. Alternatively, Defendants showed that Plaintiff's scheme claim is an impermissible attempt to bypass the elements of liability under Rule 10b-5(b). *Id.* at 19-20. Plaintiff's arguments in response are meritless.

**_Plaintiff Mischaracterizes Defendants' Position._**   Plaintiff begins by mischaracterizing Defendants' position. It is not Defendants "core premise" that every scheme claim must allege a misrepresentation, as Plaintiff contends. Resp. at 17. Rather, Defendants' "core premise" is that **_Plaintiff's_** scheme claim in **_this_** case requires an actionable misrepresentation.

To plead a scheme claim, Plaintiff must allege "'willful conduct **_designed to deceive or defraud investors_** by **_controlling or artificially affecting the price of securities_**.'" *In re Eastman*

13

*Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 189 (W.D.N.Y. 2022); *see also* Mot. at 16-17 (citing additional authorities).  Plaintiff now describes its scheme claim as follows:  Mylan "conceal[ed] from investors [its] repeated violations of the FDA's . . . regulations" by "***carefully curating the Company's public image.***"  Resp. at 2-3.  But the only way Mylan could have "curated" its public image while inflating the price of its stock is the dissemination of purported false and misleading statements, all of which this Court held to be nonactionable, save one.  Mot. at 19.[13]  And while Plaintiff repeatedly conflates Mylan's communications with the FDA with communications to investors, Mylan's FDA interactions were not somehow undertaken "in connection with" the sale of stock, as Defendants explained.  *E.g.*, Resp. at 19 ("Defendants had implemented a fraudulent scheme to conceal from the FDA, and ***thus from investors***, material violations"); Mot. at 17-18 (citing authorities).  Plaintiff does not meaningfully respond.

Here, Plaintiff's scheme claim is ***expressly*** premised on misrepresentations.  ¶ 332 (alleging that "Defendants' materially false and misleading statements and omissions of material fact" damaged Plaintiff by "artificially inflat[ing] the price of the Company's common stock" which "declined in . . . value . . . when the relevant truth was revealed"); *see also* ¶¶ 328-330 (alleging that Mylan's purportedly false and misleading statements artificially inflated its stock price, which dropped when the alleged truth came out).  It is, therefore, appropriately limited to

---

[13] Plaintiff also suggests that its scheme claim is also premised on "inflate[d] . . . revenues and profits" resulting from purported violations of FDA quality and safety regulations.  Resp. at 19.  But Plaintiff does not challenge the veracity of Mylan's reported financial results and "'the allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose Section 10(b) liability.'"  *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016); *see also KV Pharm.*, 679 F.3d at 984 (no duty to disclose FDA compliance issues solely based on "reporting historical financial results"; "'the financial statements did not discuss KV compliance with the FDA regulations'"); *Galati v. Commerce Bancorp, Inc.*, 220 F. App'x 97, 102 (3d Cir. 2007) (no duty to disclose malfeasance based on "routine recitations of past financial performance"; "'Factual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b)'").

14

the single challenged statement that survived dismissal.

    ***Plaintiff Cannot Invoke* Affiliated Ute.*** Plaintiff's primary attempt to salvage its scheme claim is to argue that it can establish reliance[14] even in the absence of the one remaining challenged statement based on *Affiliated Ute Citizens of Utah v. United States*. Resp. at 20-22. That decision held that where a securities fraud action involved "primarily a failure to disclose positive proof of reliance is not a prerequisite to recovery." 406 U.S. 128, 153-54 (1972). But, to proceed on this theory of reliance, Plaintiff concedes that it must establish a material omission "that ***Defendants had a duty to disclose***[.]" Resp. at 1; *see also*, *e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5.").

    This concession is dispositive. There is no free-standing duty to disclose material information under the securities laws. *E.g.*, *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 329-30 (3d Cir. 2007). Rather, an affirmative duty to disclose arises only in three circumstances: (1) "when there is insider trading"; (2) where there is "a statute requiring disclosures"; or (3) where there is "an inaccurate, incomplete, or misleading prior disclosure." *Id.* Here, Plaintiff does not claim a duty to disclose based on insider trading or statutorily required disclosures and, to the extent it seeks to establish a duty based on misstatements through the third category, the sole remaining challenged statement was an allegedly ***affirmative misstatement***, not an omission. *E.g.*, Op. at 33 (characterizing the challenged statement as "a statement of then-existing fact that Mylan's senior management team allegedly knew was false[.]"). The *Affiliated Ute* presumption only applies in cases involving ***omissions***—it is not appropriate in a case involving alleged affirmative misstatements. *See, e.g.*, *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 192 (3d Cir. 2001)

---

[14] Reliance is an essential element of a scheme claim because it ensures that the "'requisite causal connection'" exists between the defendants' purported scheme and plaintiff's injury. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158 (2008).

("no [*Affiliated Ute*] presumption arises in cases of alleged misrepresentations").[15]

Because the only duty to disclose that Plaintiff can identify is predicated on the single affirmative misstatement that survived dismissal, *Affiliated Ute* does not apply.[16]

***Plaintiff Does Not Plead Reliance Under* Basic.**    Plaintiff also makes the alternative argument that it is entitled to the fraud-on-the-market presumption of reliance set forth in *Basic*. Defendants showed that, to invoke that presumption, Plaintiff must plead that investors relied upon the product of the purported fraud.  Mot. at 17-18.  Plaintiff concedes as much, stating that "[t]o invoke the *Basic* presumption" Plaintiff must "allege that defendants 'presented a deceptive public-facing cover that would be reflected in share prices and relied upon by investors.'"  Resp. at 22.[17]  It is here that Plaintiff's attempt to invoke *Basic* collapses.

Specifically, Plaintiff argues that "Mylan's required compliance with CGMP was well-

---

[15] *See also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2 F.4th 1199, 1206 (9th Cir. 2021) (*Affiliated Ute* applies in "narrow" circumstances, reflecting its underlying "justification" that "reliance is impossible or impractical to prove when no positive statements were made"); *Waggoner v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017) (similar); *Joseph v. Wiles*, 223 F.3d 1155, 1162 (10th Cir. 2000) ("*Affiliated Ute's* holding is limited to omissions as opposed to affirmative misrepresentations").

[16] Plaintiff's authorities are inapt because each involved adequately alleged statements that were misleading by omission, which create a duty to disclose.  *In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 681320, at *11-12 (S.D. Ohio Mar. 7, 2022) (defendants had a legal duty to disclose a bribery scheme in light of numerous actionable omissions, including by offering inaccurate assurances that the company was compliant and had effective controls); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 288-89 (D. Minn. 2018) (defendants omitted to disclose that medical journal authors received more than $210 million in compensation, which was adequately alleged to be a *quid pro quo* to conceal adverse events and side effects, when they made misrepresentations in medical articles).  Plaintiff's citation to *Wilson v. Comtech Telecomms. Corp.*, 648 F.2d 88, 93 (2d Cir. 1981) is puzzling; there, the court refused to apply *Affiliated Ute* where plaintiff was challenging affirmative statements as opposed to omissions.

[17] Plaintiff claims that Defendants have taken the position that Plaintiff must show that the fraudulent deception ***itself*** must be communicated to the market.  Resp. at 22.  Not so.  Defendants' position is that there must have been some ***product*** of the fraud communicated to the market in a manner on which Plaintiff could rely.  Mot. at 16-18.

known to investors and the subject of numerous risk disclosures" and that "*the market relied on Defendants' unlawful material omissions*; and when the relevant truth came out, Mylan's stock price plummeted." Resp. at 19-20; *see also id.* at 22 (similar). As explained previously, Plaintiff cannot establish purported "unlawful material omissions" **unless Mylan was under a duty to disclose**, which, here, can only be established through purported misstatements. But this Court already held that Mylan's disclosures regarding compliance, including the risk disclosures Plaintiff points to, "**cannot serve as the basis for Plaintiff's Rule 10b-5 claim**" because Mylan "told investors the truth: Mylan faced serious business risk because of the heavily regulated industry in which it operated, and that maintaining adequate compliance would be a significant undertaking—an undertaking at which it would sometimes come up short." Op. at 22-23.[18]

The sole remaining challenged statement is the only "deceptive public-facing 'cover'" that provides a basis for Plaintiff to invoke *Basic*. Therefore, Plaintiff's scheme claim rises and falls on that statement.

**_Plaintiff's Scheme Claim Impermissibly Bypasses Rule 10b-5(b)._** Defendants' Motion also showed that Plaintiff's scheme claim seeks to improperly repackage allegations of misstatements and omissions as scheme claims under Rule 10b-5(a) and (c). Mot. at 19-20. Plaintiff's Opposition confirms Defendants were correct: it repeatedly states that the scheme claim

---

[18] Plaintiff relies on *In re Able Lab'ys Sec. Litig.*, 2008 WL 1967509, at *21 (D.N.J. Mar. 24, 2008), claiming that the scheme at issue there is "nearly identical" to this case. Resp. at 24. But Plaintiff ignores that there were numerous actionable misstatements in *Able*, including repeated misrepresentations that the company was "currently in compliance with all applicable FDA requirements" and that issues identified in warning letters would "not materially affect our operations." 2008 WL 1967509, at *5-7. These numerous misstatements to the market, which are not present here, provided the basis for the court's conclusion that plaintiff had adequately pled "a deceptive scheme that involves misrepresentation." *Id.* at *22. Likewise, in *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2023 WL 2592134, at *20-21 (M.D. Tenn. Feb. 24, 2023), the court found that the plaintiff could establish reliance because it pled numerous actionable misrepresentations that overstated accounts receivables and how accounts receivables were calculated.

17

is based on the claim that purported misrepresentations and omissions inflated Mylan's stock price.[19] Accordingly, the scheme claims fail.

Indeed, Plaintiff's own authority supports this conclusion. In *KV Pharmaceutical* (Resp. at 10), the Eighth Circuit credited allegations of "numerous, severe, and pervasive objectionable [FDA compliance] conditions" that evinced "a lengthy history of KV manufacturing adulterated, unapproved, and misbranded drugs in violation of FDA regulations," in finding numerous actionable misstatements. 679 F.3d at 983. Nevertheless, the court affirmed dismissal of plaintiffs' scheme liability claim. Because plaintiffs did not allege "what specific manipulative acts [defendants] performed, or when [the acts] were performed" (*id.* at 986), the court adopted the district court's holding that the scheme claim did not encompass conduct other than alleged misrepresentations and the "misrepresentation claims under Rule 10b-5(b) cannot simply be recast as scheme liability claims under Rules 10b-5(a) and (c)[.]" *Id.* at 987; *cf. AAC Holdings*, 2023 WL 2592134, at *16 & *17 n.22 (expressing agreement with the rule that "'scheme liability is viable only if Rule 10b-5(b) cannot fully cover the deceptive acts'"); Resp. at 22 (citing same).

Along with the other authorities cited by Defendants (Mot. at 19-20)—which Plaintiff does not meaningfully address (Resp. at 25 n.13)—Defendants submit that *KV Pharmaceutical*'s discussion of scheme is persuasive here and supports dismissal of Plaintiff's scheme claim.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion for judgment on the pleadings and dismiss the remaining claims in the Complaint with prejudice.

---

[19] Resp. at 1 ("the market is presumed to rely . . . on undisclosed material information that Defendants had a duty to disclose"); *id.* at 19 ("Mylan's required compliance with CGMP was well-known to investors and the subject of numerous risk disclosures issued by the Company. . . . Thus, Mylan's scheme . . . clearly was 'in connection with' transactions in Mylan's common stock; the market relied on Defendants' unlawful material omissions"); *id.* at 22 (similar).

18

Dated: October 20, 2023

Respectfully submitted,

By: /s/ *Nina F. Locker*
Nina F. Locker (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
nlocker@wsgr.com

Michael S. Sommer (*pro hac vice*)
Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
msommer@wsgr.com
sbassin@wsgr.com

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200
wp@pietragallo.com

*Counsel for Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks*

19