# Exhibit D

100 F.4th 675
United States Court of Appeals, Sixth Circuit.

Ilia KOLOMINSKY, et al., Plaintiffs,
Plumbers Local 290 Pension Trust Fund,
individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
ROOT, INC.; Alexander Timm; Daniel
Rosenthal; Megan Binkley; Christopher Olsen;
Doug Ulman; Elliot Geidt; Jerri DeVard; Larry
Hilsheimer; Luis von Ahn; Nancy Kramer;
Nick Shalek; Scott Maw; Barclays Capital
Inc.; Goldman Sachs & Company, LLC;
Morgan Stanley & Company, LLC; Wells
Fargo Securities, LLC, Defendants-Appellees.

No. 23-3392
|
Argued: January 31, 2024
|
Decided and Filed: April 29, 2024

**Synopsis**

**Background:** Investors brought action against car insurance company and its chief executive officer (CEO), chief financial officer (CFO), and other officers for securities fraud under § 10(b) of Securities Exchange Act of 1934 and Rule 10b-5, as well as for false and misleading statements or omissions in registration statement, prospectus, or oral communication and for control-person liability under Securities Act of 1933. The United States District Court for the Southern District of Ohio, Michael H. Watson, J., 667 F.Supp.3d 685, granted defendants' motion to dismiss for failure to state a claim. Investors appealed.

**Holdings:** The Court of Appeals, Batchelder, Senior Circuit Judge, held that:

Securities Act claims based on same allegedly fraudulent course of conduct as securities fraud claims were subject to heightened pleading standard;

historical statement that company's strategy was "delivering customer acquisition costs below" average cost under traditional methods was not misleading;

historical statement that strategy "has resulted in a cost acquisition advantage" was not misleading;

as a matter of apparent first impression, statement that customer acquisition costs could rise was shielded by Bespeaks Caution doctrine; and

as a matter of apparent first impression, Bespeaks Caution doctrine survived codification of Private Securities Litigation Reform Act (PSLRA).

Affirmed.

Clay, Circuit Judge, filed opinion dissenting in part and concurring in the judgment.

**\*680** Appeal from the United States District Court for the Southern District of Ohio at Columbus. No. 2:21-cv-01197—Michael H. Watson, District Judge.

**Attorneys and Law Firms**

ARGUED: Steven F. Hubachek, ROBBINS, GELLER, RUDMAN & DOWD, LLP, San Diego, California, for Appellant. Michael P. Addis, CRAVATH, SWAINE & MOORE, LLP, New York, New York, for Appellees. ON BRIEF: Steven F. Hubachek, ROBBINS, GELLER, RUDMAN & DOWD, LLP, San Diego, California, Michael G. Capeci, ROBBINS GELLER RUDMAN & DOWD LLP, Melville, New York, Joseph F. Murray, MURRAY MURPHY MOUL + BASIL LLP, Columbus, Ohio, for Appellant. Michael P. Addis, J. Wesley Earnhardt, CRAVATH, SWAINE & MOORE, LLP, New York, New York, William D. Kloss, Jr., VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, Sharon L. Nelles, Andrew J. Finn, SULLIVAN & CROMWELL LLP, New York, New York, Gregory Harrison, Kelly E. Pitcher, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellees.

Before: BATCHELDER, CLAY, and DAVIS, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which DAVIS, J., joined in full, and CLAY, J., joined in

part and in the judgment. CLAY, J. (pp. 689-93), delivered a separate opinion concurring in part and in the judgment.

**OPINION**

ALICE M. BATCHELDER, Circuit Judge.

 **\*681**  Plumber's Local 290 Pension Trust Fund (Plumber's Local), on behalf of the individual plaintiffs and all others similarly situated in this case, appeals the district court's dismissal of its complaint for failure to state a claim. We **AFFIRM**.

### I. Background and Procedural History

Root, Inc. (Root), a technology company seeking to disrupt the traditional car insurance market, attracted investors such as Plumber's Local with its purportedly low customer-acquisition cost (CAC).[1] Plumber's Local invested in Root around the time that Root filed its Registration Statement with the SEC and made its initial public offering (IPO).

[1]    CAC is a simple calculation, measuring the cost of acquiring new customers. CFI Team, *Customer Acquisition Cost (CAC)*, Corp. Fin. Inst., https://corporatefinanceinstitute.com/resources/accounting/customeracquisition-cost-cac/ (last visited Apr. 25, 2024). It is considered a critical performance metric for newer companies because it measures the ability of new companies to improve their profitability as they grow. *Id.*

From August 2018 to August 2020, Root's average CAC was $332. According to Plumber's Local, traditional car insurance companies' CAC is between $500 and $800. Root, therefore, had a competitive advantage. As a result, at Root's IPO, its Class A stock sold for $27.00 per share—the price at which Plumber's Local invested. But, thereafter, Root's Class A stock price decreased because its CAC increased, ending Root's competitive CAC advantage. At the time of the IPO, Root was licensed to sell in 36 states, but it had plans to expand to all 50 states by the beginning of 2021. Allegedly, the increase in CAC was caused by Root's nationwide expansion.

In its complaint, Plumber's Local pled one unified set of facts raising five claims for violations of the Securities Acts of 1933 (1933 Act) and 1934 (1934 Act), involving Sections 10(b), 11, 12(a)(2), and 15 and another for violating Rule 10b-5. The district court dismissed all of the claims with

prejudice for failure to state a claim for relief. *See Kolominsky v. Root, Inc.*, 667 F. Supp. 3d 685, 715 (S.D. Ohio 2023). The three claims that survive to appeal involve allegedly false and misleading statements or omissions about Root's CAC and warnings in Root's Registration Statement. Those claims implicate Sections 11, 12(a)(2), and 15 of the 1933 Act.

The three relevant statements are:

- Mobile is the fastest growing retail channel in the United States, as customers spend less time in front of computers and utilize smart phones for more convenient shopping. We therefore designed a mobile-directed customer acquisition strategy, *delivering customer acquisition costs below the average cost of doing so through each of the direct and agent channels.* (hereinafter Statement One).

- *The efficiency of our customer acquisition strategy has resulted in a cost acquisition advantage versus direct and agent channels.* While our customer acquisition costs can vary by channel mix, by state or due to seasonality, over the period from August **\*682** 2018 to August 2020 our average customer acquisition cost was $332. In the near term, as we expand our licensed footprint to 50 states, we will invest in our national brand, which will increase awareness, build credibility and support all four of our distribution channels. (hereinafter Statement Two).

- As we grow, we *may* struggle to maintain cost-effective marketing strategies, and our customer acquisition costs *could* rise substantially. (hereinafter Statement Three).

According to Plumber's Local's complaint, these statements were misleading and/or omitted material facts about Root's CAC.[2] Plumber's Local argued that Root had a duty to update investors regarding Root's CAC because at the time of the IPO, the CAC was, in fact, higher than its historic average. Moreover, in Plumber's Local's view, any apparent warning regarding Root's CAC was misleading because the CAC increase had already occurred. Plumber's Local also alleged that Root's sale of 5% (around 14 million shares of Class A stock) of its company to Carvana, for $9.00 per share, was evidence that Root was in worse financial condition than it had represented.

[2]    Defendants Alexander Timm, Root's CEO, and Daniel Rosenthal, Root's CFO, made statements at a "roadshow," which the plaintiffs also alleged were

misleading. Any arguments based on the roadshow statements have been abandoned on appeal.

The district court concluded that Plumber's Local's Sections 11 and 12(a)(2) claims both sounded in fraud even though Plumber's Local disclaimed that it was pleading fraud, so the heightened Fed. R. Civ. P. 9(b) pleading standard applied. *Id.* at 697. In relation to the statements before us, the district court found that the statements were not actionable because the first two were based on past performance or historical data, and the third was based on forward-looking projections. *Id.* at 701–02, 703–04. No statement was false or misleading. *Id.* Therefore, the challenged statements could not give rise to 1933 Act liability under Sections 11 or 12(a)(2). *Id.* at 708–09. Because Plumber's Local failed to plead a primary violation for either Sections 11 or 12(a)(2), the district court also dismissed the Section 15 control-person claim. *Id.* at 715.

## II. Legal Standard

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Int'l Outdoor, Inc. v. City of Troy*, 77 F.4th 432, 438 (6th Cir. 2023). Dismissal is proper when the complaint fails to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss, plaintiffs must "state a claim to relief that is plausible on its face," requiring more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility is not akin to probability; plausibility means that there is more than a sheer possibility that a defendant acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Plausibly pled facts are taken as true. *Id.* But when a complaint pleads facts "merely consistent with a defendant's liability," it is insufficient to state a claim for relief. *Id.* (citation and internal quotation marks omitted).

## III. Discussion

On appeal, Plumber's Local argues that the district court erred by applying the 9(b) pleading standard to its claims and that it erred by concluding that the challenged **\*683** statements were not false or misleading. Finding no error, we affirm. We take each argument in turn.

### a. Claims that Sound in Fraud

Fraud is not an element of Sections 11 and 12(a)(2) of the 1933 Act. *See* 15 U.S.C. § 77k, 77*l*. However, we apply the Rule 9(b) pleading standard to claims that sound in fraud. *See Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009) (listing and agreeing with circuit courts that apply the 9(b) pleading standard to 1933 Act Section 11 claims, sounding in fraud); *see also Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (explaining that claims which sound in fraud are premised on a unified course of fraudulent conduct); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("We hold that the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud."). In other words, when fraud pleadings under Section 10(b) of the 1934 Act employ the same facts as a 1933 Act Section 11 claim or 12(a)(2) claim, we can assume that the complaint sounds in fraud. *Rubke*, 551 F.3d at 1161; *see also Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) ("Securities fraud claims arising under Section 10(b), as with any fraud claim, must satisfy the particularity pleading requirements of Rule 9(b).").

Of course, when a 1933 Act plaintiff brings a Section 11 or 12(a)(2) claim that does *not* rely on one unified course of fraudulent conduct but, rather, carefully distinguishes the fraud claims from other claims, then we apply the Rule 8(a) pleading standard to those non-fraud claims. *In re EveryWare Global, Inc. Secs. Litig.*, 175 F. Supp. 3d 837, 869–70 (S.D. Ohio 2016), *aff'd*, 849 F.3d 325, 328 (6th Cir. 2017); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 272–73 (3d Cir. 2006) (explaining that fraud allegations will not "contaminate" a Section 11 or 12(a)(2) claim when the "pleading makes for a clear conceptual separation in the complaint between claims sounding in negligence and those sounding in fraud"); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) ("In other cases ... a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements.").[3]

[3] For utter clarity, if a Section 11 or 12(a)(2) claim that is pled alongside a Section 10(b) or Rule 10b-5 claim is based upon facts which sound in negligence (*not* fraud), then the claim which sounds in negligence

will face the Rule 8(a) pleading standard. *See In re Suprema Specialties*, 438 F.3d at 272–73. Notably, here, the plaintiff brought claims that rely on one set of facts, which demonstrate a unified course of fraudulent conduct. Hence, we are not dealing with a plaintiff who separated fraud claims from other claims by alleging some fraudulent and some non-fraudulent conduct. Even if we agree with *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997), which essentially endorses the ability to plead both fraud and non-fraud securities claims under the same unified set of facts, we are bound by our precedent in *Omnicare, Inc.*, which agrees with the majority of circuits that securities claims that are grounded in a unified course of fraudulent conduct are claims that sound in fraud and face Rule 9(b) at the pleadings stage. *See* 583 F.3d at 948 (including a "*But see*" citation to *In re NationsMart,* 130 F.3d at 315, to show that this circuit does not follow the Eighth Circuit approach); *see also* The Bluebook: A Uniform System of Citation, B1.2, at 5 & R. 1.2(c), at 63 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). Another panel agreed and stated that "although § 11 claims do not require pleading scienter, Rule 9(b) pleading standards still apply to § 11 claims that sound in fraud." *See Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 719 F.3d 498, 502 (6th Cir. 2013), *vacated on other grounds by Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund.*, 575 U.S. 175, 135 S.Ct. 1318, 191 L.Ed.2d 253 (2015). Nothing in our precedent—nor the Supreme Court's—permits pleading in the alternative in settings such as this. We agree with the Supreme Court that "the 1934 Act and the 1933 Act prohibit some of the same conduct." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 383, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (citation and internal quotation marks omitted). Plaintiffs may, indeed, bring a claim that encompasses both fraud and non-fraud securities claims. But when the complaint relies on one unified course of fraudulent conduct, it will face the Rule 9(b) pleading standard.

**\*684** Here, the plaintiffs presented a 1934 Act Section 10(b) fraud claim and a 10b-5 fraud claim along with 1933 Act Sections 11 and 12(a)(2) claims that were all grounded in *one* fraudulent course of conduct relying on *one* set of facts, alleging that Root made materially false and misleading statements and omissions. Therefore, their complaint sounds in fraud, and the 9(b) pleading standard applies.

Pleading fraud requires more than a short and plain statement requesting relief. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384 (6th Cir. 2016). These pleadings must be pled with particularity, *id.*, meaning that the pleadings "must state ... the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b). We require plaintiffs pleading under Rule 9(b) to "allege the time, place, and content of the alleged misrepresentation" and "the fraudulent scheme; the [defendant's] fraudulent intent ...; and the [resulting] injury ...." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (citation omitted).

Moreover, a party's disclaimer that it is not pleading fraud will not defeat our application of Rule 9(b), particularly when a securities fraud claim and the Sections 11 and 12(a)(2) claims rely on the same set of facts, as is true here. *See Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 719 F.3d 498, 502–03 (6th Cir. 2013), *vacated on other grounds by Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund.*, 575 U.S. 175, 135 S.Ct. 1318, 191 L.Ed.2d 253 (2015); *see also Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004) (explaining that when "a core theory of fraud permeates the entire ... [c]omplaint" a "disavowment of fraud" will not be enough to avoid Rule 9(b)); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 410 (S.D.N.Y. 2005). Plumber's Local's fraud disclaimer will not defeat the assumption that the pleadings in this action sound in fraud. The 9(b) standard applies. Plumber's Local's claims meet that standard, but the complaint fails to state a claim for relief for the reasons outlined below.

**b. Root's Statements/Disclosures were not Fraudulent or Misleading**

The 1933 Act creates federal disclosure requirements, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 572, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), and requires companies to make "full and fair disclosure[s] of information" connected to a public offering. *Pinter v. Dahl*, 486 U.S. 622, 646, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Sections 11 and 12 of the 1933 Act are neighbors and contain parallel provisions regarding misleading statements or omissions related to public offerings. *See Gustafson*, 513 U.S. at 572, 115 S.Ct. 1061. Section 11 deals with misleading statements in a company's Registration Statement, 15 U.S.C. § 77k, while Section 12 deals with misleading statements in any prospectus or other statement. 15 U.S.C. § 77*l*. In relevant part, Section 11 reads,

> **\*685** In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the

statements therein not misleading, any person acquiring such security ... [may] sue.

15 U.S.C. § 77k(a) (listing who can be sued for a false or misleading registration statement). To establish a claim under Section 12, plaintiffs must allege that the defendant used a prospectus to sell a security that "include[d] an untrue statement of a material fact or omit[ted] ... a material fact necessary ..., in light of the circumstances under which [the statements] were made." 15 U.S.C. § 77*l*(a)(2).

The district court properly concluded that the Plumber's Local's Sections 11 and 12 claims rested on the same statements. *Kolominsky*, 667 F. Supp. 3d at 697–98. So, it dealt with both claims under the same framework. *Id.* Sections 11 and 12 impose "absolute liability on the issuer of a registration statement [or prospectus for Section 12] if: (1) the statement contained an untrue statement of a material fact, (2) the statement omitted to state a material fact required to be stated therein, or (3) the omitted information was necessary to make the statements therein not misleading."[4] *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 84 (2d Cir. 2021) (internal quotations omitted); *see also Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715–16 (2d Cir. 2011).

[4]    The Securities Exchange Commission's Items and Rules gave rise to this framework. Under Item 303, a company must "[d]escribe any known trends or uncertainties that ... are reasonably likely to have a material ... unfavorable impact on ... revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(2)(ii). "The discussion and analysis must focus specifically on material events and uncertainties known to management that are reasonably likely to cause reported financial information not to be necessarily indicative of future operating results or of future financial condition." 17 C.F.R. § 229.303(a). Item 105 creates a similar duty: to disclose the most significant or "material [risk] factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105(a). Risk factors that are not "reasonably likely to be material under Item 303" are not material factors that render an offering speculative or risky under Item 105. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011) (internal quotation omitted) (referencing Item 503(c), which was relocated to Item 105); *see also* FAST Act Modernization and Simplification of Regulation S-K, 84 Fed. Reg. 12,674, 12,688–89 (Apr. 2, 2019) (codified at 17 C.F.R. § 229.105). One more relevant rule—Rule 408—"requires the disclosure of *material* information necessary to make other statements not misleading." *In re AT&T/DirecTV Now Sec. Litig.*, 480

F. Supp. 3d 507, 536 n.29 (S.D.N.Y. 2020); *see also* 17 C.F.R. § 230.408(a). This requires the court to make a holistic inquiry regarding whether there is "a substantial likelihood" that disclosing omitted information would have altered what a "reasonable investor" thought based on the "total mix" of available information. *DeMaria v. Andersen*, 318 F.3d 170, 180 (2d Cir. 2003) (quoting *TSC Indus., Inc.*, 426 U.S. at 449, 96 S.Ct. 2126).

But the ultimate inquiry depends on what a reasonable investor would conclude about a statement or prospectus. *See Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598, 609 (6th Cir. 2005); *Rombach*, 355 F.3d at 172 n.7. This in turn depends on materiality, and "[t]he question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Indus. v. Northway*, 426 U.S. 438, 445, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Therefore, "to be actionable, a misrepresentation or omission must pertain to material information that the defendant had a duty to disclose." *Benzon*, 420 F.3d at 608 (citation omitted).

Plumber's Local argues that Root's statements regarding its CAC were misleading **\*686** to the reasonable investor. We disagree. Of the three challenged statements on appeal, two are protected statements of past or historical performance, and the third is protected by the "Bespeaks Caution" doctrine.

### i. Historical Statements of Past Performance

"The disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *In re Sofamor Danek Grp.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997); *see also In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004); *Plumber & Steamfitters Loc. 773 Pension Fund, Boston Ret. Sys. v. Danske Bank A/S*, 11 F.4th 90, 98–99 (2d Cir. 2021). Moreover, there is no duty to update historically accurate past-performance data so long as the data is not used to imply anything about the future. *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 390 (2d Cir. 2015). Here, Statements One and Two are historical statements of past performance, and a reasonable investor would understand as much.

### 1. Statement One

Statement One refers to Root's customer acquisition strategy, which Root claimed was "delivering customer acquisition costs below the average cost of doing so through [traditional] channels." Plumber's Local argues that this statement was misleading because Root's CAC was not below average when it issued its Registration Statement. In other words, Plumber's Local argues that Root had a duty to update this historical statement because its CAC was higher than what was stated in the Registration Statement.[5]

[5] Focusing on the last part of the second sentence of Statement One, Plumber's Local also argues that the district court should not have construed that statement as an historical statement. This grammatical argument is incorrect. The first clause of the sentence says that Root designed (past tense) a customer acquisition strategy. The rest of that sentence simply describes that already-created strategy.

Root disclosed objectively verifiable data about its CAC that was historically accurate. Root had no duty to update it even if less favorable results might have been predictable. *In re Sofamor*, 123 F.3d at 401 n.3; *see also In re Nokia Oyj Sec. Litig.*, 423 F. Supp. 2d 364, 395 (S.D.N.Y. 2006) ("Defendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy.") (citation omitted). Furthermore, Statement One was not used to imply that Root's CAC would remain low. Root "designed" a mobile-directed customer acquisition strategy that had been "delivering" a below-average CAC. Read in context, this statement does not promise that Root would continue producing a low CAC. *See IBEW Local Union No. 58*, 783 F.3d at 390 (explaining that there is no duty to update historically accurate data and that the defendant's statements should be read in context).

Plumber's Local also argues that the Carvana sale shows that Root misled investors because Root knew its CAC was higher than $332 at the time of the IPO. But the sale of stock to Carvana is a valid business strategy. Companies are not required to explain why they engage in certain valid business strategies over others. *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1208–09, 1210–11 (S.D.N.Y. 1996). The same reasoning applies to how Root advertised/marketed itself. *See Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 34 (S.D.N.Y. 2016) (explaining **\*687** that marketing strategy need not be disclosed by a company).

Statement One is not a statement that will bring about liability for Root. It was about past performance in a way that did not predict the future, and no other surrounding circumstance prompted a duty to update. The district court did not err, and this statement is not actionable.

### 2. Statement Two

Statement Two refers to Root's "customer acquisition strategy" which "resulted in a cost acquisition advantage versus direct and agent channels [in the car insurance industry]." The district court concluded that, in context, Statement Two referred to the August 2018 to August 2020 time frame and that it was an accurate statement of historical performance. *Kolominsky*, 667 F. Supp. 3d at 701–02. The district court further explained that in the Registration Statement, Root stated, "[O]ur historical results are not necessarily indicative of the results that may be expected for any period in the future." *Id.* at 702 (alteration in original) (citation omitted).

Largely for the same reasons that apply to Statement One, Statement Two is a statement about past performance that does not predict the future, and a reasonable investor would understand that. The "has resulted" language directly refers to the 24-month time frame in which Root did experience a CAC average of $332, i.e., the statement is historical and accurate. *See In re Ford Motor Co.*, 381 F.3d at 570; *see also McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002). Statement Two did not predict the future. *See IBEW Local Union No. 58*, 783 F.3d at 390. In fact, Root warned that historically accurate data may not be indicative of future results. The district court did not err, and this statement is not actionable.

### ii. The "Bespeaks Caution" Doctrine

Statement Three is found in Root's Registration Statement in the section titled "Risk Factors," and it provides: "As we grow, we **may** struggle to maintain cost-effective marketing strategies, and our customer acquisition costs **could** rise substantially." The district court concluded that this statement was not actionable because it was a forward-looking statement labeled as a risk factor.[6] *Kolominsky*, 667 F. Supp. 3d at 703–04.

[6] Statement Three is not covered by the PSLRA's safe-harbor provision. *See* 15 U.S.C. § 78u-5(b)(2)(B).

Before us, both parties presume that the Bespeaks Caution doctrine applied to this forward-looking statement. Plumber's Local argues that the doctrine will not shield Root from liability because the risk that Root warned of had already occurred, i.e., the warning was a sham. Root argues the opposite: its warning was accompanied by meaningfully cautionary language, and a reasonable investor would understand the warning. Like the parties and the district court, we agree that this statement is forward-looking and that we must analyze it through the Bespeaks Caution doctrine as opposed to our above analysis of statements of past performance or historical data. *See P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92, 96–97 (2d Cir. 2004); *see also id.* at 97 ("Historical or present fact—knowledge within the grasp of the offeror—is a different matter. Such facts exist and are known; they are not unforeseen or contingent.").

Therefore, we now expressly hold that the Bespeaks Caution doctrine survived **\*688** the codification of the PSLRA, and we join the majority of circuits in so holding. *See Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 141 (1st Cir. 2021) (explaining that disclosures which "specifically identify the risk" are not actionable statements after the codification of the PSLRA); *Rombach*, 355 F.3d at 168, 173–74 (applying the Bespeaks Caution doctrine to a secondary public offering alongside the PSLRA's safe harbor provision); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 273, 279 (3d Cir. 2004) (applying the Bespeaks Caution doctrine to a plaintiff's Sections 11 and 12(a)(2) claims); *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 209, 214–15 n.11 (5th Cir. 2004) (explaining that—in a case after the codification of the PSLRA involving a prospectus connected to an initial public offering—the Bespeaks Caution doctrine, "as a general matter," protects "an offering document's forecasts, opinions or projections [that] are accompanied by meaningful cautionary statements"); *Parnes v. Gateway 2000*, 122 F.3d 539, 548–49 (8th Cir. 1997) (applying the Bespeaks Caution doctrine to a plaintiff's Sections 11 and 12(a)(2) claims); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1401–02, 1408–09 (9th Cir. 1996) (applying the Bespeaks Caution doctrine to a prospectus—and statements made—in connection to an initial public offering after the codification of the PSLRA); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120–21, 1122–23 (10th Cir. 1997) (adopting the Bespeaks Caution and applying it to forward-looking, cautionary statements associated with a defendant-company's registration statement); *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 767–68 (11th Cir. 2007) (demonstrating that the Bespeaks Caution doctrine

survived the PSLRA's codification by applying it to offering documents in a case that did not involve the PSLRA's safe-harbor provision); *see also In re GoHealth, Inc. Sec. Litig.*, 2022 WL 1016389, at \*5 (N.D. Ill. Apr. 5, 2022) (explaining that the Bespeaks Caution doctrine applies to registration statements and analyzing whether the registration statement bespoke caution).[7]

7    Although not dispositive on the matter, Congress did "not intend for the safe harbor provisions [of the PSLRA] to replace the judicial 'bespeaks caution' doctrine or to foreclose further development of that doctrine by the courts." Statement of Managers, "Securities Litigation Reform," H.R. Conf. Rep. No. 104-369, at 46 (1995). Moreover, the text of the PSLRA's safe harbor provision does *not* contain language suggesting that it supplanted the Bespeaks Caution doctrine. *See* 15 U.S.C. § 78u-5(c).

The Bespeaks Caution doctrine addresses "situations in which optimistic projections are coupled with cautionary language," affecting the materiality and reasonableness of relying on forward-looking statements. *In re Stac*, 89 F.3d at 1408 ("To put it another way, the 'bespeaks caution' doctrine reflects the unremarkable proposition that statements must be analyzed in context."). The doctrine shields companies such as Root from liability when they make statements that are forward-looking and accompanied by meaningful cautionary language. *Rombach*, 355 F.3d at 173–74; *see also Helwig v. Vencor, Inc.*, 251 F.3d 540, 559 (6th Cir. 2001), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *P. Stolz Family Partnership*, 355 F.3d at 98 (explaining that the Bespeaks Caution doctrine protected the defendant company from liability when its statements "sufficiently caution[ed]" prospective investors about future financing); *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 874 (3d Cir. 2000) (collecting cases that hold that the Bespeaks Caution doctrine applies to forward-looking, cautionary statements). Statements "that as a whole" **\*689** provide "a sobering picture of" a company's "financial condition and future plans" are protected by the doctrine. *Rombach*, 355 F.3d at 176. In other words, "[c]ertain alleged misrepresentations ... are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002); *see also Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996) ("[I]f a statement is couched in or accompanied by prominent cautionary language that clearly disclaims or discounts the drawing

of a particular inference, any claim that the statement was materially misleading because it gave rise to that very inference may fail as a matter of law.").

In sum, we join our sister circuits that hold when companies such as Root make forward-looking statements contained in a registration statement or in connection with an initial public offering, the Bespeaks Caution doctrine will shield those companies from liability when the forward-looking statements are accompanied by meaningfully cautionary language so that a reasonable investor would understand the statements. *Cf. In re Adams Golf,* 381 F.3d at 279 ("[M]eaningfully cautionary statements can render the alleged omissions or misrepresentations of forward-looking statements immaterial as a matter of law."); *EP Medsystems,* 235 F.3d at 876–77 n.5 (explaining that a prospectus connected to an initial public offering contained "numerous cautionary warnings"); *Grossman,* 120 F.3d at 1121–23 (explaining that the Bespeaks Caution doctrine applies to forward-looking statements contained in a registration statement).

Statement Three is a cautionary statement, is labeled a risk factor, and is forward-looking. It falls squarely within the Bespeaks Caution doctrine's protection. *Cf. Parnes,* 122 F.3d at 548. Plumber's Local's argument that Root should have said its marketing strategy *was* affecting Root's CAC, instead of saying that it *could,* fails. *Bondali v. Yum! Brands, Inc.,* 620 F. App'x 483, 491 (6th Cir. 2015) (quoting *In re FBR, Inc. Sec. Litig.,* 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) ("[C]autionary statements are 'not actionable to the extent plaintiffs contend defendants should have disclosed risk factors 'are' affecting financial results rather than 'may' affect financial results.' ") (citations omitted)); *Zeid v. Kimberley,* 930 F. Supp. 431, 437 (N.D. Cal. 1996) (explaining that a fraud-based claim cannot be founded on boilerplate warnings and disclaimers when there is no evidence that the warnings were not false themselves). Statement Three is not a sham warning, and a reasonable investor would understand as much. The district court did not err.

### c. Control Person Liability

For a control person to be liable under Section 15 of the 1933 Act, the person whom he controlled must be liable for a violation of Section 11 or 12. 15 U.S.C. § 77*o*; *see also Local 295/Local 851 IBT Emplr. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp,* 731 F. Supp. 2d 689, 714–15 (S.D. Ohio

2010) (citing *J & R Mktg., SEP v. Gen. Motors Corp.,* 549 F.3d 384, 398 (6th Cir. 2008)). Because there is no primary violation of either Section 11 or 12(a)(2), there is no control-person liability in this matter.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's motion to dismiss.

CLAY, Circuit Judge, dissenting in part and concurring in the judgment.

## CONCURRENCE / DISSENT

I agree with the majority opinion that Plaintiffs in this matter have failed to state **\*690** a claim because the alleged misstatements are, for the reasons stated by the majority, not actionable under the securities laws. However, I would not subject Plaintiffs' entire complaint to the heightened Rule 9(b) standard reserved for allegations of fraud. Rather, because Plaintiffs have alleged violations of Sections 11 and 12 of the 1933 Securities Act, based on a theory of negligence and sufficiently separated from their fraud allegations, I would apply the typical Rule 8 standard to these claims. I join in the outcome in this case because I believe Plaintiffs have failed to state a claim under that standard.[1] But I write separately to explain my concern that the majority's approach could unnecessarily dissuade securities litigants from bringing every claim that the securities laws permit (or result in the dismissal of such claims), contradicting both the purpose of the securities laws and reasoning from the Supreme Court.

[1]    Because the majority and I share the view that Plaintiffs satisfy Rule 9(b) but still fail to state a cognizable claim, the majority could have decided not to reach the issue of when a violation of the securities laws predicated on a theory of negligence trigger Rule 9(b), but rather could've saved that issue for another case in which resolution of this issue would've been dispositive.

As the majority explains, Sections 11 and 12 of the Securities Act of 1933 give rise to liability for misstatements—and, importantly, do not contain fraud as an element but may be pleaded based on a theory of negligence. Section 10(b) of the Securities Act of 1934, meanwhile, is a "catchall antifraud provision" that requires the plaintiff to allege that

Kolominsky v. Root, Inc., 100 F.4th 675 (2024)
Fed. Sec. L. Rep. P 101,852, 118 Fed.R.Serv.3d 1399

the defendant acted with the "intent to deceive, manipulate, or defraud." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). When such claims are pleaded together, as happens often and as occurred in this case, the Courts of Appeals are split on the question of whether and when the Rule 9(b) pleading standard applies to claims that can be pleaded with mere negligence. *See, e.g.,* *Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004) (applying Rule 9(b) to negligence claims where they rely on the "same course of conduct" as a Section 10(b) claim); *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 272–73 (3d Cir. 2006) (holding that Securities Act claims that allege negligence and are pleaded separately from Section 10(b) claims will not trigger the Rule 9(b) standard); *In re NationsMart Corp. Sec. Litig.,* 130 F.3d 309, 314 (8th Cir. 1997) (establishing a categorical rule that claims brought under Section 11 or 12 face the Rule 8 standard because those causes of action do not include fraud or mistake as an element).

We have already weighed in on this issue, holding that "although § 11 claims do not require pleading of scienter, Rule 9(b) pleading standards still apply to § 11 claims that sound in fraud." *Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.,* 719 F.3d 498, 502 (6th Cir. 2013), *vacated on other grounds by Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,* 575 U.S. 175, 135 S.Ct. 1318, 191 L.Ed.2d 253 (2015). However, *Omnicare* offered little guidance as to what in a complaint indicates that a claim "sounds in fraud." Perhaps in an attempt to provide such guidance, the majority holds that a complaint "sounds in fraud" when Section 10(b) claims "employ the same facts as a 1933 Act Section 11 claim or 12(a)(2) claim." Maj. Op. at 683. The majority then applies this standard to the instant case, concluding that, because Plaintiffs' claims "were all grounded in *one* fraudulent course of conduct" and "rely[ ] on *one* set of facts," Rule 9(b) should apply. **\*691** *Id.* at 684. But this formulation is the majority's, not our precedent's. Contrary to the majority's claim that we are "bound by our precedent," our case law has never required that negligence claims that rely on the same set of facts as fraud claims face Rule 9(b). Rather, *Omnicare* merely noted that the negligence claims in that case "sounded in fraud," thus triggering Rule 9(b) with no mention of a "unified course of fraudulent conduct." 719 F.3d at 502–03. I therefore part ways with the majority for two reasons.

First, the majority adopts a categorical approach that will subject almost every negligence claim under Sections 11 or

12 to a heightened pleading standard when pleaded alongside fraud claims under Section 10(b). Like many plaintiffs who combine multiple allegations, securities litigants often rely on the same set of facts to allege violations of different securities laws based on different theories of liability. *See Huddleston,* 459 U.S. at 383, 103 S.Ct. 683 ("[I]t is hardly a novel proposition that the Securities Exchange Act and the Securities Act prohibit some of the same conduct." (citation omitted)). The majority's standard would require plaintiffs who rely on the same set of facts to face an unnecessary heightened pleading rule for their negligence claims just because they seek full vindication of their rights under the securities laws. And the majority's holding is particularly perplexing given that even courts that profess to apply Rule 9(b) to allegations of negligence do so in a piecemeal manner. *See In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n.3 (9th Cir. 1996) ("[T]he scienter requirement of Rule 9(b) does not apply to Section 11 claims, as such claims may be based on negligent or innocent misstatements or omissions."). Such a dissonant result is not required by either our precedent, that of the Supreme Court, or the securities laws.

The majority attempts to mitigate the potential harm of its standard by stating that "when a 1933 Act plaintiff brings a Section 11 or 12(a)(2) claim that does *not* rely on one unified course of fraudulent conduct but, rather, carefully distinguishes the fraud claims from other claims, then we apply the Rule 8(a) pleading standard to those non-fraud claims." Maj. Op. at 683. But this is a Band-Aid on a bullet hole, and an illusory one at that. Plaintiffs' attempts to "carefully distinguish" their claims in this case were rebuffed by the majority. Plaintiffs' complaint specifically alleged negligence with their negligence claims and fraud with their fraud claims, raised the claims in separate counts of the complaint, and disavowed any allegations of fraud with their Section 11 and 12 claims. In my view, this is plenty to "carefully distinguish" Plaintiffs' negligence claims from their fraud claims such that the fraud claims need not "contaminate" the entire complaint. *See Suprema Specialties,* 438 F.3d at 272–73.

Second, the majority's approach is likely to discourage securities plaintiffs from bringing claims under both Sections 11 and 12 and Section 10(b), out of fear that their negligence claims will be forced to meet an unnecessary and more stringent standard. Applying Rule 9(b) even when plaintiffs, as in this case, diligently differentiate their fraud claims from their negligence claims "would effectively preclude plaintiffs from filing suit under Section 11 and Section 12(a)(2) as

well as Section 10(b)(5)." *Id.* at 273. Much like the Third Circuit, I find that "[t]here is no suggestion that Congress intended such an incongruous approach." *Id.* And I believe this standard contradicts the Supreme Court's reasoning in *Huddleston* which, as discussed above, explicitly blessed the securities laws assigning liability for overlapping conduct. *Huddleston,* 459 U.S. at 383, 103 S.Ct. 683. Contrary to *Huddleston*'s instruction that **\*692** courts should construe the securities laws "not technically and restrictively, but flexibly to effectuate [their] remedial purposes," *id.* at 386–87, 103 S.Ct. 683, the majority's newly-fashioned rule will undoubtedly lead some plaintiffs to shed some potentially meritorious claims so as to avoid triggering the demanding Rule 9(b) standard.

Even worse, as a result of the majority's holding, more meritorious negligence claims under Section 11 and 12 will be dismissed under a standard that they would never have to meet were they alleged on their own. We need not apply Rule 9(b) so broadly as to foreclose vindication of the securities laws, which Congress enacted to better protect consumers and the integrity of the financial system as a whole. *Id.* at 383, 103 S.Ct. 683. But courts that apply Rule 9(b) even to claims of negligence, just because they rely on the same set of facts as a 10(b) claim, frequently dismiss the negligence claims for failure to meet Rule 9(b)'s specificity requirements. *See, e.g., California Pub. Employees' Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 172 (3d Cir. 2004) (Sloviter, J., dissenting) (protesting that the majority dismissed a possibly meritorious Section 11 claim for failure to meet the Rule 9(b) standard and stating that he would have given leave to amend). Doing so undermines, without justification, the very goals that the securities laws were meant to advance. Rule 9(b) is meant to ensure "that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir. 2008). In this case and many others, no one has claimed that securities defendants do not have proper notice of the allegedly illegal conduct. Again, given *Huddleston*'s endorsement of Sections 11 and 10(b) criminalizing the same conduct, and given that the law generally allows plaintiffs to allege many causes of action—with different elements, based on the same set of facts—it seems needless to require plaintiffs to either allege their claims as completely separate actions (which a district court would likely consolidate), shed one of their claims, or risk dismissal of their entire action if the pleadings fail to meet Rule 9(b).

It should be noted that some circuits have observed that the remedy for a failure to satisfy Rule 9(b) need not be the harsh sting of dismissal. If a plaintiff fails to allege fraud with sufficient particularity, courts have the power to strip the allegations of fraud from the claim and evaluate whether a claim has been stated. *See In re NationsMart Corp. Sec. Litig.,* 130 F.3d 309, 315 (8th Cir. 1997) ("The only consequence of a holding that Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be stripped from the claim .... The allegations of innocent or negligent misrepresentation, which are at the heart of a § 11 claim, would survive".); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir. 2001) ("Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated."); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]n a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."). Hopefully, a future panel of this Court, or the Supreme Court, can clarify the law along the lines described **\*693** here, so that the majority's untenable views are not sustained.

**All Citations**

100 F.4th 675, Fed. Sec. L. Rep. P 101,852, 118 Fed.R.Serv.3d 1399

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.