**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE MYLAN N.V. SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR <br><br> <u>CLASS ACTION</u> <br><br> **Electronically Filed** |

<u>**LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE**</u>
<u>**OF SUPPLEMENTAL AUTHORITY AND NOTICE OF SUPPLEMENTAL**</u>
<u>**AUTHORITY**</u>

Lead Plaintiff respectfully responds to Defendants' submission regarding *Eden Alpha CI LLP v. Polished.com Inc.*, --- F. Supp. 3d ---, 2025 WL 296998 (E.D.N.Y. Jan. 24, 2025) and referencing the affirmance of certain cases cited in Defendants' briefings on Plaintiff's Motion to Clarify (D.I. 95) and Defendants' Motion for Judgment on the Pleadings (D.I. 105) (together, the "Motions").

First, Defendants' reliance on *Eden Alpha* is misplaced. In *Eden Alpha*, the court dismissed the scheme liability claims because they rested solely on "a single conclusory statement" without explaining how the alleged practices targeted investors, unlike the present case. *Id.* at *30. Critically, the court rejected the former employee accounts underpinning the purported scheme because they were "unmoored in time," made by individuals not positioned to know attributed facts, "insufficiently particular," and often based on secondhand information. *Id.* at *12-14. The court thus concluded that "[a]t no point does [p]laintiff articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it." *Id.* at *30 (citation omitted).

By contrast, this Court has already determined that the Complaint establishes a "pervasive" and "top-down" scheme "designed to dupe the FDA and ignore regulatory compliance best

practices in the name of juicing manufacturing output and increasing corporate profits." D.I. 88 at 35-36. This scheme rests on reliable, specific allegations sourced from former employees, detailed investigative reporting, and FDA correspondence. D.I. 88 at 7-14, 35-36. The Complaint's scheme allegations depend on specific deceptive conduct such as: (i) retesting out-of-specification drug products, (ii) pre-injecting drug samples to avoid recording failed results, (iii) manipulating test reports, and (iv) bypassing required quality risk assessments. Compl. ¶¶ 109-25. Unlike *Eden Alpha*, the Complaint details how Defendants engaged in this deceptive conduct for the clear purpose of pacifying the FDA so they could continue marketing and selling drugs, and how this conduct directly misled investors about the material issue of Mylan's ability to produce certain volumes of drugs in compliance with cGMP and data integrity requirements. Compl. ¶¶ 43, 61, 153-162; *see* D.I. 110 at 20-24.

*Eden Alpha* is further distinguishable because Defendants here reiterated to investors the significance of the Company's compliance with cGMP in Mylan's regulatory filings. *See, e.g.*, Mylan's 2016 Form 10-K at 11 ("An additional requirement for FDA approval of NDAs and ANDAs is that our manufacturing procedures and operations conform to FDA requirements and guidelines, generally referred to as current Good Manufacturing Practices ('cGMP').") (attached hereto as Exhibit A). Defendants' known cGMP regulatory obligations and public statements explaining their importance to investors satisfies the reliance element for Mylan's "pervasive" fraudulent scheme. *In re Firstenergy Corp.*, 2022 WL 681320, at \*27 (S.D. Ohio Mar. 7, 2022) (discussing "a deceptive public-facing 'cover' that would be reflected in share prices and relied on by investors" in a fraudulent scheme case).

Second, Defendants' update on cases cited in their briefings is not relevant to the disputes before the Court. *See* D.I. 117 at 2 (citing *In re Ocugen, Inc. Sec. Litig.*, 2023 WL 2351695 (E.D.

Pa. Mar. 3, 2023); *Teamsters Local 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*, 2022 WL 5236833 (W.D. Tenn. Oct. 5, 2022); *Kolominsky v. Root, Inc.*, 2023 WL 3215056 (S.D. Ohio Mar. 31, 2023)).  The appellate decisions do not address the points for which Defendants cited them at all.  They shed no additional light on the issues of scheme liability or loss causation to be discussed at the upcoming hearing on the Motions.

Finally, Lead Plaintiff respectfully submits its own Notice of Supplemental Authority to apprise the Court of *In re Coinbase Global, Inc. Securities Litigation*, 2024 WL 4053009 (D.N.J. Sept. 5, 2024) (attached hereto as Exhibit B) and *Oklahoma Firefighters Pension & Retirement System v. Musk,* 2025 WL 951231 (S.D.N.Y. Mar. 28, 2025) (attached hereto as Exhibit C)*,* two recent decisions relevant to the issues to be addressed during the upcoming oral argument on the Motions.

In *Coinbase*, the district court reinforced that "allegations of loss causation are ***not*** subject to the heightened pleading requirements of Rule 9(b) and the PSLRA," rather, "a plaintiff need only to allege 'the misrepresentation [or omission] ***touches upon*** the reasons for the investment's decline in value.'" Ex. B at \*17.  Thus, the court made clear that "[t]he Third Circuit applies a 'practical approach [to loss causation], in effect applying general causation principles.'" *Id*.

In *Musk*, the district court's decision is relevant on the issue of scheme liability— specifically, whether deceptive acts are limited to public misstatements and whether investors rely on a company's compliance with regulatory requirements. The alleged scheme in *Musk* involved an omission of the defendant's stock ownership in violation of SEC Rule 13 and stock purchases manipulated to conceal the illicit scheme. *See* Ex. C at \*5-20.  The court sustained the plaintiff's scheme liability claim based on at least two relevant holdings.  First, the court found that non-public acts, including "a coordinated trading strategy to silently build up Musk's position in

3

Twitter" constituted a deceptive act sufficient to establish a scheme. Ex. C at *13; *see* D.I. 95 at 7-10; D.I. 110 at 18-20. Second, the court found that "[a]n intentional failure to disclose beneficial ownership information when disclosure was expressly required signals falsely to investors that there is no such ownership to disclose." Ex. C at *14; *see* D.I. 110 at 20-24.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Salvatore Graziano*
Salvatore Graziano (admitted *Pro Hac Vice*)
Katherine M. Sinderson (admitted *Pro Hac Vice*)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax: (212) 554-1448
salvatore@blbglaw.com
katiem@blbglaw.com

Andrew L. Zivitz (PA I.D. # 76554) (admitted *Pro Hac Vice*)
David A. Bocian (PA I.D. # 315542) (admitted *Pro Hac Vice*)
Nathaniel C. Simon (PA I.D. # 326467)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056
azivitz@ktmc.com
dbocian@ktmc.com
nsimon@ktmc.com

Jennifer L. Joost (PA I.D. # 204193)
(admitted *Pro Hac Vice*)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel.: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

John Davidson (admitted *Pro Hac Vice*)
**DAVIDSON BOWIE, PLLC**
1062 Highland Colony Parkway, Suite 275
Ridgeland, MS 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public*
*Employees' Retirement System of Mississippi*

Colin Callahan (PA I.D. # 328033)
**FLANNERY GEORGALIS, LLC**
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 254-8602
ccallahan@flannerygeorgalis.com

*Liaison Counsel for Lead Plaintiff*

5

**CERTIFICATE OF SERVICE**

I, Salvatore Graziano, hereby certify that on May 16, 2025, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's CM/ECF automated filing system.

*/s/ Salvatore Graziano*
Salvatore Graziano