**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE MYLAN N.V.<br>SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200

Nina F. Locker (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Mark R. Yohalem (*pro hac vice pending*)
Madelyn Y. Chen (*pro hac vice pending*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Counsel for Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................... 7

I.      The Court Should Certify the Order for Interlocutory Review ........................................... 7

          A.      The Order Presents a Controlling Question of Law .................................................. 8

          B.      A Substantial Ground for Difference of Opinion Exists on this Question ........... 13

          C.      Immediate Appeal Would Materially Advance the Litigation ............................. 18

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abramson v. NewLink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)..........................................................................................17

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................................3

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)......................................................................................................10

*Bradburn Parent Tchr. Store, Inc. v. 3M*,
2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) ................................................................11

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023) .....................................................................................10, 13

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*,
2022 WL 548123 (D. Del. Feb. 11, 2022) ...................................................................11

*Dudley v. Haub*,
2013 WL 1845519 (D.N.J. Apr. 30, 2013) .............................................................17, 18

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................14, 15, 16, 17, 18

*F.T.C. v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014) .................................................................................18

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*,
657 F. Supp. 2d 504 (D.N.J. 2009) ...............................................................................14

*Hall v. Johnson & Johnson*,
2019 WL 7207491 (D.N.J. Dec. 27, 2019) ..................................................1, 15, 16, 17

*In re Allergan Generic Drug Pricing Sec. Litig.*,
2019 WL 3562134 (D.N.J. Aug. 6, 2019) ....................................................................18

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997).................................................................................2, 9, 10

*In re Cargill Meat Sols. Wage & Hour Litig.*,
2008 WL 11366373 (M.D. Pa. July 11, 2008)................................................................8

*In re Cybershop.com Sec. Litig.*,
189 F. Supp. 2d 214 (D.N.J. 2002) .................................................................................1

*In re JRV Grp. USA L.P.*,
2022 WL 3646288 (D. Del. Aug. 24, 2022) ...................................................................8

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002)....................................................................................11, 12

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ..........................................................................................9

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006)...........................................................................................10

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) .......................................................................................2, 9

*Katyle v. Penn Nat. Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ..............................................................................12, 13, 15

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974)...............................................................................1, 7, 8, 9, 11

*Knipe v. SmithKline Beecham*,
  583 F. Supp. 2d 553 (E.D. Pa. 2008) ..................................................................14, 18, 19

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ..............................................................................1, 16, 17

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
  716 F.3d 229 (1st Cir. 2013)...........................................................................................17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006)............................................................................................................2

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ..................................................................................11, 12

*Miller v. Asensio & Co.*,
  364 F.3d 223 (4th Cir. 2004) ........................................................................................12

*Nakkhumpun v. Taylor*,
  782 F.3d 1142 (10th Cir. 2015) .....................................................................................17

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  830 F.3d 376 (6th Cir. 2016) ......................................................................................1, 17

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ........................................................................................16

*Overdam v. Texas A&M Univ.*,
  43 F.4th 522 (5th Cir. 2022) ..........................................................................................9

*Palmer v. Sanderson*,
  9 F.3d 1433 (9th Cir. 1993) .......................................................................................3, 11

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*,
  830 F. Supp. 1549 (D.N.J. 1993).................................................................................8, 11

*Sapssov v. Health Mgmt. Assocs., Inc.*,
608 F. App'x 855 (11th Cir. 2015) ....................................................................16

*SEC v. Rocklage*,
2005 WL 8175998 (D. Mass. Dec. 14, 2005) ....................................................2

*Small v. Lower Paxton Twp.*,
2024 WL 691360 (M.D. Pa. Feb. 20, 2024) .....................................................18

*Suna v Bailey Corp.*,
107 F.3d 64 (1st Cir. 1997) ...............................................................................10

*Teachers' Ret. Sys. v. Hunter*,
477 F.3d 162 (4th Cir. 2007) .............................................................................15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ...................................................................................2, 3, 9

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
475 F.3d 824 (7th Cir. 2007) .............................................................................16

*United States ex rel. Brown v. Pfizer, Inc.*,
2017 WL 2691927 (E.D. Pa. June 22, 2017) ...............................................18, 19

*Weitzner v. Sanofi Pasteur, Inc.*,
2014 WL 1786500 (M.D. Pa. May 5, 2014)......................................................13

## STATUTES

28 U.S.C. § 1292(b) .................................................................1, 2, 3, 7, 9, 18

## RULES

Fed. R. Civ. P. 8(a) ............................................................................ *passim*

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

**INTRODUCTION**

Defendants seek certification for interlocutory appeal of an important question of pure law that has divided the federal courts: Whether Rule 9(b)'s exacting pleading standard—or Rule 8(a)'s forgiving one—applies to allegations of loss causation in a Section 10(b) action.

"The Third Circuit has not answered this question," and the Order, by declining to apply "Rule 9's heightened pleading standard" for loss causation, goes against "the 'majority' position" among the circuits that have. (Order at 4 n.2.) "[T]he Fourth, Seventh, Ninth, and Eleventh Circuits apply Rule 9(b) as the pleading standard for loss causation." *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *26 (D.N.J. Dec. 27, 2019). Only the Fifth and Sixth apply Rule 8(a). *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 256 (5th Cir. 2009); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 384 (6th Cir. 2016). Notwithstanding the weight of circuit authority, the Court joined other "courts in this Circuit that have recently decided the issue" and "rejected the stricter standard," requiring only "a short and plain statement." (Order at 4 n.2, 8.)

The Court indicated that its application of Rule 8(a)'s lenient standard was "important" to its rejection of Defendants' "present challenge." (Order at 8.) That makes sense: even if Plaintiff's loss-causation allegations could be deemed to satisfy "[t]he only thing required" by Rule 8(a) (*i.e.*, basic notice), *id.*, they cannot meet the "exacting standard [of] Rule 9(b)," *see In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 225 (D.N.J. 2002). If Rule 9(b) applies, the loss-causation allegations are inadequate, and Plaintiff's misrepresentation claim fails. The Court's rejection of the Rule 9(b) standard for loss causation thus merits certification under Section 1292(b) as (1) a "controlling question of law," as to which (2) there is "substantial ground for difference of opinion," and (3) an immediate appeal would "materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc).

1

The interplay of pleading standards and securities fraud claims underscores why certification is necessary here. "[M]otions to dismiss based on the failure to state a claim present quintessential controlling questions of law for the purpose of § 1292(b)," *SEC v. Rocklage*, 2005 WL 8175998, at *2 (D. Mass. Dec. 14, 2005), particularly where, as here, "[p]leading standards in federal litigation are in ferment," *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627 (7th Cir. 2010) (Posner, J.). That consideration applies with special force to a split over the pleading standards for securities fraud litigation. The last major divergence over how Rule 9(b) applied to securities fraud concerned scienter—with some circuits allowing the kind of thin pleading that satisfied the Court as to loss causation here, and others imposing a heightened pleading standard. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319-20 (2007). Congress was dismayed over the lack of "a uniform pleading standard for § 10(b) actions," *id.*, and disturbed by how the failure to apply "heightened pleading requirements" permitted "extortionate settlements" because "substantial settlement value" was created by the mere "pendency of the lawsuit," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80-81 (2006) (cleaned up); *accord In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("Rule 9(b)'s heightened pleading standard … reduces the number of frivolous suits brought solely to extract settlements."). To ensure uniform application of a heightened pleading standard to scienter, Congress enacted the Private Securities Litigation Reform Act (PSLRA).

The same policy considerations support certification here. Whether a heightened pleading standard applies to an element of securities fraud has already been recognized by Congress and the Supreme Court as a question of great importance. *Tellabs*, 551 U.S. at 320. That is no less true for loss causation. But when courts reject the heightened standard and deny a dispositive motion, a defendant's only vehicle for appellate review is Section 1292(b); by the time of final judgment,

2

the issue is moot. *See Palmer v. Sanderson*, 9 F.3d 1433, 1435 n.1 (9th Cir. 1993) ("[A] challenge to the specificity of a complaint is properly raised only in a motion to dismiss."). Further, it is no relief that a defendant can disprove loss causation at some later stage—Congress "impose[d] heightened pleading requirements for securities-fraud actions" because it recognized that, after the pleading stage, the costs of discovery and the continued pendency of the suit create incredible "settlement pressures." *See, e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 475-76 (2013) (cleaned up); *accord, e.g.*, *Tellabs*, 551 U.S. at 313, 320-21; *id.* at 336 (Stevens, J., dissenting) (agreeing with the majority that "[t]he basic purpose of the heightened pleading requirement in the context of securities fraud litigation is to protect defendants from the costs of discovery and trial in unmeritorious cases"). Unsurprisingly, out of 217 federal securities class actions that resolved in 2024, none made it to trial.[1]

If—as four circuits already have held—this Court erred in denying Defendants the benefits of applying "[e]xacting pleading requirements" to loss causation, *Tellabs*, 551 U.S. at 313, an interlocutory appeal is the only way to correct that error and fulfill the important policies behind heightened pleading standards. The requirements for certification under Section 1292(b) are satisfied, and this Motion should be granted.

**BACKGROUND**

Mylan (now Viatris Inc.) manufactures billions of doses of generic drugs at dozens of manufacturing facilities worldwide. (ECF No. 39 ("Compl.") at ¶¶ 2, 26.) As a drug manufacturer, Mylan is subject to periodic inspections by the FDA to monitor compliance with quality control regulations, including Current Good Manufacturing Practices. (*Id.* at ¶ 2.)

---

[1] *See* Edward Flores and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review" (NERA Jan. 22, 2025), https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--2024-full-y.html.

3

In fall 2016, the FDA inspected Mylan's facilities in Nashik, India and Morgantown, West Virginia, and in spring 2018, the FDA again inspected the Morgantown facility. (Compl. at ¶¶ 12, 91, 95, 164.) After the spring 2018 inspection of Morgantown, Mylan publicly announced that the Morgantown facility would be restructured and "right-sized" to be "less complex." (*Id.* at ¶ 11.) Mylan explained that these changes were "consistent with discussions … with the FDA." (*Id.*)

In January 2019, as part of a series about the generic drug industry, *Bloomberg* published an article titled "Culture of 'Bending Rules' in India Challenges U.S. Drug Agency," regarding the generic drug manufacturing industry in India and including comments about Mylan's Nashik facility. (Compl. at ¶ 144; ECF No. 47, Ex. 39.) The *Bloomberg* article featured comments from Nashik plant employees who claimed that, at the time of the 2016 inspection in which the FDA made observations regarding laboratory testing issues, technicians purportedly failed to follow quality-check rules. (ECF No. 47 Ex. 39 at 1, 5-6.) In response to these comments about its Nashik facility, a Mylan spokesperson stated in the same article that "[a]ny explicit or implicit suggestion that Mylan employees circumvented data and quality-systems that jeopardized the quality of the medications we manufacture—for time pressures or any other reason—is simply false." (*Id*. at 6.)

***Motion to Dismiss***. Claiming that Mylan had made false or misleading representations to investors about its regulatory-compliant product quality control processes, the lead Plaintiff filed a putative securities class action in June 2020 alleging violations of Sections 10(b) and 20(a) of the Exchange Act. (Compl. at ¶¶ 1, 344-354.) Specifically, Plaintiff alleged that Defendants had made *46* false and misleading statements to the public because "Mylan's manufacturing facilities, including its flagship Morgantown facility … were rife with systemic, egregious, and long-standing CGMP and data integrity failures." (*Id.* at ¶¶ 5, 252-327.) Under Plaintiff's theory, Mylan's stock "traded at artificially inflated prices" due to these alleged misrepresentations, and

4

the stock price fell "when the relevant truth regarding Defendants' prior misrepresentations and omissions of material fact were disclosed to the market." (*Id*. at ¶¶ 328-29.) Defendants moved to dismiss the Complaint in full, highlighting that Plaintiff's theory lacked any facts demonstrating that Mylan intentionally or recklessly misled securities investors by not immediately disclosing the FDA's post-inspection observations. (ECF Nos. 46, 54.)

In granting in part and denying in part Defendants' motion to dismiss, the Court "narrowed the claims at issue to … one actionable misrepresentation." (ECF No. 88 at 40.) What remained was the Mylan representative's statement in the *Bloomberg* article disputing the Nashik employees' suggestion that "employees [had] circumvented data and quality systems." (*Id*. at 30.) The Court held that Plaintiff's misrepresentation claim hinged on this statement, and that because Defendants had argued that Plaintiff's "scheme liability" claim under Rule 10b-5 was "entirely derivative" of the misrepresentation claim, the scheme liability claim also survived. (*Id*. at 38.)

***Motion for Judgment on the Pleadings***. After the Court narrowed the case, Defendants moved for judgment on the pleadings and Plaintiff moved for clarification of the motion-to-dismiss opinion. (Order at 1.) Defendants' motion emphasized that Plaintiff's misrepresentation claim based on the statement reported in *Bloomberg*'s "Culture of 'Bending Rules' in India Challenges U.S. Drug Agency" failed because Plaintiff's loss-causation allegations relied on "corrective disclosures" related solely to the Morgantown facility. (ECF No. 106 at 11-12.) These corrective disclosures, Defendants explained, revealed nothing about the circumvention of data and quality systems that was denied in the *Bloomberg* statement, and revealed no new information regarding the Morgantown remediation. (*Id*. at 9-14.) Defendants also argued that the scheme liability claim failed for lack of loss causation and reliance, and because Plaintiff could not repackage misrepresentation claims as scheme-liability claims. (*Id*. at 16-20.)

5

In arguing that Plaintiff had inadequately pleaded loss causation, Defendants noted that "[t]here is a circuit split regarding whether the more stringent pleading requirement of Rule 9(b) or the less stringent pleading requirement of Rule 8(a) applies to loss causation, with the majority of circuits concluding that Rule 9(b) applies." (ECF No. 106 at 7 n.5.) Defendants urged the Court to "adopt the majority view and apply Rule 9(b)," because "loss causation is an element of securities fraud, which is itself a species of fraud, and Rule 9(b) clearly applies to fraud." (*Id.*) Defendants alternatively argued that the allegations failed even under the Rule 8(a) standard. (*Id.*)

Plaintiff responded by arguing that (1) district "[c]ourts in this Circuit have consistently analyzed loss causation under Rule 8(a), rather than the more stringent requirements of Rule 9(b)," and (2) the Complaint's "allegations easily plead loss causation under Rule 8(a)." (ECF No. 110 at 7-10 (cleaned up)). Plaintiff did not argue that the allegations satisfied Rule 9(b). (*See id.*)

The Court denied both Defendants' motion for judgment on the pleadings and Plaintiff's motion for clarification. (Order at 1.) In evaluating Defendants' "threshold argument that loss causation must be analyzed under the Rule 9(b) specificity standard," the Court acknowledged that the "Third Circuit has not answered this question." (*Id.* at 4 n.2.) However, the Court noted that "[district] courts in this Circuit that have recently decided the issue have rejected the stricter standard," and the Court "agree[d] with this approach." (*Id.*) In ruling that Plaintiff's loss-causation allegations were adequate, the Court explicitly stated that "the posture of the present challenge" was "important" to that conclusion. (*Id.* at 8.) Mirroring the language of Rule 8(a)(2), the Court ruled that the present posture required only "a short and plain statement of the claim," one that would provide Defendants with "some indication of the loss and the causal connection that the plaintiff has in mind." (*Id.*) The Court remarked that "[t]his is not a 'heavy' burden." (*Id.*) Under that light burden, Plaintiff's obligation to plead loss causation was deemed satisfied by the

6

allegations that Mylan's earnings releases disclosing revenue declines and additional costs attributed to the Morgantown restructuring *indirectly* "revealed some partial truth about the falsity of Mylan's *Bloomberg Law* representations." (*Id.* at 7-8.)

As for Plaintiff's scheme claim, the Court declined (for now) to "narrow the scheme claim to the *Bloomberg Law* misrepresentation (or affirmatively broaden it)," and denied Plaintiff's motion for clarification. (Order at 16-17.) The Court ruled that Plaintiff adequately alleged loss causation and reliance for the scheme claim. (*Id.* at 12-13.) Noting that while Plaintiff made an "interesting" argument that "deceiving the FDA deceives the market," the Court stated that it "need not reach" that argument because the *Bloomberg Law* misrepresentation "survives" and was a "hook" for scheme liability. (*Id.* at 14-15.) The Court also declined to dismiss the scheme claim as duplicative of the misrepresentation claim, because in supporting the scheme claim Plaintiff made other "allegations of deceptive conduct … in addition to the actionable *Bloomberg Law* misrepresentation." (*Id.* at 15-16.)

## ARGUMENT

### I.    The Court Should Certify the Order for Interlocutory Review

The Court should certify the Order under § 1292(b) because it (1) involves a "'controlling question of law,'" as to which (2) there is "'substantial ground for difference of opinion' as to its correctness," and (3) an immediate appeal would "'materially advance the ultimate termination of the litigation.'" *Katz*, 496 F.2d at 754 (quoting 28 U.S.C. § 1292(b)). "The key consideration" is whether the order "truly implicates the policies favoring interlocutory appeal," including "the avoidance of harm to a party … from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Id.* at 756. Granting certification here would be a "practical application of those policies." *See id.*

Moreover, certification of the question of the correct pleading standard for loss causation is warranted because that question has far-reaching implications beyond this case. The Third Circuit has not yet weighed in on this issue, which bears on all securities fraud actions and over which at least six circuits have split. *See, e.g.*, *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1556 (D.N.J. 1993) (certification warranted because "[t]he outcome of this issue will affect not only the manner in which these pending suits are litigated but future compliance with the statutory notice provision of the Clean Water Act"). This Court's Order adds to the weight of district court decisions within the Third Circuit that have applied the lower standard—an approach rejected by the majority of the circuits to address the issue. But in cases like this one, only 1292(b) certification will give the Third Circuit the opportunity to decide whether the district courts' rejection of Rule 9(b) is correct. Given the "uniqueness, exceptionality, or extraordinary importance of the question of law involved, and the magnitude of the case itself," these factors "should be taken into consideration in every case in determining whether 1292(b) certification is appropriate." *In re Cargill Meat Sols. Wage & Hour Litig.*, 2008 WL 11366373, at *7 (M.D. Pa. July 11, 2008) (cleaned up).

### A.    The Order Presents a Controlling Question of Law

Whether the applicable pleading standard for loss causation is Rule 8(a) or Rule 9(b) is indisputably a "pure question of law," one that the "court of appeals could decide quickly and cleanly without having to study the record." *See In re JRV Grp. USA L.P.*, 2022 WL 3646288, at *6 (D. Del. Aug. 24, 2022) (cleaned up). And it is a "controlling" question because its resolution would be "serious to the conduct of the litigation, either practically or legally." *See Katz*, 496 F.2d at 755. Notably, Plaintiff did not argue that the Complaint's loss-causation allegations would satisfy Rule 9(b), only that they were sufficient under Rule 8(a) and that loss causation was not

"subject to the heightened pleading standard[] set forth in Rule 9(b)," so that the Court "need not consider the particularity of the Complaint's allegations." (ECF No. 110 at 6-10.)

Indeed, the determination of the "proper pleading standard" has been recognized in other circuits as a "controlling question[] of law" appropriate for § 1292(b) certification. *See Overdam v. Texas A&M Univ.*, 43 F.4th 522, 526 (5th Cir. 2022) (considering on a § 1292(b) appeal the "controlling question[]" of "the proper pleading standard for a Title IX challenge to a university's disciplinary proceeding"); *Text Messaging*, 630 F.3d at 625 (a "question [that] requires the interpretation, and not merely the application, of a legal [pleading] standard" is a controlling question of law). As the Order itself emphasized, "the posture of the present challenge"—*i.e.*, the applicable pleading standard—was "important" to the outcome. (Order at 8.) That is true on both the practical and legal levels, either of which is sufficient to establish a controlling question of law. *See Katz*, 496 F.2d at 754-55.

1. "[O]n the practical level," an immediate appeal that led to the imposition of a heightened pleading standard for loss causation would effectuate a "saving of time of the district court and of expense to the litigants." *Katz*, 496 F.2d at 755 (characterizing these savings as a "highly relevant factor" in the "controlling question" analysis). Even the *dissent* in *Tellabs* recognized that "[t]he basic purpose of the heightened pleading requirement in the context of securities fraud litigation" is to achieve such practical effects by avoiding "the costs of discovery and trial in unmeritorious cases." 551 U.S. at 336 (Stevens, J., dissenting) (cleaned up); *accord id.* at 313, 320-21 (maj. op.). Put otherwise, "Rule 9(b) serves … to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996); *accord Burlington*, 114 F.3d at 1418 (noting

9

that "Rule 9(b)'s heightened pleading standard …. reduces the number of frivolous suits brought solely to extract settlements").[2]

The heightened pleading standard of Rule 9(b) achieves these practical benefits in two respects. First, it can screen out suits where the theory of liability is too nebulous or attenuated to be articulated with specifics and substance. Second, when plaintiffs *do* manage to satisfy the heightened pleading standard, their more particularized allegations can flush out flaws in their theory of liability: even after a complaint "is pleaded with the requisite particularity, [its] factual allegations must still satisfy the plausibility standard." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 681 (3d Cir. 2023). In both ways, Rule 9(b) can end—or at least narrow—cases at the pleading stage, thus achieving the practical benefits of reducing discovery costs and stopping the litigation of ultimately untenable claims.

The practical considerations underlying Rule 9(b) apply with special force in the securities context. For over 50 years, there "has been widespread recognition that litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975). For that reason, the Third Circuit has long held that Rule 9(b) must be "rigorously applied in securities fraud cases." *Burlington*, 114 F.3d at 1417; *accord, e.g.*, *Suna v Bailey Corp.*, 107 F.3d 64, 73 (1st Cir. 1997) (noting the First Circuit had "repeatedly emphasized Rule 9(b)'s heightened pleading requirements because of our concern that plaintiffs will bring baseless strike suits against securities

---

[2] The same is true of the complementary "heightened pleading requirements" of the PSLRA, which help curtail "abuses in securities class-action litigation, including: (1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; (2) the targeting of 'deep pocket' defendants; (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 n.8 (3d Cir. 2006) (cleaned up).

defendants" and had "been especially rigorous in applying Rule 9(b) to securities claims because of these concerns"). There is no reason to doubt that the practical benefits of such rigor accrue when Rule 9(b) is applied to loss causation, as they do for other aspects of a securities fraud claim.

In sum, the resources saved by the heightened pleading standard overlap with those that justify 1292(b) certification, making those savings "highly relevant" here. *See Katz*, 496 F.2d at 755. Indeed, interlocutory appeal is the only way to achieve the benefits of a heightened pleading standard if it has been erroneously denied. Not only is a defendant unable to challenge a complaint's failure to satisfy Rule 9(b) at a later stage, *see Palmer*, 9 F.3d at 1435 n.1, the resources protected by requiring particularized pleading are lost forever once the court and the defendant must bear the costs of discovery and further litigation.

2. On the legal level, "'controlling questions of law' are [those] important to the case," *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, 2022 WL 548123, at *2 (D. Del. Feb. 11, 2022) (cleaned up), and this Court already recognized that the applicable standard is "important" here (Order at 8). Rightly so. The "heightened pleading requirement" of Rule 9(b) would require more "precision and some measure of substantiation," *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002), of Plaintiff's allegations about loss causation. Whether such precision and substantiation are required to plead loss causation is an issue "of major significance to this, and other, litigation." *Hercules*, 830 F. Supp. at 1556. And while "resolution of the issue need not be determinative of any claim on the merits," it would be here. *See Bradburn Parent Tchr. Store, Inc. v. 3M*, 2005 WL 1819969, at *3 (E.D. Pa. Aug. 2, 2005).

The loss-causation requirement "polices the realm of § 10(b) claims, guarding against their use as an *in terrorem* device to force companies to settle claims simply to avoid the cost and burden of litigation." *Meyer v. Greene*, 710 F.3d 1189, 1196 (11th Cir. 2013). "Put another way, though

11

§ 10(b) is designed to protect against fraud, it is not a prophylaxis against the normal risks attendant to speculation and investment in the financial markets, and loss causation therefore ensures that private securities actions remain a scalpel for defending against the former, while not becoming a meat axe exploited to achieve the latter." *Id.* "For purposes of liability in a Rule 10b-5 case, a plaintiff's proof of damages proximately caused by the defendant seems to function as a gate-keeping requirement designed to forestall attenuated, and difficult to prove, claims." *Miller v. Asensio & Co.*, 364 F.3d 223, 230 (4th Cir. 2004). How well loss causation can do its gatekeeping job depends on whether Rule 9(b)'s heightened pleading standard applies. Requiring "substantiation," *Rockefeller Center*, 311 F.3d at 216, will help reveal "attenuated … claims," *Miller*, 364 F.3d at 230, allowing the loss-causation requirement to do its job as a "key sentinel" of securities fraud claims, *Meyer*, 710 F.3d at 1202.

If Rule 9(b)'s stricter pleading standard applied here, Plaintiff's unsubstantiated "indirect" theory of loss-causation would fail. Notably, the Complaint's flaw is not some want of technical specifics—a missing name or date—that could be readily cured through amendment. Rather, the flaw is that Plaintiff simply cannot plausibly substantiate a loss-causation theory that passes the screening function of Rule 9(b).

Under Rule 9(b), "the complaint must allege a sufficiently *direct* relationship between the plaintiff's economic loss and the defendant's fraudulent conduct." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011) (emphasis added); *see id.* at 471 (reviewing allegations of loss causation for "'sufficient specificity,' a standard largely consonant with [Rule 9(b)'s] requirement that averments of fraud be pled with particularity"). But as this Court correctly discerned, Plaintiff only "advance[d] an *indirect* theory" of loss causation: "that, by way of the Morgantown restructuring and remediation, the financial disclosures pertain to the 'scope and

12

impact' of Mylan's circumvention of data and quality control systems." (Order at 7 (emphasis added)). The Court concluded that "the effect of the restructuring and remediation" at Morgantown "doesn't directly" reveal "at least part of the falsity" of the January 2019 *Bloomberg* statement because the "Form 8-Ks and earnings calls don't mention data and quality control systems." (*Id.*)

While the Court ruled that Plaintiff's indirect theory "is enough" under the Rule 8(a) "short and plain statement" standard (*see* Order at 7-8), it is not "sufficiently direct" under the more exacting Rule 9(b) standard, *see Katyle*, 637 F.3d at 472. Plaintiff did not argue that the allegations would satisfy Rule 9(b) (*see* ECF No. 110 at 6-10), and the Court recognized that the applicable standard was "important" to the outcome here (Order at 8). As the Third Circuit has explained, under the "heightened pleading standards" of "Rule 9(b) and the PSLRA, a securities-fraud complaint *must contain more than 'a short and plain statement ….'" City of Warren*, 70 F.4th at 680 (emphasis added and cleaned up). Where, as here, Plaintiff pleads only an "attenuated" connection between "the defendant's alleged fraud and the plaintiff's economic harm," a "fraud claim will not lie" under Rule 9(b). *See Katyle*, 637 F.3d at 472 (cleaned up).

The legal importance of whether Rule 9(b) applies to every element of securities fraud *except* loss causation—to this case and others—is a further reason this qualifies as a controlling question of law.

### B.      A Substantial Ground for Difference of Opinion Exists on this Question

The well-documented and widely acknowledged circuit split on the proper pleading standard for loss causation presents the "clearest evidence of substantial grounds for difference of opinion." *See Weitzner v. Sanofi Pasteur, Inc.*, 2014 WL 1786500, at *2 (M.D. Pa. May 5, 2014) (cleaned up). This Court can "look to jurisdictions outside the one in which [it] sits when examining whether substantial grounds for disagreement on a given issue exist," even if there is

"no split of authority within this District." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 657 F. Supp. 2d 504, 509 (D.N.J. 2009). As this Court correctly noted in the Order, the Third Circuit "has not yet answered th[e] question" whether Rule 8(a) or Rule 9(b) applies to loss causation. (Order at 4 n.2.) Thus, there is an "absence of controlling law on [the] particular issue" of the loss-causation pleading standard, and this "constitute[s] substantial grounds." *See Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 600 (E.D. Pa. 2008). Further, other circuits have reached conflicting conclusions on this issue, with the majority of those circuits holding that the heightened Rule 9(b) standard governs loss causation. This "conflicting precedent as to the correct legal standard" for pleading loss causation likewise constitutes "substantial grounds for difference of opinion." *See id.* at 599 (cleaned up).

The question whether Rule 8(a) or a heightened pleading standard (under Rule 9(b) or the PSLRA) applies to loss causation was identified by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), but was expressly left unresolved. For purposes of resolving the case before it, the Court "assume[d], *at least for argument's sake*," that Rule 9(b) and the PSLRA did not impose any special pleading requirements for loss causation because, even under the modest requirements of Rule 8(a), "[t]he complaint before [it] fail[ed]":

- "[W]e assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss." *Id.* at 346.

- The "ordinary pleading rules are not meant to impose a great burden upon a plaintiff." *Id.* at 347. Indeed, they "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Id.* at 346.

- "But, even so, the 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.' *Conley v. Gibson*, 355 U.S. 41, 47 (1957)." *Id.* Under that standard, it is not "burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some

14

indication of the loss and the causal connection that the plaintiff has in mind." *Id.* at 347.

- Nevertheless, "[t]he complaint before us fails this simple test" and was thus "legally insufficient" even under the forgiving Rule 8(a) standard. *Id.* at 346-48.

In other words, the Court made clear that it was *necessary* for a complaint to *at least* satisfy the Rule 8(a) standard as to loss causation, but it did not hold that it was *sufficient* to do so.

In the two decades since, "[u]ncertainty has arisen"—and a circuit split has formed— "because in *Dura*, the Court applied Rule 8's 'a short and plain statement' pleading standard to allegations of loss causation." *Katyle*, 637 F.3d at 471 n.5 (cleaned up.) One group of circuits (the larger group) understood that the Supreme Court had done so "because the complaint in that case could not satisfy Rule 8's lesser standard, much less Rule 9(b)'s stricter standard" and heeded the Court's clear statement that it had "only '*assume[d]*, *at least for argument's sake*, that neither the Rules nor the [PSLRA] impose any special further requirement.'" *Id.* (quoting *Dura*) (Court's emphasis and alterations). This group applies the heightened Rule 9(b) standard to loss causation. A pair of other circuits, however, mistook *Dura*'s application of Rule 8(a) as a *holding* by which they were bound. The larger group has the better of the argument, correctly understanding *Dura* to leave this question open and rightly recognizing that Rule 9(b) by its terms must be applied to all "circumstances constituting fraud," including loss causation. *See* Fed. R. Civ. P. 9(b).

"[T]he Fourth, Seventh, Ninth, and Eleventh Circuits apply Rule 9(b) as the pleading standard for loss causation." *Hall*, 2019 WL 7207491, at *26. The Fourth Circuit recognized "a strong case can be made that because loss causation is among the circumstances constituting fraud for which Rule 9(b) demands particularity, loss causation should be pleaded with particularity." *Katyle*, 637 F.3d at 471 n.5 (quoting *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007)). Accordingly, it "review[s] allegations of loss causation for 'sufficient specificity.'" *Id.* at

15

471. The Ninth Circuit was "persuaded by the approach adopted in the Fourth Circuit," and similarly held that "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014). The Ninth Circuit recognized there were "at least three reasons" for doing so:

1. Rule 9(b) "applies to all circumstances of common-law fraud," and because "securities fraud is derived from common law fraud, it makes sense to apply the same pleading standard to all circumstances of securities fraud."

2. Rule 9(b) "clearly states that … a party must state with particularity the circumstances constituting fraud or mistake," and loss causation is "part of the 'circumstances' constituting fraud because, without it, a claim of securities fraud does not exist."

3. Applying Rule 9(b) to loss causation "creates a consistent standard through which to assess pleadings in 10(b) actions, rather than the piecemeal standard adopted by some courts."

*Id.* (cleaned up). With less elaboration, the Seventh Circuit likewise affirmed a district court's application of Rule 9(b) to loss causation, rejecting the contention that "*Dura* does not require the precision in pleading required by the district court." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 827, 833, 842-44 (7th Cir. 2007). Finally, the Eleventh Circuit has "appl[ied] Rule 9(b) as the pleading standard for all elements of a securities fraud claim"—including loss causation—albeit "without discussion." *Hall*, 2019 WL 7207491, at *26 (citing *Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855, 861 (11th Cir. 2015)).

On the other side of this split, the Fifth and Sixth Circuits interpret *Dura* as *holding* that loss causation need only satisfy the lower Rule 8(a) standard—notwithstanding *Dura*'s explicit statement that it was merely "*assum[ing]* … for argument's sake" that the Federal Rules did not "impose any special further requirement in respect to the pleading of" loss causation. *See* 544 U.S. at 346 (emphasis added). Per the Fifth Circuit, the "the *Dura* Court reasoned" that "for a plaintiff's complaint to adequately allege or plead" loss causation, it need merely "set forth 'a short and plain statement of the claim…' pursuant to Federal Rules of Civil Rule 8(a)(2)." *Lormand*, 565 F.3d at

16

256 (citation omitted); *see id.* at 258 (referring to this as "*Dura*'s holding"). Likewise, the Sixth Circuit read *Dura*'s general statements about what can satisfy "ordinary pleading rules," *see* 544 U.S. at 347, as specifically describing how to properly plead loss causation, such that all that is required is notice and plausibility. *See Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 384.[3] This minority position, as set forth above, rests on a misreading of *Dura*. 544 U.S. at 346-47.[4]

As this Court recognized, the Third Circuit has not yet addressed whether loss causation must be pleaded under Rule 8(a) or 9(b). (Order at 4 n.2.) While district courts in the Third Circuit have "analyzed loss causation under Rule 8(a), rather than the more stringent requirements of Rule 9(b)," these courts appear to share the Fifth and Sixth Circuits' misimpression that *Dura* *held*—and did not merely *assume for argument's sake*—that heightened pleading standards did not apply. *See, e.g.*, *Hall*, 2019 WL 7207491, at *27; *id.* ("In light of the Supreme Court's reasoning in *Dura*, and absent guidance from the Third Circuit, this Court … applies the standard provided by Rule 8(a) to Plaintiff's loss causation allegations."); *Dudley v. Haub*, 2013 WL 1845519, at *18 (D.N.J. Apr. 30, 2013) (citing *Dura* for the proposition that "[a]llegations of loss

---

[3] *Compare Dura*, 544 U.S. at 347 ("[O]rdinary pleading rules are not meant to impose a great burden upon a plaintiff."), *with Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 384 ("A party that brings a securities fraud claim bears the burden to prove 'that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.' 15 U.S.C. § 78u–4(b)(4). This is 'not meant to impose a great burden upon a plaintiff'…" (quoting *Dura*, 544 U.S. at 347)).

[4] The First, Second, and Tenth Circuits have been presented with the issue but did not decide it because the loss-causation allegations in those cases met even the heightened pleading standard. *See Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 239 n.6 (1st Cir. 2013); *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 179 n.65 (2d Cir. 2020); *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1153-54 (10th Cir. 2015). Notwithstanding the Second Circuit's own indication that it has not decided the issue, other courts have read its precedent differently. *Compare Abrahamson*, 956 F.3d at 179 n.65 (recognizing that the Ninth Circuit has "characteriz[ed] the Second Circuit's pleading standard for loss causation as a 'heightened' standard"), *with Hall*, 2019 WL 7207491, at *27 (characterizing the "Second Circuit[]" as "generally apply[ing] Rule 8(a) to determine whether a plaintiff has adequately pled loss causation").

17

causation are not subject to the heightened pleading requirements of Rule 9(b) and the PSLRA"); *In re Allergan Generic Drug Pricing Sec. Litig.*, 2019 WL 3562134, at *13 (D.N.J. Aug. 6, 2019) (citing *Dura* for the proposition that "[t]he PSLRA does not impose any heightened pleading standards on the element of loss causation; ordinary pleading rules apply"). That premise is faulty or, at the very least, debatable among reasonable jurists.

In "agree[ing] with th[e] approach" of other "courts in this Circuit that have … rejected the stricter standard" of Rule 9(b) (Order at 4 n.2), the Order itself recognized that there were competing approaches on which reasonable jurists not only *may* differ, but *have* differed. *See F.T.C. v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634 (D.N.J. 2014) (finding a substantial ground for difference of opinion), *aff'd*, 799 F.3d 236 (3d Cir. 2015). That is enough. By "showing that different courts have issued conflicting and contradictory opinions when interpreting a particular question of law," Defendants have met their burden to "demonstrate a substantial ground for difference of opinion." *Small v. Lower Paxton Twp.*, 2024 WL 691360, at *7 (M.D. Pa. Feb. 20, 2024) (cleaned up). The contrary position to the Order is not merely one that reasonable jurists *could adopt*, it is the position that four circuit courts *have rightly adopted*, recognizing that *Dura* left the question open.

In sum, the second requirement of Section 1292(b) is satisfied here.

### C.    Immediate Appeal Would Materially Advance the Litigation

Resolution of the appropriate pleading standard for loss causation "could clarify at least one complex issue," and thus "certification would materially advance the ultimate termination of the litigation." *See United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 2691927, at *5 (E.D. Pa. June 22, 2017) (cleaned up). "This requirement is closely tied to the requirement that the order involve a controlling question of law." *Knipe*, 583 F. Supp. 2d at 600 (cleaned up). As set out

18

above, whether Rule 8(a) or 9(b) applies to allegations of loss causation is a controlling legal question at the center of a longstanding circuit split.

While "it is not required that a reversal of the Court's Order would end the litigation," if the Third Circuit adopts the Rule 9(b) pleading standard for loss causation and finds that Plaintiff's allegations fail to satisfy that heightened standard, Plaintiff's misrepresentation claims would be eliminated. Consequently, Plaintiff's scheme liability claim would either be eliminated or, at a minimum, be narrowed. *See Pfizer*, 2017 WL 2691927, at *5; *see also id.* (granting certification because if the Third Circuit ruled in the defendant's favor, "the vast majority of Relators' claims will be eliminated, potentially leaving only Relators' kickback claims"). In this scenario, the "need for trial [could] be eliminated," any trial "would be simplified by the elimination of complex issues," and "discovery could be conducted more expeditiously and at less expense to the parties." *See Knipe*, 583 F. Supp. 2d at 600 (cleaned up). A reversal by the Third Circuit would thus "resolve a large portion of the litigation without wasting the scarce resources of the court and the parties." *Pfizer*, 2017 WL 2691927, at *5 (cleaned up).

## CONCLUSION

Defendants respectfully request that the Court certify the Order for interlocutory appeal.

Dated: August 22, 2025

Respectfully submitted,

By: */s/ Nina F. Locker*
Nina F. Locker (CA 123838) (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (866) 974-7329
nlocker@wsgr.com

19

Mark R. Yohalem (*pro hac vice pending*)
Madelyn Y. Chen (*pro hac vice pending*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
mark.yohalem@wsgr.com

Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
sbassin@wsgr.com

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200
wp@pietragallo.com

*Counsel for Defendants Mylan N.V., Heather
Bresch, Rajiv Malik, and Kenneth Parks*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, a true and correct copy of the foregoing document was filed via the Electronic Case Filing (ECF) System, which will be forwarded to all counsel of record.

WILSON SONSINI GOODRICH & ROSATI, P.C.

By: */s/ Nina F. Locker*
NINA F. LOCKER