**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE MYLAN, N.V.<br>SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

  A.  The Complaint's Allegations ............................................................................ 3

  B.  Procedural History ........................................................................................... 6

ARGUMENT ........................................................................................................................... 8

I.  Defendants Identify No Controlling Questions Of "*Pure*" Law ....................................... 9

  A. The Proposed Question Is Fact-Intensive, Not A Pure Question Of Law. ............. 9

  B. Defendants' Question Is Not Controlling. ............................................................ 11

II.  Defendants Identify No Substantial Ground For Difference of Opinion ......................... 11

III.  Certification of the Proposed Question Will Not Materially Advance The
  Termination Of The Case ................................................................................................ 16

IV.  No Exceptional Circumstances Justify Interlocutory Review ........................................ 17

V.  Plaintiff's Loss Causation Allegations Satisfy Rule 9(b)'s Particularized Pleading
  Requirement ................................................................................................................... 18

CONCLUSION ....................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................18

*Bachowski v. Usery*,
545 F.2d 363 (3d Cir. 1976)........................................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................11, 18

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ................................................................................18, 20

*Bricker v. Kuzilla*,
2010 WL 11914708 (W.D. Pa. Jan. 26, 2010)............................................................8

*United States ex rel. Brown v. Pfizer, Inc.*,
2017 WL 2691927 (E.D. Pa. June 22, 2017) ...........................................................17

*In re Cargill Meat Sols. Wage & Hour Litigation*,
2008 WL 11366373 (M.D. Pa. July 11, 2008)..........................................................13

*In re Cortuk*,
2019 WL 1418133 (D.N.J. Mar. 29, 2019).................................................14, 15, 17

*Cuttic v. Crozer-Chester Med. Ctr.*,
806 F. Supp. 2d 796 (E.D. Pa. 2011) .......................................................................16

*Delaware Cnty. Emp. Ret. Sys. v. AdaptHealth Corp.*,
606 F. Supp. 3d 124 (E.D. Pa. 2022) ..................................................................10, 12

*Dudley v. Haub*,
2013 WL 1845519 (D.N.J. Apr. 30, 2013) ..............................................................13

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................................2, 12

*In re Essar Steel Minn. LLC*,
667 B.R. 803 (D. Del. 2025)...................................................................................9, 10

*Florence v. Board of Chosen Freeholders of County of Burlington*,
657 F. Supp. 2d 504 (D.N.J. 2009) ..........................................................................15

*In re Galena Biopharma, Inc. Sec. Litig.*,
2019 WL 5957859 (D.N.J. Nov. 12, 2019) ..............................................................13

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................18, 20

*Glover v. Udren*,
  2013 WL 3072377 (W.D. Pa. June 18, 2013).................................................................9, 10, 12

*Hall v. Johnson & Johnson*,
  2019 WL 7207491 (D.N.J. Dec. 27, 2019) ...........................................................................10

*Harris v. Kellog, Brown & Root Servs.*,
  2009 WL 1248060 (W.D. Pa. Apr. 30, 2009)..........................................................................13

*In re Heckmann Corp. Sec. Litig.*,
  869 F. Supp. 2d 519 (D. Del. 2012).......................................................................................13

*Hedick v. Kraft-Heinz Co.*,
  2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) .........................................................................20

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ........................................................................................13

*Johnson v. PG Publ'g Co.*,
  2021 WL 4171420 (W.D. Pa. Sept. 14, 2021)..................................................................8, 9, 12

*In re JRV Group USA L.P.*,
  2022 WL 3646288 (D. Del. Aug. 24, 2022) ...........................................................................10

*Karlo v. Pittsburgh Glass Works, LLC*,
  2014 WL 12539666 (W.D. Pa. July 3, 2014) ....................................................................12, 16

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974)....................................................................................................9

*Knipe v. SmithKline Beecham*,
  583 F. Supp. 2d 553 (E.D. Pa. 2008) ....................................................................................15

*Levon v. CorMedix Inc.*,
  2025 WL 2400346 (D.N.J. Aug. 19, 2025) ...........................................................................13

*Link v. Mercedes-Benz of N.A., Inc.*,
  550 F.2d 860 (3d Cir. 1976)............................................................................................10, 15

*Marsden v. Select Medical Corp.*,
  2007 WL 1725204 (E.D. Pa. June 12, 2007) .........................................................................12

*Maverick Fund, Ltd. v. Mohawk Indus., Inc.*,
  2023 WL 2887603 (N.D. Ga. Mar. 31, 2023).........................................................................13

iii

*Max Daetwyler Corp. v. R. Meyer*,
 575 F. Supp. 280 (E.D. Pa. 1983) ................................................................................9

*McCabe v. Ernst & Young, LLP*,
 494 F.3d 418 (3d Cir. 2007)...............................................................................19, 20

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
 2011 WL 3444199 (D.N.J. Aug. 8, 2011) ..................................................................13

*Micholle v. Ophthotech Corp.*,
 2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019)...........................................................14

*Milbert v. Bison Labs., Inc.*,
 260 F.2d 431 (3d Cir. 1958)........................................................................................8

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
 2025 WL 368717 (S.D.N.Y. Jan. 31, 2025) ..............................................................14

*Ong ex rel. Ong v. Sears, Roebuck & Co.*,
 459 F. Supp. 2d 729 (N.D. Ill. 2006) ........................................................................14

*Orson, Inc. v. Miramax Film Corp.*,
 867 F. Supp. 319 (E.D. Pa. 1993) .................................................................8, 11, 17

*Overdam v. Texas A&M University*,
 43 F.4th 522 (5th Cir. 2022) .....................................................................................10

*Oyster v. Johns-Manville Corp.*,
 568 F. Supp. 83 (E.D. Pa. 1983) ...............................................................................14

*P. Shoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
 161 F. Supp. 2d 355 (D.N.J. Aug. 24, 2001) ..............................................................9

*Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*,
 690 F. Supp. 3d 862 (N.D. Ill. 2023) ........................................................................14

*Premick v. Dick's Sporting Goods, Inc.*,
 2007 WL 588992 (W.D. Pa. Feb. 20, 2007) ............................................................8, 9

*Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*,
 830 F. Supp. 1549 (D.N.J. 1993) ..............................................................................13

*Sapssov v. Health Management Associates*, *Inc.*,
 608 F. App'x 855 (11th Cir. 2015) ...........................................................................13

*In re Schering-Plough Corp.*,
 2010 WL 2546054 (D.N.J. June 21, 2010) ................................................................10

iv

*Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*,
    2017 WL 1134131 (E.D. Pa. Mar. 27, 2017)..........................................................................11

*Snook v. Penn State Geisinger Health Plan*,
    2002 WL 34463156 (M.D. Pa. Mar. 4, 2002)..........................................................................12

*State Nat'l Ins. Co. v. Cnty. of Camden*,
    824 F.3d 399 (3d Cir. 2016)..........................................................................8

*In re Text Messaging Antitrust Litigation*,
    630 F.3d 622 (7th Cir. 2010) ..........................................................................10, 11

*Titelman v. Rite Aid Corp.*,
    2002 WL 32351182 (E.D. Pa. Feb. 5, 2002) ..........................................................................8

*Tricontinental Industries*, *Limited v. Pricewaterhouse Coopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ..........................................................................14

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    2017 WL 1658822 (D.N.J. Apr. 28, 2017) ..........................................................................13

*Valeant Pharms. Int'l, Inc., v. AIG Ins. Co. of Canada*,
    2023 WL 113959 (D.N.J. Jan. 5, 2023) ..........................................................................11

*Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*,
    2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) ..........................................................................18

*Weitzner v. Sanofi Pasteur, Inc.*,
    2014 WL 1786500 (M.D. Pa. May 5, 2014) ..........................................................................15

**STATUTES**

28 U.S.C. § 1292(b) ........................................................................... *passim*

## **INTRODUCTION**

Defendants' latest procedural maneuver is the most recent link in a calculated chain of delay. Since this securities class action was filed in June 2020, Defendants have: (1) moved to dismiss the Consolidated Class Action Complaint in its entirety, prompting full briefing and oral argument; (2) after losing a key part of that motion, filed a Rule 12(c) Motion For Judgment on the Pleadings re-asserting many of the same arguments; and, having lost that motion, now (3) seek a piecemeal appeal of an Order that applies settled law to well-pled facts. Each step has stalled this case. Nearly five years into the litigation, the parties are only now beginning informal document exchanges and planning to mediate in December. Granting the present Motion would halt that nascent discovery, prejudice the proposed Class, and contravene the strong federal policy disfavoring piecemeal appeals.

The governing legal standard underscores the extraordinary nature of the relief Defendants seek. Section 1292(b) permits interlocutory review only where the moving party establishes all three independent prerequisites: (i) the order involves a controlling question of pure law; (ii) there is substantial ground for difference of opinion; and (iii) an immediate appeal may materially advance the ultimate termination of the litigation. Even when those stringent requirements are satisfied—and here they are not—certification remains discretionary, to be granted "sparingly" and only in "exceptional circumstances."

Defendants' Motion fails on every prong. ***First***, there is no controlling question of pure law. The challenged Order turns on the Court's fact-bound application of Rule 8(a)'s notice-pleading standard to Plaintiff's detailed loss-causation allegations. As the Third Circuit has repeatedly held, questions enmeshed with the factual record are not "controlling questions of law" suitable for § 1292(b) review.

*Second*, there is no substantial ground for difference of opinion. Defendants identify no intra-circuit split, no conflicting district-court decisions, and no unsettled precedent. To the contrary, courts within the Third Circuit uniformly apply Rule 8—not Rule 9(b)—to loss-causation allegations in Section 10(b) cases, faithfully following the Supreme Court's guidance in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Mere disagreement with this Court's decision is insufficient to merit interlocutory review.

*Third*, interlocutory appeal would not materially advance the litigation. An interlocutory appeal would not streamline this case; it would prolong it. At minimum, Plaintiff's scheme liability claim (which is based on a broader range of disclosures than the misstatement claim) would survive, ensuring the case would proceed through discovery regardless. The only guaranteed consequence of interlocutory review is additional delay—during which memories fade further, documents become harder to gather, and the Class's ability to obtain timely relief deteriorates.

And even if the Rule 9(b) pleading standard applies to loss causation (it does not), Plaintiff's allegations satisfy it by alleging the "who, what, where, when, and how" of each corrective disclosure and a specific causal chain.

*Finally*, the Court's discretion weighs decisively against certification. Section 1292(b) is reserved for "exceptional" cases where an immediate appeal will materially advance the litigation; it is not a license for losing parties to re-argue settled law. This five-year-old matter has already endured two successive Rule 12 attacks. The Court's well-reasoned Order appropriately applied settled law and moved the case toward the merits. Allowing Defendants a ***third*** bite at the apple would reward dilatory tactics and subvert the efficient administration of justice.

After years of delay, this case should move forward. The Court should deny Defendants' Motion.

## BACKGROUND

### A.    The Complaint's Allegations

This case concerns Defendants' alleged years-long scheme to conceal Mylan's pervasive violations of FDA regulations, including at the Company's flagship facility in Morgantown, West Virginia. *See* ¶1.[1] While Defendants carefully curated the Company's public image as a leader in product quality and safety, Defendants' "culture of fraud" misled investors about the true state of Mylan's operational capacity, which the Company touted as a distinct operational advantage in growing revenue in an era of generic drug price erosion. *See* ¶¶66, 72-74, 83, 147-48, 153.

The fraudulent scheme began no later than February 2016, by which time Defendants began concealing Mylan's violations of federal drug manufacturing standards by: (i) "testing into compliance," *i.e.*, "repeatedly retesting drug products that failed quality testing in order to achieve passing results"; (ii) corrupting data files and crashing computers to hide this practice; (iii) using "cooked" data "to hasten [FDA] approval of critical products"; (iv) disguising drug impurities; and (v) ignoring testing results or invalidating them for pretextual reasons. Op. at 15 (citing ¶¶86-88, 92-93, 96, 98-103, 109-120, 146, 154-55).

Mylan engaged in these deceptive practices to conceal serious FDA violations and to avoid regulatory consequences that would have damaged investor confidence. In 2016, the FDA uncovered multiple manufacturing and data integrity violations during inspections at Mylan facilities, starting first with an inspection at a facility in India in September 2016, and then with a

---

[1] References to (i) "¶" are to the Consolidated Class Action Complaint (ECF No. 39); (ii) references to "Op." are to this Court's Opinion on Motion for Clarification and Motion for Judgment on the Pleadings (ECF No. 123); and (iii) "D.Br." are to Defendants' Brief in Support of Motion to Certify Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 133). Unless otherwise indicated, all emphasis is added and internal citations and quotations are omitted.

surprise inspection of the Morgantown flagship plant in November 2016. *See* ¶¶91-107. Defendants generated an internal "façade of documents" to create the appearance of reform that dissuaded the FDA from issuing a public warning letter regarding the crucial Morgantown facility, which would have indicated systemic manufacturing and data integrity issues and severely undermined investor confidence. *See* ¶¶148, 150-54, 161.

But Mylan's manufacturing issues and data manipulation continued unabated. Beginning in March 2018, the FDA conducted another non-public inspection of the Morgantown facility. That inspection resulted in numerous adverse findings, including that Mylan had committed "repeat" violations. *See* ¶¶163-177. The 2018 inspection forced Mylan to do what it should have done at the start of the Class Period: halt production to remediate manufacturing and data integrity issues. ¶178. Internally, Mylan initiated a temporary halt of production, dramatically reduced production volume by two-thirds, and engaged consultants to help implement comprehensive remedial measures. *Id*. Yet Defendants did not disclose any of these actions, which had a material impact on operating costs, production volume, and revenue. *See* ¶¶178-79. Instead, Mylan announced a 15% force reduction which it claimed was necessary to "right size" operations. ¶179. Mylan also recalled several batches of drugs, but the Company never connected the recalls to pervasive FDA violations. ¶180.

The relevant truth about Defendants' scheme began to emerge on June 27, 2018, when *Bloomberg* reported that the FDA had conducted an inspection of the Morgantown facility and issued 13 observations impacting product safety. *See* ¶181. In response to the news, Cantor Fitzgerald's analyst wrote on June 29, 2018 that the FDA "inspection was serious and not routine (maybe whistleblower)" and warned that the situation may be more dire than Mylan let on. ¶182. On this news, Mylan's share price fell $1.12 per share, or approximately 3%. *See* ¶183. However,

Defendants continued to conceal that the FDA's 2018 Morgantown investigation had forced Mylan to halt production, which led to material increases in operating costs and a significantly reduced generic portfolio. *See* ¶185.

Then, on August 8, 2018, Defendants acknowledged that Mylan had been forced to undertake "a restructuring and remediation program in Morgantown" that included a "discontinuation of a number of products" and would have a temporary but "negative impact on production levels, product supply and operations." ¶186. This disclosure caused Mylan's share price to fall $2.62 per share, or approximately 7%. *See* ¶188. In response, analysts lowered their estimates but were "hopeful" that the impacts would be "temporary." ¶¶189-90.

To mitigate the impact of these disclosures, and otherwise prevent investors from learning of their fraudulent scheme, Defendants issued a materially false and misleading denial, which *Bloomberg* published on January 31, 2019: "Any explicit or implicit suggestion that Mylan employees circumvented data and quality systems that jeopardized the quality of the medications we manufacture—for time pressures or any other reason—is simply false." ¶299.

Then, on February 26, 2019, during Mylan's fourth quarter and fiscal year 2018 earnings conference call, Mylan stunned investors when it announced an 18% decrease in North American net sales from the prior year. Mylan attributed this shortfall, in part, to its required Morgantown restructuring, which included the discontinuation of almost 250 products. *See* ¶¶207-08. On this news, Mylan's share price fell $4.61 per share, or approximately 15%. *See* ¶212. Analysts confirmed that the news was worse than expected, which caused them to lower estimates and stock price targets. *See* ¶215. The media connected the stock price decline, which Bloomberg described as "the most in three years," to Mylan's "flagging fortunes" tied to "manufacturing problems" at Morgantown. *Id.* Other analysts were buoyed by the news, claiming disruptions from Morgantown

5

were "largely behind" Mylan. ¶216.

The full extent of Defendants' fraudulent conduct finally came to light on May 7, 2019, when Mylan reported a surprise loss due, in part, to additional costs associated with the extensive required remediation efforts at the Morgantown facility. *See* ¶¶217-18. Analysts were shocked at the extent of the ongoing impact the Morgantown remediation program was having on Mylan's business. *See* ¶220. As a result, Mylan's share price fell $6.73 per share, or approximately 24%. *See* ¶219.

Together, these disclosures exposed the relevant truth about Defendants' fraud by revealing the scope and impact associated with the discovery and remediation of Mylan's circumvention of data and quality control systems. *See* Op. at 7-8. These disclosures caused the price of Mylan's common stock to fall by over 50% and erased billions in shareholder value. *See* ¶¶16-19, 330.

### B.    Procedural History

Plaintiff filed the operative complaint on November 13, 2020. *See* ECF No. 39. Defendants subsequently moved to dismiss, which Plaintiff opposed. *See* ECF Nos. 45, 48, 54. Defendants' Motion to Dismiss did not challenge the specificity or plausibility of Plaintiff's loss causation allegations. *See id.*

On May 18, 2023, the Court issued an opinion sustaining the Complaint's misrepresentation claim under Rule 10b-5(b) as to Defendants' January 31, 2019, statement and scheme claim under Rules 10b-5(a) and (c) as to Defendants' scheme to conceal Mylan's serious regulatory violations by committing pervasive data fraud. *See* ECF No. 88 at 30, 38-39.

After the Court's 2023 Motion To Dismiss Order, Defendants refused to engage in discovery, stating that they intended to file a motion under Rule 12(c). *See* ECF No. 95 at 5. Plaintiffs subsequently sought clarification of the Motion To Dismiss Order on June 20, 2023 regarding the scope of their fraudulent scheme claim under Rule 10b-5(a) or (c). *See* ECF No. 95.

6

On July 8, 2023, the Court stayed all discovery. *See* ECF No. 101. On July 17, 2023, Defendants filed their Rule 12(c) motion arguing that (i) Lead Plaintiff's Rule 10b-5(b) claim failed to plead loss causation; and (ii) Lead Plaintiff's Rule 10b-5(a) and (c) claim failed as a matter of law. *See* ECF No. 106. Defendants did not challenge the specificity or plausibility of Plaintiff's loss causation allegations concerning the June 27 and August 8, 2018 disclosures. Defendants also did not challenge the specificity of Plaintiff's loss causation allegations concerning the February 26 and May 7, 2019 disclosures.

On July 8, 2025, the Court denied both motions. *See* ECF Nos. 123-125. In its opinion, the Court "conclude[d] that Plaintiff has met its burden to plead loss causation" for the misrepresentation claim. Op. at 6. Specifically, the Court held that (i) Plaintiff "plausibly allege[d]" that the February 29 and May 7, 2019 disclosures "revealed some partial truth about the falsity of Mylan's Bloomberg Law representation," *i.e.*, "that Mylan was, in fact, circumventing the data and quality systems" (*id.* at 6-9); (ii) "the *Bloomberg Law* article . . . could plausibly be understood to be referring to all of Mylan's facilities, including Morgantown" (*id.* at 9); and (iii) Plaintiff "plausibly alleges that the [February 29 and May, 2019] disclosures revealed new information." *Id.* at 10-11. The Court also rejected Defendants' loss causation arguments because they improperly raised factual disputes at the pleadings stage. *See id.* at 9 ("how the market interpreted the alleged disclosures" and "misrepresentation" "is a factual dispute").

With respect to Plaintiffs' fraudulent scheme claim, the Court held that Plaintiff had alleged deceptive conduct "'fraudulent in its own right'…in addition to the actionable *Bloomberg Law* misrepresentation." *Id.* at 16. The Court further declined "to narrow the scheme claim to the *Bloomberg Law* misrepresentation" because discovery "will be the same either way." *Id.* at 16-17.

Following its opinion, the Court then ordered the parties to file a new Rule 26 report and

discuss mediation and informal discovery. *See* ECF No. 126. Throughout the parties' subsequent exchanges, however, Defendants never mentioned that they planned to file this Motion.

## ARGUMENT

The final judgment rule provides that parties may only appeal orders "which end[] the litigation on the merits and leave nothing for the court to do but execute the judgment." *State Nat'l Ins. Co. v. Cnty. of Camden*, 824 F.3d 399, 408 (3d Cir. 2016). Section 1292(b) sets forth a narrow exception to the final judgment rule, only to be applied "sparingly." *Bricker v. Kuzilla*, 2010 WL 11914708, at *1 (W.D. Pa. Jan. 26, 2010); *see also Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) ("It is quite apparent from the legislative history . . . that Congress intended that section 1292(b) should be sparingly applied."); *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 321 (E.D. Pa. 1993) (cautioning that certification "is the exception, to be used only in the rare case where an immediate appeal would avoid expensive and protracted litigation"). The moving party must demonstrate that it meets ***all three*** independent statutory criteria set forth in § 1292(b) ***and*** that there are "exceptional circumstances that justify a departure from the basic policy of postponing review until entry of the final order." *Bricker*, 2010 WL 11914708, at *1.

"[E]ven if all three elements are satisfied, 'a district court may still deny certification, as the decision is entirely within the district court's discretion.'" *Johnson v. PG Publ'g Co.*, 2021 WL 4171420, at *1 (W.D. Pa. Sept. 14, 2021) (Ranjan, J.); *see also Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present."); *Premick v. Dick's Sporting Goods, Inc.*, 2007 WL 588992, at *1 (W.D. Pa. Feb. 20, 2007). "A district court should . . . exercise its discretion to grant certification mindful of the strong federal policy against piecemeal appeals." *Titelman v. Rite Aid Corp.*, 2002 WL 32351182, at *1 (E.D. Pa. Feb. 5, 2002).

8

A "motion for certification should not be granted merely because a party disagrees with the ruling of the district judge." *Max Daetwyler Corp. v. R. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983).

## I.      Defendants Identify No Controlling Questions Of "*Pure*" Law.

Defendants' Motion fails at the first element of the § 1292(b) inquiry. The first requirement of Section 1292(b) is that the disputed order concerns a "controlling question of law." 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). A controlling question of law includes "order[s] which, if erroneous, would be reversible error on final appeal." *PG Publ'g*, 2021 WL 4171420, at *2. "A court's order does not include a requisite controlling question of law, however, when the dispute turns on the court's application and interpretation of the facts." *Id.*; *see, e.g.*, *Glover v. Udren*, 2013 WL 3072377, at *2 (W.D. Pa. June 18, 2013) ("Legal questions in which the exercise of the district court's discretion is necessarily intertwined with its understanding of the facts of the case are not questions contemplated to fall within the purview of section 1292(b)."); *Premick*, 2007 WL 588992, at *2 (same).

Interlocutory appeal is reserved for "*pure*" questions of law whose resolution would be completely dispositive to the litigation. *In re Essar Steel Minn. LLC*, 667 B.R. 803, 812 (D. Del. 2025). It is not a vehicle for relitigating this Court's careful application of settled standards. *See, e.g.*, *P. Shoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 359 (D.N.J. Aug. 24, 2001) (denying motion for 1292(b) interlocutory appeal where purported controlling questions were manufactured and simply represent the party's disagreement with the outcome). Because Defendants identify no such pure, outcome-determinative question, their request should be denied.

### A.      The Proposed Question Is Fact-Intensive, Not A Pure Question Of Law.

Defendants disagree with the Court's application of Rule 8 to the Complaint's well-pled allegations of loss causation. That dispute cannot be recast as a pure legal issue. Whether the Court were to apply Rule 8 or Rule 9(b), evaluating loss causation allegations requires the Court to make

factual determinations regarding when information was released to the market, the nature of the information, and how the market reacted to the alleged corrective disclosures. Courts in the Third Circuit have "repeatedly cautioned that this [loss causation] determination is a fact-sensitive inquiry typically left to the trier of fact." *Hall v. Johnson & Johnson*, 2019 WL 7207491, at \*26 (D.N.J. Dec. 27, 2019); *Delaware Cnty. Emp. Ret. Sys. v. AdaptHealth Corp.*, 606 F. Supp. 3d 124, 137 (E.D. Pa. 2022) ("[w]hether the plaintiff has proven causation is usually reserved for the trier of fact"). Such fact-intensive issues are inappropriate for interlocutory review. *See, e.g.*, *Link v. Mercedes-Benz of N.A., Inc.*, 550 F.2d 860, 863 (3d Cir. 1976) ("1292(b) is not designed for review of factual matters but addresses itself to a controlling question of law."); *In re Schering-Plough Corp.*, 2010 WL 2546054, at \*4 (D.N.J. June 21, 2010); *Glover*, 2013 WL 3072377, at \*2.[2]

This Court has already acknowledged that loss causation findings such as "how the market interpreted the disclosures," "***is a factual dispute***." Op. at 9. Contesting the Court's application of the Rule 8 standard is not the same as identifying a controlling legal question. *See Essar*, 667 B.R. at 811-12 (the fact that there "are conflicting opinions on how to *apply* the correct legal standard" is not a "pure question of law").

Nor does the Motion fit within the limited line of cases that have allowed interlocutory appeals to clarify unsettled pleadings standards. Unlike the novel issues in *Overdam v. Texas A&M University*, 43 F.4th 522, 526 (5th Cir. 2022), and *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 627 (7th Cir. 2010), the Third Circuit's loss causation jurisprudence is settled and fact-

---

[2] *In re JRV Group USA L.P.* illuminates the differences between pure questions of law and the issue presented here. 2022 WL 3646288, at \*6 (D. Del. Aug. 24, 2022). In *JRV Group*, the question concerned whether the Bankruptcy Court had personal jurisdiction over one of the parties, which, if the court deemed it did not, would dismiss the complaint entirely. *Id.* at \*4. This constitutes a pure question of law that the "court of appeals could decide quickly and cleanly without having to study the record"—unlike the circumstances presented here. *Id.* at \*6.

bound. In *Overdam*, the Court was asked to determine the proper pleading standard for a Title IX claim challenging a university's disciplinary proceeding because a recent Seventh Circuit case had upended a long-followed framework for analyzing such challenges. And in *Text Messaging*, the Court acknowledged that while "routine applications of well-settled legal standards to facts alleged in a complaint" are not "appropriate for interlocutory appeal," interpretation of the proper pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) was appropriate for interlocutory appeal because "*Twombly* is a recent decision, and its scope unsettled," which left "pleading standards in federal litigation . . . in ferment." *Text Messaging*, 630 F.3d at 626-27. These cases presented novel and unsettled issues unlike the question Defendants present here.

### B.    Defendants' Question Is Not Controlling.

Even if the loss-causation issue were purely legal, it is not "controlling." A question is not controlling unless its resolution would be "completely dispositive of the litigation, either as a legal or practical matter," as required by § 1292(b). *Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*, 2017 WL 1134131, at *1 (E.D. Pa. Mar. 27, 2017) (emphasis omitted). Reversal would not compel dismissal because, first, Plaintiff's scheme-based allegations—which the Court held exist *"in addition to* the actionable Bloomberg Law misrepresentation" (Op. at 16)—would survive intact. Second, the Court's independent findings support sufficiency of the allegations *under both Rule 8(a) and Rule 9(b)*. *See infra* §V. Because multiple alternative grounds sustain Plaintiff's claims, appellate review of loss causation could not terminate the action and is therefore not warranted. *See Orson*, 867 F. Supp. at 322; *Valeant Pharms. Int'l, Inc., v. AIG Ins. Co. of Canada*, 2023 WL 113959, at *4 (D.N.J. Jan. 5, 2023) (declining interlocutory appeal where "there are still [other] claims and defenses that would survive").

## II.    Defendants Identify No Substantial Ground For Difference of Opinion.

Assuming that Defendants could articulate a certifiable "controlling question of law" under

11

§ 1292(b)—they cannot—they still must show "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). They fall far short of this requirement. A substantial ground for difference of opinion arises "when there is genuine doubt or conflict precedent as to the correct legal standard applied in the orders at issue." *Glover*, 2013 WL 3072377, at *3. However, "[a] party's strong disagreement with the Court's ruling does not constitute a substantial ground for difference of opinion." *PG Publ'g*, 2021 WL 4171420, at *3; *Snook v. Penn State Geisinger Health Plan*, 2002 WL 34463156, at *5 (M.D. Pa. Mar. 4, 2002) ("[w]hile the [plaintiffs] may not be content with our ruling, their unhappiness, without more, is no basis to allow an appeal"). Nor does a dispute over the application of settled law to a particular set of facts. *See Karlo v. Pittsburgh Glass Works, LLC*, 2014 WL 12539666, at *1 (W.D. Pa. July 3, 2014).

The Court's application of Rule 8(a) to Plaintiff's loss causation allegations is well-settled. In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court expressly "assume[d], at least for argument's sake," that no heightened pleading requirement applies to loss causation, stressed that Rule 8 is "***not meant to impose a great burden upon a plaintiff***," and stated that "it ***should not prove burdensome*** for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* at 346-47 (finding that plaintiffs' complaint failed to allege loss causation under Rule 8 where it contained only one sentence addressing loss causation).

Since *Dura*, courts in this Circuit have consistently followed that guidance and applied Rule 8(a) to loss causation allegations. *See, e.g.*, *AdaptHealth*, 606 F. Supp. 3d at 137 (applying Rule 8 to loss causation allegations); *Marsden v. Select Medical Corp.*, 2007 WL 1725204, at *1 (E.D. Pa. June 12, 2007) ("emphatically reject[ing]" a "heightened pleading standard for loss causation" "of the nature contemplated by Federal Rule of Civil Procedure 9(b)"); *In re Galena*

12

*Biopharma, Inc. Sec. Litig.*, 2019 WL 5957859, at \*18 (D.N.J. Nov. 12, 2019) (a "[p]laintiff need not satisfy the PSLRA or Rule 9(b)'s heightened pleading requirements to survive a motion to dismiss for loss causation; rather, a plaintiff need only satisfy the requirements of Rule 8(a)(2)").[3]

Defendants' fallback argument—that the absence of a published Third Circuit opinion itself creates doubt (D.Br. at 6, 14)—also fails.[4] Where "the applicable legal standard for the [question] is well-settled within the Third Circuit," as it is here, "genuine doubt" cannot be established. *Harris v. Kellog, Brown & Root Servs.*, 2009 WL 1248060, at \*3 (W.D. Pa. Apr. 30, 2009). "Given the limited nature of [this issue] and the fact that there are no conflicting decisions from district courts within this Circuit which would establish a need for [the] Court of Appeals to resolve the same immediately, an interlocutory appeal is not warranted." *Id.* at \*3.

Unable to locate intra-circuit disagreement, Defendants emphasize a supposed "circuit split." D.Br. at 13. But that is both incorrect and irrelevant. For example, the Eleventh Circuit has never adopted a Rule 9(b) standard for loss causation. While Defendants rely on *Sapssov v. Health Management Associates*, *Inc.*, the Court there was silent as to whether Rule 9(b) or Rule 8 should apply. 608 F. App'x 855 (11th Cir. 2015). Further, district courts in the Eleventh Circuit have routinely applied Rule 8(a) to loss causation allegations. *See, e.g.*, *Maverick Fund, Ltd. v. Mohawk*

---

[3] Numerous additional decisions are in accord. *Levon v. CorMedix Inc.*, 2025 WL 2400346, at \*27 (D.N.J. Aug. 19, 2025); *Dudley v. Haub*, 2013 WL 1845519, at \*18 (D.N.J. Apr. 30, 2013); *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, 2011 WL 3444199, at \*29 (D.N.J. Aug. 8, 2011); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 277 (D.N.J. 2007); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at \*12 (D.N.J. Apr. 28, 2017); *In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 841-42 (D. Del. 2012).

[4] Defendants rely on *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1549 (D.N.J. 1993) and *In re Cargill Meat Sols. Wage & Hour Litigation*, 2008 WL 11366373 (M.D. Pa. July 11, 2008) to support that the present issue is "far-reaching" and "unique" enough to warrant interlocutory review. But the issues presented in both *Hercules and Cargill* were ones of statutory interpretation—the exact type of *pure* law and outcome-determinative questions which Section 1292(b) contemplates.

*Indus., Inc.*, 2023 WL 2887603, at \*6 (N.D. Ga. Mar. 31, 2023) (collecting cases).

Defendants also rely on *Tricontinental Industries*, *Limited v. Pricewaterhouse Coopers, LLP* to argue that the Seventh Circuit applies Rule 9(b) as the pleading standard, but there, the Court was silent as to the pleading standard to be employed to the securities fraud claims. 475 F.3d 824 (7th Cir. 2007). Nor does the Court engage in a Rule 9(b) analysis as to loss causation. Additionally, district courts in the Seventh Circuit routinely apply Rule 8.[5] *Phoenix Ins. Co. v. ATI Physical Therapy, Inc*., 690 F. Supp. 3d 862, 896 (N.D. Ill. 2023) ("[u]nlike scienter, however, loss causation requires only ordinary notice pleading"); *Ong ex rel. Ong v. Sears, Roebuck & Co.*, 459 F. Supp. 2d 729, 741 (N.D. Ill. 2006). Finally, while the Ninth and Fourth Circuits have applied a heightened standard, "[e]ven conflicting decisions of other courts do not constitute a substantial ground for difference of opinion." *In re Cortuk*, 2019 WL 1418133, at \*2 (D.N.J. Mar. 29, 2019); *Oyster v. Johns-Manville Corp.*, 568 F. Supp. 83, 88 (E.D. Pa. 1983) ("[W]hile there may be grounds for differences of opinion, they are not, however, *substantial*.") (emphasis in original).

Conversely, as Defendants acknowledge, the Fifth and Sixth Circuits apply the Rule 8 pleading standard to loss causation allegations. D.Br. at 16. So do district courts in the Second Circuit. *See Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2025 WL 368717, at \*4 (S.D.N.Y. Jan. 31, 2025) (applying Rule 8 because "[u]nder the prevailing practice in this District, loss causation need not be pleaded with particularity."); *see also Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at \*18 (S.D.N.Y. Sept. 18, 2019) ("The question of whether Rule 9(b) applies to loss causation has not yet been definitively addressed by the Second Circuit, but the vast majority of courts in this district have required that loss causation only meet the notice

---

[5] While the Court in *Tricontinental* was silent as to the standard for the securities fraud claim, the Court applied the Rule 8 pleading standard to the negligent misrepresentation claims and that Rule 9 applied to the common law fraud claims. 475 F.3d at 838, 844.

14

requirements of Rule 8."). The supposed "split" is therefore neither clear nor one-sided. More importantly, § 1292(b) does not authorize interlocutory review merely because other courts disagree. *See, e.g.*, *Cortuk*, 2019 WL 1418133, at *2.

To argue that a circuit split is the "clearest evidence of substantial grounds for difference of opinion," D.Br. at 13, Defendants rely on *Weitzner v. Sanofi Pasteur, Inc.*, which granted interlocutory review on the question of "whether an unaccepted offer of judgment under Rule 68 in a purported class action moots a Plaintiff's claim if the offer is made before the Plaintiff files a motion to certify the class." 2014 WL 1786500, at *2 (M.D. Pa. May 5, 2014). But the existence of a circuit split alone did not persuade the court in *Weitzner*—rather, an intervening Supreme Court decision had undermined the previously controlling Third Circuit authority, priming the question for interlocutory review. There are no similar grounds here.[6]

Finally, Defendants suggest that the Court's reasoned application of Rule 8(a) (*see* Op. at 4) ***itself*** proves the existence of "competing approaches" sufficient to warrant interlocutory appellate review. D.Br. at 18. That logic would convert every non-final ruling into a vehicle for interlocutory appeal, eviscerating the final-judgment rule. *See Link*, 550 F.2d at 863 (holding that while it might be "helpful to have the appellate court's view on proposed alternate courses of action," orders for appellate review must be "definitive, effective, and in a posture capable of

---

[6] Defendants also mistakenly rely on *Florence v. Board of Chosen Freeholders of County of Burlington*, 657 F. Supp. 2d 504 (D.N.J. 2009) and *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553 (E.D. Pa. 2008). Although the court in *Florence* did acknowledge that it is not improper to look to jurisdictions outside its own, the court also noted that the factual circumstances in the instant case were unique in that it "involves a federal question arising under the Fourth Amendment to the United States Constitution," which rendered "extra-jurisdictional authority . . . far from inappropriate in such a circumstance." 657 F. Supp. 2d at 509 n.5. And in *Knipe*, the Court was dealing with a "rather novel question of law, which the Third Circuit has not yet had the opportunity to address" and which had only generated one other judicial opinion. 583 F. Supp. 2d at 600. Here, there is no such "pressing and hotly disputed topic." *Id.*

affirmance or reversal. Requesting that the Court of Appeals choose from a number of alternatives submitted is not the type of appeal envisioned by § 1292(b)"); *see also Cuttic v. Crozer-Chester Med. Ctr.*, 806 F. Supp. 2d 796, 805 (E.D. Pa. 2011) (matters of first impression "not, alone, sufficient to warrant certification for interlocutory appeal").

### III.   Certification of the Proposed Question Will Not Materially Advance The Termination Of The Case.

Finally, Defendants cannot establish that certification will materially advance the termination of the case. 28 U.S.C. § 1292(b); *Karlo*, 2014 WL 12539666, at *1. An interlocutory appeal must promise to eliminate "(1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome." *Karlo*, 2014 WL 12539666, at *1. This proposed appeal offers none of those benefits.

To the contrary, certification would squander the very "scarce resources of the court and the parties" that Defendants purport to safeguard. D.Br. at 19. The median time from filing a notice of appeal to final disposition in the Third Circuit during the 12-month period ending September 30, 2023 was 8.7 months, and could very well exceed a year in securities cases.[7] During that hiatus, discovery in this five-year-old case would grind to a halt, postponing—rather than avoiding— merits decisions in a case that will proceed at least through summary judgment regardless.

Nor would adoption of the Rule 9(b) standard "eliminate" any claim. Defendants speculate that such a ruling would dispose of Plaintiff's misrepresentation claims and "eliminate[], or at a minimum, narrow" Plaintiff's scheme liability claims. D.Br. at 19. The scheme-liability claim is independently viable.  It rests on Defendants' wide-ranging deceptive conduct over the course of

---

[7] Table B-4A, U.S. Court of Appeals-Median Time Intervals in Months for Civil and Criminal Appeals Terminated on the Merits by Circuit, During the 12-Month Period Ending September 20, 2023, available at: https://www.uscourts.gov/file/77814/download (last visited Sept. 8, 2025).

16

three years, which included, among other things, directing Mylan employees to alter datasets and intentionally crash computers to create the false appearance of compliance with FDA safety and quality regulations. This Court has already confirmed that this scheme claim "does not merely recast [Plaintiff's] misrepresentation claim" (Op. at 15) and that the Court would "benefit from a developed record" regarding the scope of the scheme claim (*id.* at 17)—a record that has not yet been developed. Because the scheme claim stands on its own, an appellate ruling on Rule 9(b) would leave it intact, preserving the same discovery burdens Defendants seek to avoid.[8]

## IV.    No Exceptional Circumstances Justify Interlocutory Review

Defendants not only fail to meet their § 1292(b) statutory requirements, but they also provide no exceptional circumstances for this Court to exercise its discretion and grant interlocutory review. *See, e.g.*, *Cortuk*, 2019 WL 1418133, at *2 (requiring that in addition to satisfying the three statutory criteria, appellant "must . . . demonstrate that exceptional circumstances exist") (alterations in original).

The case has already weathered repeated delays; informal discovery is just beginning and the parties will mediate in December. Freezing proceedings for another year or two would subvert § 1292(b)'s purpose of expediting litigation. This is therefore not the "rare case[s] where an immediate appeal would avoid expensive and protracted litigation" so as to justify deviation from "the strong policy against piecemeal appeals." *Orson*, 867 F. Supp. at 321.

---

[8] Defendants rely on *United States ex rel. Brown v. Pfizer, Inc.* for the proposition that because resolution of the appropriate pleading standard "could clarify at least one complex issue," this satisfies the third criterion of Section 1292(b). 2017 WL 2691927, at *5 (E.D. Pa. June 22, 2017). But as set forth above, adoption of the Rule 9(b) standard would *not* eliminate *any* claim— Plaintiff's scheme would still be viable, and the Complaint's allegations pass muster under both Rule 8 and Rule 9(b). In *Pfizer*, a decision on the controlling question of law could have potentially eliminated "the vast majority of Relators' claims." *Id.* at *5.

## V.    Plaintiff's Loss Causation Allegations Satisfy Rule 9(b)'s Particularized Pleading Requirement

Finally, interlocutory review is inappropriate here because even if the Third Circuit held that Rule 9(b) applies to loss causation allegations, Plaintiff would still prevail. That is because Rule 9(b) addresses the specificity of the allegations—not their plausibility, which is assessed under the reasonable inference standard set forth in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), regardless of the applicable pleading standard. *See*, *e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020) (in the Ninth Circuit, which applies Rule 9(b) to loss causation allegations, the plaintiff's task at the pleading stage "is to allege with particularity facts 'plausibly suggesting'" at least a partial revelation of truth concealed by defendants' misstatements caused the stock price decline). Accordingly, courts applying Rule 9(b) to loss causation allegations hold that the particularity requirement "usually adds little to the plaintiff's burden." *Id.* at 794 (quoting *Dura Pharms.*, 544 U.S. at 347); *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, 2019 WL 4597518, at *7 (N.D. Ill. Sept. 23, 2019) ("As the Seventh Circuit instructs, the requirement of loss causation ought not place unrealistic burdens on the plaintiff at the initial pleading stage.").

Not only does Plaintiff satisfy each showing for the reasons set forth below, but Defendants have yet to assert that Plaintiff's loss causation allegations are insufficiently particularized.

***First***, Plaintiff alleges the "who, what, where, when, and how" of each corrective disclosure. *See* ¶¶181-221; *see also* Op. at 6-11. Plaintiff likewise alleges the date of each disclosure, as well as detailed descriptions of revelation to the public and corresponding drop in stock price, which is sufficient to plead the corrective disclosures with particularity. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008) (determining that plaintiffs had provided "abundant details" regarding a fraudulent off-label marketing scheme, resulting in a warning letter, decreased demand, and subsequent disclosure of decreased revenue, as well as

18

alleged "specific economic loss" when the stock price dropped following the disclosure). The June 27, 2018 and August 8, 2018 disclosures—which, along with the February 29 and May 7, 2019 disclosures, are corrective of the scheme claim—are pled with the same exacting detail. *See* ¶¶181-94; *supra* § Background.A.

*Second*, Plaintiff has alleged a specific causal chain for the misrepresentation and scheme claims. *See* ¶¶195-204, 329-31. Indeed, as to the misrepresentation claim, the Court has already found that Plaintiff's loss causation allegations "plausibly" infer a sufficient causal connection under the Third Circuit's "substantial factor" loss causation standard set forth in *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007):

> [B]y way of the Morgantown restructuring and remediation, the financial disclosures pertain to the 'scope and impact' of Mylan's circumvention of data and quality control systems. ECF 110, pp. 14-15. Plaintiff's allegations are, essentially, that while the February and May 2019 reports and earnings calls didn't mention circumvention, they contextualized the earlier revelations—for example, those made in the Form 483 and Warning Letter—that Mylan had data and quality system issues. This is enough.

Op. at 7-8. The Court likewise held that these allegations "plausibly" inferred that the disclosures contained new material information about Mylan's Morgantown remediation efforts and the January 31 misrepresentation concerned the Morgantown plant. *Id.* at 9, 10-11 (the Complaint "notes that the stock price declined following the disclosures, and analysts commented on the disclosures, which are both indicators of novelty.").

Plaintiff also establishes the requisite causal connection between the scheme claim and each of the four corrective disclosures. The scheme claim arises from Defendants' deceptive conduct (*see*, *e.g.*, ¶¶86-88, 92-93, 96, 98-103, 109-20, 146, 154-55), which was revealed to investors through the disclosure of the 2018 FDA action at Morgantown (*see* ¶181) and the subsequent disclosures about the remediation of Morgantown and costly ramifications of those efforts (*see* ¶¶186, 208, 217), all of which plausibly stemmed from the severity and pervasiveness

of Mylan's data and quality control issues. *See Gilead*, 536 F.3d at 1058 (company's statements disguising practice of "off-label marketing" for a product plausibly linked to disclosure of "less-than-expected revenues resulting from the reduction in wholesalers' inventories").

Defendants' central response to Plaintiff's showing of loss causation (which the Court has already found plausible) is to argue that "[i]f Rule 9(b)'s stricter pleading standard applied here, Plaintiff's unsubstantiated 'indirect' theory of loss-causation would fail." D.Br. at 12. But this argument conflates the pleading standard, which the Third Circuit has yet to address, and the loss causation standard on which the Third Circuit *has* ruled.[9] Thus, regardless of the specificity of Plaintiff's loss causation allegations, if they plausibly allege an "indirect" theory of loss causation, they pass muster in the Third Circuit (*see McCabe*, 494 F.3d at 425), as well as in the Seventh and Ninth Circuits. *See Hedick v. Kraft-Heinz Co.*, 2021 WL 3566602, at *17 (N.D. Ill. Aug. 11, 2021) (holding disclosures of earnings misses and impairment charges revealed that "[company] had implemented destructive cost reductions that were ravaging its infrastructure and the value of its brands"); *see also BofI Holding*, 977 F.3d at 791 n.3 ("The district court held . . . that none of the allegations in the Erhart lawsuit relate back to the subject matter of the specific misstatements . . . We disagree with that ruling. . . . [A] corrective disclosure need not be a mirror image of the prior misstatement."). There are no grounds under § 1292 for Defendants to certify an issue of clearly established Third Circuit law.

**CONCLUSION**

Because Defendants fail to satisfy any of the requirements for interlocutory review under § 1292(b), Defendants' Motion should be denied.

---

[9] Tellingly, the Motion fails to cite the controlling *McCabe* loss causation standard and, thus, is nothing more than an untimely and improper motion to reconsider this Court's plausibility finding under well-settled Third Circuit case law.

20

Dated: September 8, 2025

Respectfully submitted,

*/s/ Salvatore J. Graziano*
**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
Salvatore J. Graziano (*pro hac vice*)
Katherine M. Sinderson (*pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Salvatore@blbglaw.com
KatieM@blbglaw.com

Andrew L. Zivitz (PA I.D. # 76554) (*pro hac vice*)
Jennifer L. Joost (PA I.D. # 204193)
Nathaniel C. Simon (PA I.D. # 326467)
**KESSLER TOPAZ MELTZER
   & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
azivitz@ktmc.com
dbocian@ktmc.com
nsimon@ktmc.com

John Davidson (*pro hac vice*)
**DAVIDSON BOWIE, PLLC**
1062 Highland Colony Parkway, Suite 275
Ridgeland, Mississippi 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff Public
Employees' Retirement System of Mississippi*

Colin Callahan (PA I.D. #328033)
**FLANNERY GEORGALIS, LLC**
707 Grant Avenue, Suite 2750
Pittsburgh, Pennsylvania 15219
Telephone: (412) 254-8602
ccallahan@flannerygeorgalis.com

*Liaison Counsel for Lead Plaintiff*

21