**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE MYLAN N.V. SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200

Nina F. Locker (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Mark R. Yohalem (*pro hac vice*)
Madelyn Y. Chen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Counsel for Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.     The Court Should Certify the Order for Interlocutory Review .......................................... 2

     A.     The Order Presents a Controlling Question of Law ................................................ 2

          1.     A Question of Law Is Not Rendered Uncertifiable Merely Because It Must Ultimately Be Applied to Case-Specific Circumstances ................ 2

          2.     Whether Rule 8(a)'s "Lenient Standard" or Rule 9(b)'s "Exacting Standard" Governs Allegations of Loss Causation Is "Serious to the Conduct of the Litigation" .................................................................... 4

     B.     A Substantial Ground for Difference of Opinion Exists on this Question ........... 11

          1.     Plaintiff Is Wrong that a Circuit Split Cannot Show Substantial Ground for Difference of Opinion and that an Intra-Circuit Split Is Required ................................................................................................... 11

          2.     A Circuit Split Undeniably Exists ............................................................. 13

          3.     Plaintiff Does Not Even Attempt to Address the Misinterpretation of *Dura* Underlying the Rule 8(a) Side of the Split ................................. 16

     C.     Immediate Appeal Would Materially Advance the Litigation ............................. 17

     D.     Further Exceptional Circumstances Are Not Required, But Exist Here ............... 18

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
2013 WL 6506570 (M.D. Pa. Dec. 12, 2013)...............................................................17, 20

*Acticon AG v. China N.E. Petroleum Holdings Ltd.*,
692 F.3d 34 (2d Cir. 2012)......................................................................................15

*Ames v. Uranus, Inc.*,
1993 WL 106896 (D. Kan. Mar. 17, 1993) .............................................................15

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................................20

*Aquino v. Trupin*,
833 F. Supp. 336 (S.D.N.Y. 1993) .........................................................................15

*AstenJohnson v. Columbia Cas. Co.*,
2006 WL 1805979 (E.D. Pa. June 29, 2006) ..........................................................12

*Ballard v. City of Philadelphia*,
2013 WL 12132054 (E.D. Pa. Apr. 29, 2013),
*aff'd*, 541 F. App'x 143 (3d Cir. 2013)....................................................................5

*Bedoya v. American Eagle Express*,
2017 WL 4330351 (D.N.J. Sept. 29, 2017) ......................................................11, 18

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)................................................................................................19

*Coyne v. Metabolix, Inc.*,
943 F. Supp. 2d 259 (D. Mass. 2013) ...............................................................15, 16

*Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*,
2016 WL 7440471 (D. Del. Dec. 27, 2016)......................................................17, 18

*De Vito v. Liquid Holdings Group, Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018)..............................................................10

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................15, 16

*E.E.O.C. v. Hora, Inc.*,
2005 WL 1745450 (E.D. Pa. July 22, 2005).............................................................3

*Ehrhart v. Synthes (USA)*,
2007 WL 4591276 (D.N.J. Dec. 28, 2007) ...............................................................4

*Est. of Cotton v. Senior Plan. Servs., LLC.*,
    2022 WL 17547259 (D.N.J. Dec. 8, 2022) ....................................................................4, 5

*Florence v. Board of Chosen Freeholders*,
    621 F.3d 296 (3d Cir. 2010) .............................................................................................3

*Florence v. Board of Chosen Freeholders*,
    657 F. Supp. 2d 504, 509 (D.N.J. 2009) ........................................................................13

*Foglia v. Renal Ventures Mgmt.*,
    LLC, 754 F.3d 153 (3d Cir. 2014) ...................................................................................7

*Freedom Med., Inc. v. Gillespie*,
    2013 WL 3819366 (E.D. Pa. July 24, 2013) ...................................................................12

*Garrett v. Wexford Health*,
    938 F.3d 69 (3d Cir. 2019) ...............................................................................................4

*Guglielmino v. McKee Foods Corp.*,
    506 F.3d 696 (9th Cir. 2007) ............................................................................................3

*Hall v. Johnson & Johnson*,
    2019 WL 7207491 (D.N.J. Dec. 27, 2019) ...............................................................14, 15

*Harris v. Kellog, Brown & Root Services, Inc.*,
    2009 WL 1248060 (W.D. Pa. Apr. 30, 2009) .................................................................13

*Hedick v. Kraft-Heinz Co.*,
    2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ..................................................................10

*In re BofI Holding, Inc. Securities Litigation*,
    977 F.3d 781 (9th Cir. 2020) ..........................................................................................10

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ...................................................................................2, 5, 20

*In re Cargill Meat Sols. Wage & Hour Litig.*,
    2008 WL 11366373 (M.D. Pa. July 11, 2008) ..................................................................5

*In re Cortuk*,
    2019 WL 1418133 (D.N.J. Mar. 29, 2019) .....................................................................12

*In re DVI, Inc. Sec. Litig.*,
    2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) .....................................................................8

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011) ..............................................................................................6

*In re GroupHealth P'ship, Inc.*,
    1992 WL 96333 (E.D. Pa. Apr. 21, 1992) ......................................................................14

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) .............................................................................15

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)..............................................................................1, 7, 8

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) ..............................................................................3, 4

*In re Walmart Inc. Sec. Litig.*,
    2025 WL 2487776 (3d Cir. Aug. 29, 2025)..............................................................6

*Katyle v. Penn Nat. Gaming, Inc.*,
    637 F.3d 462 (4th Cir. 2011) ............................................................................14, 16

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974)...........................................................................4, 5, 20

*L.R. v. Manheim Twp. Sch. Dist.*,
    540 F. Supp. 2d 603 (E.D. Pa. 2008) ....................................................................3

*Lorentz v. Westinghouse Elec. Corp.*,
    472 F. Supp. 954 (W.D. Pa. 1979).........................................................................5

*Marcelle v. City of Allentown*,
    2010 WL 3606405 (E.D. Pa. Sept. 16, 2010) .........................................................4

*McCabe v. Ernst & Young, LLP*,
    494 F.3d 418 (3d Cir. 2007)...............................................................................9, 10

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ..............................................................................3

*MDNet, Inc. v. Pharmacia Corp.*,
    147 F. App'x 239 (3d Cir. 2005) ............................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006).............................................................................................2, 20

*Milbert v. Bison Lab'ys, Inc.*,
    260 F.2d 431 (3d Cir. 1958)..............................................................................19, 20

*Miller Investment Trust v. Morgan Stanley & Co., LLC*,
    308 F. Supp. 3d 411 (D. Mass 2018).............................................................8, 9, 10

*Mondelli v. United States*,
    711 F.2d 567 (3d Cir. 1983)..................................................................................17

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ............................................................................14, 16

*Overdam v. Texas A&M Univ.*,
    43 F.4th 522 (5th Cir. 2022) ..................................................................................3

*Oyster v. Johns-Manville Corp.*,
    568 F. Supp. 83 (E.D. Pa. 1983) ..........................................................................12

*Palmer v. Sanderson*,
  9 F.3d 1433 (9th Cir. 1993) ...........................................................................................20

*Ray v. AT&T Inc.*,
  2019 WL 11626269 (E.D. Pa. Mar. 12, 2019)...................................................................4

*Sapssov v. Health Management Associates, Inc.*,
  608 F. App'x 855 (11th Cir. 2015) ..................................................................................15

*Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*,
  2017 WL 1134131 (E.D. Pa. Mar. 27, 2017)....................................................................5

*SEPTA v. Drummond Decatur & State Props., LLC*,
  2022 WL 784531 (E.D. Pa. Mar. 15, 2022)....................................................................6, 7

*SEPTA v. Orrstown Fin. Servs., Inc.*,
  2020 WL 4041049 (M.D. Pa. July 17, 2020)...................................................................11

*Singh v. Daimler-Benz, AG*,
  800 F. Supp. 260 (E.D. Pa. 1992) ...................................................................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)........................................................................................................20

*Tennessee Gas Pipeline Co., L.L.C. v. Permanent Easement for 7.053 Acres*,
  2017 WL 4954093 (M.D. Pa. Nov. 1, 2017) ...................................................................12

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
  2025 WL 1488015 (D. Del. May 23, 2025).......................................................................4

*Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ...............................................................................8, 14, 16

*United States ex rel. Bookwalter v. UPMC*,
  946 F.3d 162 (3d Cir. 2019)...............................................................................................1

*United States ex rel. Brown v. Pfizer, Inc.*,
  2017 WL 2691927 (E.D. Pa. June 22, 2017) ...................................................................18

*United States v. Bracco USA, Inc.*,
  2025 WL 1261779 (3d Cir. May 1, 2025) .........................................................................7

*United States v. Garner*,
  749 F.2d 281 (5th Cir.), *supplemented*, 752 F.2d 116 (5th Cir. 1985) ............................19

*United States v. Omnicare, Inc.*,
  903 F.3d 78 (3d Cir. 2018)..............................................................................................1, 7

*Weitzner v. Sanofi Pasteur, Inc.*,
  2014 WL 1786500 (M.D. Pa. May 5, 2014).....................................................................11

## STATUTES

28 U.S.C. 1292(b) ................................................................................2, 11, 17, 18, 19

## RULES

Fed. R. Civ. P. 8(a) ................................................................................ *passim*

Fed. R. Civ. P. 9(b) ................................................................................ *passim*

## MISCELLANEOUS

16 C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE (3d ed.) ..........................................19

THOMAS L. HAZEN, LOSS CAUSATION, 4 LAW SEC. REG. (2025) ....................................................15

5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE (4th ed. ) ......................................15

**INTRODUCTION**

Certification is warranted because there is a circuit split on a question of law important to this case: whether Rule 9(b)'s exacting pleading standard must be applied to Plaintiff's barely-there allegations of loss causation. Those allegations gave only "some indication of the loss and causal connection that [Plaintiff] ha[d] in mind," and squeaked by on inferences of indirect loss causation that the Court deemed permissible under Rule 8(a) even when it is "unclear whether the plaintiff's losses were caused by the [alleged] fraud or some other intervening event." (Order at 8.) Rule 8(a)'s lenient pleading standard was thus "important" to the Order's outcome. (*See id.*)

Had the Court applied Rule 9(b), Plaintiff could not have "benefit[ted] from inferences flowing from vague or unspecific allegations—inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002). Under Rule 9(b), "the allegations must go well beyond Rule 8's threshold of plausibility. A mere plausible inference of illegality is not enough." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019). Thus, for instance, "an inference of illegality based on facts that could plausibly have either a legal or illegal explanation would be insufficient to meet Rule 9(b)'s burden" in the False Claims Act ("FCA") context. *United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018). Under that standard, the Court could *not* have inferred actionable loss causation from thin allegations of indirect causation that left it "unclear" whether the alleged misrepresentation and corrective disclosures actually caused the harm.

Thus, in a jurisdiction where Rule 9(b) applies to loss causation—like the Fourth Circuit— Plaintiff's misrepresentation claim would have failed. The claim survived, however, because "[t]he Third Circuit has not answered this question" (Order at 4 n.2) and the Court elected to apply Rule 8(a). That controlling issue of law should be certified.

To argue against certifying an important, open legal issue that has divided the circuits, the Opposition proposes crabbed conceptions of Section 1292(b) and Rule 9(b) under which:

- even the pure legal issue of what standard applies cannot be certified because any standard must ultimately be applied to a case's specific circumstances;

- even an issue that would eliminate a claim cannot be certified unless it "would be completely dispositive to the litigation";

- even a clear circuit split cannot show room for disagreement among reasonable jurists; and

- even the exacting pleading standard of Rule 9(b), rigorously applied, requires neither specificity nor substantiation when a plaintiff alleges an indirect theory of loss causation.

These are the premises on which the Opposition rests, and as is demonstrated below, they are wrong as a matter of precedent and policy. The Motion should be granted.[1]

## ARGUMENT

## I.    The Court Should Certify the Order for Interlocutory Review

### A.    The Order Presents a Controlling Question of Law

#### 1.    A Question of Law Is Not Rendered Uncertifiable Merely Because It Must Ultimately Be Applied to Case-Specific Circumstances

Plaintiff does not and cannot dispute that the question for certification—whether Rule 8(a) or Rule 9(b) supplies the pleading standard for loss causation in a securities fraud claim—is a "question of 'pure law' that an appellate court can resolve 'quickly and cleanly' without laboring

---

[1] Plaintiff's *lead* argument—that Defendants filed the Motion in bad faith to cause delay (Opp. 1)—warrants only a brief response. The Motion has delayed nothing. It should be granted, and if *that* pauses proceedings in this Court, it will be because this Court and the Third Circuit deem the issue worth appellate review. That is not undue delay, but due process. Tellingly, Plaintiff makes the same delay accusation against the Rule 12(b)(6) motion, *which led to much of the case being dismissed.* (*See id.*) Plaintiff implies it is somehow wrongful for a securities-fraud defendant to challenge the pleadings rather than submit to discovery. But Congress and the courts knew that *rigorous* scrutiny of the pleadings is needed in securities-fraud cases to prevent discovery costs from coercing settlements. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80-81 (2006); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

over the record." *See E.E.O.C. v. Hora, Inc.*, 2005 WL 1745450, at *3 (E.D. Pa. July 22, 2005) (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). As set out in the Motion, courts have recognized that determining the "proper pleading standard" is just such a "controlling question[] of law." (*See* Mot. 9 (citing *Overdam v. Texas A&M Univ.*, 43 F.4th 522, 526 (5th Cir. 2022); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627 (7th Cir. 2010)).)[2]

Unable to argue that the actual question presented is not "pure" law, Plaintiff argues it is rendered impure because "[w]hether the Court were to apply Rule 8 or Rule 9(b), evaluating loss causation allegations requires the Court to make factual determinations." (*See* Opp. 9-10.) Under Plaintiff's narrow conception, a question presented for certification could *never* be both "controlling" and "pure law," as no issue can be decided by abstract principles of law; such principles must always be applied to the circumstances of the case. But Plaintiff's conception is simply wrong—a question over what legal standard to apply to the facts is the paradigmatic issue of law for certification. *See, e.g.*, *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (certifying "the burden of proof standard" as a "question of law"). Far from adopting Plaintiff's narrow view, "[t]he Third Circuit has interpreted the meaning of a 'controlling question of law' broadly." *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 610 (E.D. Pa. 2008).

In keeping with that broad definition of "question of law," courts in the Third Circuit routinely certify issues that ultimately entail applying a legal standard to the case's facts, such as:

- "[W]hether a blanket policy of strip searching all non-indictable arrestees admitted to a jail facility without first articulating reasonable suspicion violates the Fourth Amendment." *Florence v. Board of Chosen Freeholders*, 621 F.3d 296, 301 (3d Cir. 2010) (citation omitted).

---

[2] Plaintiff attempts to distinguish those cases by arguing that they presented "novel and unsettled issues unlike the question Defendants present here" (Opp. 11), but those considerations are irrelevant to the first prong of Section 1292(b). A settled question of law is not a question of fact, and an unsettled question of fact is not a question of law. Moreover, Plaintiff's distinction is false: the loss-causation pleading standard *is* an unsettled question of law.

- "How much 'creative spark' is legally required for originality?" even though "originality can involve fact-heavy analysis." *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 2025 WL 1488015, at *1 (D. Del. May 23, 2025) (citation omitted).

- "[W]hether the City acted with deliberate indifference when hiring and retaining Mr. Guth." *Marcelle v. City of Allentown*, 2010 WL 3606405, at *2 (E.D. Pa. Sept. 16, 2010)

- "[W]hether Defendant's 'decisional unit' definition … satisfies the Older Workers Benefit Protection Act." *Ray v. AT&T Inc.*, 2019 WL 11626269, at *1 (E.D. Pa. Mar. 12, 2019).

These examples confirm Judge Posner's observation that "[d]ecisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *Text Messaging*, 630 F.3d at 626. And applying a pleading standard to allegations cannot entail "factual determinations." (*See* Opp. 9-10.) More importantly, though, Defendants do not ask the Court to certify *the application* of a legal standard, only *what standard* applies.

2.  Whether Rule 8(a)'s "Lenient Standard" or Rule 9(b)'s "Exacting Standard" Governs Allegations of Loss Causation Is "Serious to the Conduct of the Litigation"

Whether Rule 8(a)'s "lenient standard" or Rule 9(b)'s "exacting standard" applies to Plaintiff's loss-causation allegations is a "controlling" question because of its legal and practical significance. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

As noted throughout the Motion (Mot. 1, 6, 9, 11, 13)—and unaddressed in the Opposition—the Order expressly acknowledged it was "important" to the survival of Plaintiff's misrepresentation claim that the Court had required only "a short and plain statement" of loss causation. (Order at 8.) That acknowledgment makes sense. Rule 8(a) sets a "lenient standard," *Ehrhart v. Synthes (USA)*, 2007 WL 4591276, at *6 (D.N.J. Dec. 28, 2007), which "imposes 'minimal burdens on the plaintiff,'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (citation omitted). In contrast, Rule 9(b) imposes "exacting standards for pleading," *Est. of Cotton v. Senior Plan. Servs., LLC.*, 2022 WL 17547259, at *5 (D.N.J. Dec. 8, 2022), which require

4

"'precision' and 'substantiation,'" *Ballard v. City of Philadelphia*, 2013 WL 12132054, at \*6 (E.D. Pa. Apr. 29, 2013), *aff'd*, 541 F. App'x 143 (3d Cir. 2013) (citation omitted). Rule 8(a) is meant merely to ensure notice. Rule 9(b), particularly in the securities-fraud context, is meant to exclude substantively meritless claims. *See Burlington*, 114 F.3d at 1418. Both "practically" and "legally," which standard applies is "serious to the conduct of the litigation." *See Katz*, 496 F.2d at 755.

In two misguided manners, Plaintiff resists this conclusion. ***First***, Plaintiff incorrectly asserts that "[a] question is not controlling unless its resolution would be 'completely dispositive of the litigation.'" (Opp. 11 (quoting *Schulmerich Bells, LLC v. Jeffers Handbell Supply, Inc.*, 2017 WL 1134131, at \*1 (E.D. Pa. Mar. 27, 2017).) In truth, the Third Circuit has expressly held that "a reversal of the order" need *not* "terminate the litigation … for a question to be 'controlling.'" *Katz*, 496 F.2d at 755; *accord, e.g.*, *Lorentz v. Westinghouse Elec. Corp.*, 472 F. Supp. 954, 956 n.2 (W.D. Pa. 1979) ("A question need not be dispositive of the case to qualify as a controlling one."); *In re Cargill Meat Sols. Wage & Hour Litig.*, 2008 WL 11366373, at \*5 (M.D. Pa. July 11, 2008) ("a question of law need not completely dispose of a litigation in order to be 'controlling'") (citation omitted). Plaintiff's sole authority for the contrary proposition is a parenthetical quotation of an out-of-circuit unpublished district court order in a "*see also*" citation in *Schulmerich*, itself an unpublished order. (*See* Opp. 11.) That throwaway sentence is neither binding nor correct.

Because a controlling question need not dispose of the entire action, certification would be warranted *even if*—as Plaintiff posits—the scheme claim "would survive intact" should Defendants prevail on appeal. (*See* Opp. 11.) But it is at best an open question whether the scheme claim would "survive" without the alleged misrepresentation. Plaintiff recognized that whether "the scheme begins with [the] January 31, 2019, statements" (*i.e.*, because the scheme's reliance element depended on the alleged misrepresentation) "could be case dispositive as we argue loss

5

causation." (ECF No. 121 at 16:21-25.) Ultimately, the Order did not decide whether the scheme claim could survive without the alleged misrepresentation because it "reject[ed] Defendants' loss-causation argument related to the misrepresentation claim." (Order at 16-17.) The Court thus left open whether a failure to properly allege loss causation would dispose of both claims.

If the Third Circuit were to apply Rule 9(b)—and thus deem inadequate the loss-causation allegations "related to the misrepresentation claim" (Order at 17)—the scheme claim would fall too, unless it could stand without any investor-facing misrepresentation. *Cf. In re Walmart Inc. Sec. Litig.*, 2025 WL 2487776, at \*13 (3d Cir. Aug. 29, 2025) ("[A] public company's mischief is not actionable under the securities laws unless the company's disclosures contain a misrepresentation or misleading omission of material fact about that mischief."). The claim cannot stand without such a misrepresentation for the reasons raised by Defendants (ECF No. 106 at 14-20) but not reached by the Order. *See In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 648-49 (3d Cir. 2011) ("a plaintiff cannot invoke the fraud-on-the-market presumption of reliance in a private action under Rule 10b-5(a) and (c) unless the deceptive conduct has been publicly disclosed and attributed to the actor"). Even if it survived, it would not be "intact," but significantly narrowed.

***Second***, Plaintiff incorrectly argues that applying Rule 9(b) to loss causation would not even affect the misrepresentation claim, as (*a*) it requires at most that "the 'who, what, where, when, and how' of each corrective disclosure" be specified, and (*b*) "regardless of the specificity of Plaintiff's loss causation allegations, if they plausibly allege an 'indirect' theory of loss causation, they pass muster in the Third Circuit." (Opp. 18-20.) Both assertions are wrong.

(*a*)      Rule 9(b)'s heightened pleading standard requires specifics *and* substantiation. To satisfy Rule 9(b), a complaint must "go 'well beyond Rule 8's threshold of plausibility' and show 'a strong inference of fraud.'" *SEPTA v. Drummond Decatur & State Props., LLC*, 2022 WL

6

784531, at *3 (E.D. Pa. Mar. 15, 2022) (citation omitted). A plaintiff "may not simply point to a bad result and allege fraud, but must 'inject precision and some measure of substantiation into the allegations.'" *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (non-precedential; citation omitted). In the FCA context, for instance, the Third Circuit has explained that Rule 9(b) requires not only "particular details" but also "reliable indicia" that together yield a "strong inference" supporting a claimed element. *See Foglia v. Renal Ventures Mgmt.*, LLC, 754 F.3d 153, 157-58 (3d Cir. 2014) (cleaned up). Put otherwise, Rule 9(b) is not satisfied by specifying allegations that make the claimed element "possible" or "plausible"; what is needed are factual details that tend to exclude alternative explanations, such that a court can strongly infer that what was alleged "actually" happened. *See, e.g.*, *United States v. Bracco USA, Inc.*, 2025 WL 1261779, at *2 (3d Cir. May 1, 2025) (non-precedential); *Omnicare*, 903 F.3d at 92.

The Order itself implicitly recognizes that the Complaint lacks Rule 9(b) substantiation through detailed loss-causation allegations (*see* Order at 8-9); instead the Complaint relies upon "inferences flowing from vague or unspecific allegations—inferences that may arguably have been justified under [Rule 8(a)]," but which are not allowed under Rule 9(b). *See Rockefeller Center,* 311 F.3d at 224. The Order reasoned that the allegations would be sufficient even if they left it "unclear whether the plaintiff's losses were caused by the fraud or some other intervening event" because "[t]he only thing required of Plaintiff right now is a short and plain statement of the claim." (Order at 8-9) (cleaned up). That might be possible under Rule 8(a), but Rule 9(b) does not permit such inferential leaps, particularly in the securities-fraud context.

Even setting aside the authority showing that it precludes the inferential leaps allowed under Rule 8(a), Rule 9(b) would still require more than just "the 'who, what, where, when, and how' *of each corrective disclosure*." (Opp 18 (emphasis added).) What is required—"at a

7

minimum"—is "the 'who, what, when, where and how' *of the events at issue.*" *Rockefeller Center*, 311 F.3d at 217 (citation omitted; emphasis added). The Complaint cannot just allege how a statement was made; it must also allege "how [that alleged] fraud caused [the] losses." *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007). Plaintiff's "claim falls short with respect to the last requirement" because the Complaint "has not set forth any facts showing that the losses [Plaintiff allegedly] suffered are proximately linked to the alleged misstatement[]." *Id.*

A well-reasoned example of how Rule 9(b) applies to loss-causation allegations in a "corrective disclosure" case is *Miller Investment Trust v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 445 (D. Mass 2018). There, the court explained that a "corrective disclosure theory" of loss causation requires specific factual allegations showing that "the stock market must have reacted to the subsequent disclosure of the misconduct … and not to a tangle of other factors affecting price." *Id.* (cleaned up). The court rejected the proffered "corrective disclosure"—a press release "announc[ing] the appointment of a committee 'to investigate potentially serious discrepancies and unexplained issues relating to [the companies'] financial records"—because "[t]here are any number of 'discrepancies and unexplained issues' that could arise in financial statements," including ones unrelated to the alleged fraud (*e.g.*, undisclosed internal control issues). *Id*. at 446-47. Importantly, the press release was not a corrective disclosure because it "simply did not *connect* the current, present, negative information to the earlier false or misleading statement." *Id*. at 447 (cleaned up).[3] The allegations thus failed under Rule 9(b). *Id.* at 445, 449.

---

[3] That a corrective-disclosure theory of loss causation requires "proof that the market recognized a relationship between the event disclosed and the fraud" is also well established in the Third Circuit. *See In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *6 & n.11, *12, *24 (E.D. Pa. Sept. 3, 2010) (granting partial summary judgment) (citation omitted).

The flaws in *Miller* are present here: the loss-causation allegations do not set forth "a sufficient connection between th[e] disclosure" of the additional impact of remediation at the Morgantown facility and "the allegedly fraudulent" *Bloomberg* statement. *See* 308 F. Supp. 3d at 446. The Order concluded that, under the lenient Rule 8(a) standard, Plaintiff's "indirect theory" that the "corrective disclosures"—Mylan's earnings releases regarding revenue declines attributed to the Morgantown remediation—sufficed to "reveal some partial truth about the falsity of Mylan's *Bloomberg Law* representations." (Opp. 7-8.) But *Miller* shows why that reasoning would not work under Rule 9(b). "[R]emediation can occur whenever there is something to address for any reason," not just circumvention (ECF No. 111 at 6), in the same way that "[t]here are any number of 'discrepancies and unexplained issues' that could arise in financial statements," *Miller*, 308 F. Supp. at 446 (citation omitted). Under the exacting Rule 9(b) standard, more is required.

(*b*)      Nor are the Complaint's inadequate allegations helped by the substantive standard for loss causation. Contrary to the Opposition, nothing in *McCabe v. Ernst & Young, LLP*, 494 F.3d 418 (3d Cir. 2007), holds that "regardless of the specificity of Plaintiff's loss causation allegations, if they plausibly allege an 'indirect' theory of loss causation, they pass muster in the Third Circuit." (Opp. 20.) Quite the opposite: *McCabe*—a summary judgment case saying nothing about what allegations suffice—emphasized that plaintiffs must establish a causal connection between a revelation and a loss that is both "direct" and "substantial." 494 F.3d at 425-36.

Far from endorsing "an 'indirect' theory of loss causation" (Opp. 20), the *McCabe* opinion does not include the word "indirect" at all—instead, it endorsed Third Circuit precedent requiring "a *direct* causal nexus between the misrepresentation and the plaintiff's economic loss," Fifth Circuit precedent requiring "that the untruth was in some reasonably *direct*, or proximate, way responsible for his loss," and a Second Circuit dissent requiring "that the injury averred must

proceed *directly* from the wrong alleged," *i.e.*, the "misrepresentations." 494 F.3d at 427-28, 431 (emphases added) (cleaned up). "The loss causation inquiry typically examines how *directly* the subject of the fraudulent statement caused the loss" and "requires the plaintiff to prove that it was the very facts about which the defendant lied which caused its injuries." *Id.* at 431 (cleaned up) (emphasis added). In sum, "to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." *Id.* at 425-26.[4] *McCabe* does not hold that, "regardless of the specificity of Plaintiff's loss causation allegations, if they plausibly allege an 'indirect' theory of loss causation, they pass muster." (Opp. 20.)[5]

The weight of all this authority supports what the Order recognized: it is "important" here, as it was in *Miller*, whether the loss-causation allegations are subject to the exacting Rule 9(b) standard or the lenient Rule 8(a) standard. (*See* Order at 8.) That question is thus a controlling one.

---

[4] *Accord, e.g.*, *De Vito v. Liquid Holdings Group, Inc.*, 2018 WL 6891832, at *38 (D.N.J. Dec. 31, 2018) ("To establish loss causation … a plaintiff must show that its losses are related specifically to the market's discovery of the misrepresentation and the corresponding decrease in price due to that misrepresentation." (cleaned up)).

[5] Plaintiff is likewise wrong to claim that *Hedick v. Kraft-Heinz Co.*, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021), shows that "in the Seventh … Circuit[]," it is enough to "plausibly allege an 'indirect' theory of loss causation." (Opp. 20.) That case does not refer to "indirect" loss causation any more than *McCabe* does, and instead explained that the plaintiffs had adequately alleged "the causal connections between the disclosures, the information they believe was concealed, and the drops in the Company's stock price with analyst comments that attribute the Company's bad news to problems with its cost-cutting strategy." *Hedick*, 2021 WL 3566602, at *17.

Nor does *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781 (9th Cir. 2020), show that "in the … Ninth Circuit[]," it is enough to "plausibly allege an 'indirect' theory of loss causation." (Opp. 20.) Again there is no endorsement of "indirect" causation. The court did rule that "a corrective disclosure need not be a mirror image of the prior misstatement," 977 F.3d at 791 n.3, but it deemed the loss-causation allegations sufficient because "highly detailed and specific" whistleblower accusations of "egregious wrongdoing" had "unquestionably revealed to the market that at least some of [the] alleged misstatements were false," *id.* at 791-92.

**B.     A Substantial Ground for Difference of Opinion Exists on this Question**

1.     <u>Plaintiff Is Wrong that a Circuit Split Cannot Show Substantial Ground for Difference of Opinion and that an Intra-Circuit Split Is Required</u>

By definition, "there is substantial ground for difference of opinion" under Section 1292(b) when—as here—there is an *actual* difference of opinion among federal circuits and no controlling precedent in this Circuit. Plaintiff cannot dispute what the Order expressly recognized: (1) "[t]he Third Circuit has not answered th[e] question" whether "Rule 9's heightened pleading standard" applies to loss causation, and (2) other circuits have come out on both sides of the question. (Order at 4 n.2.) These two facts establish Section 1292(b)'s second requirement.

Misunderstanding Section 1292(b) and disregarding the comity among federal courts, Plaintiff insists that the circuit split is "irrelevant" because there are "no conflicting district-court decisions" from "within the Third Circuit." (Opp. 2, 13.) This argument was flatly rejected in *Bedoya v. American Eagle Express*, where the court found the second prong satisfied despite "'unanimous' district-wide authority on this issue" because "there [was] no controlling authority in the Third Circuit" and "there [was] a circuit split between the First Circuit and the Seventh and Ninth Circuits." 2017 WL 4330351, at *2-3 (D.N.J. Sept. 29, 2017). That must be so, because "[t]he relevant question is whether reasonable jurists might disagree as to the proper resolution of a disputed issue." *SEPTA v. Orrstown Fin. Servs., Inc.*, 2020 WL 4041049, at *8 (M.D. Pa. July 17, 2020). Only by treating entire circuits as devoid of "reasonable jurists" can those circuits' precedents be dismissed as "irrelevant." As far as Defendants are aware, no court applying Section 1292(b) has ever done any such thing. To the contrary, it is well recognized that "[t]he clearest evidence of substantial grounds for difference of opinion is where there are conflicting interpretations from numerous courts," and "this requirement is met" when "the Circuits are split." *Weitzner v. Sanofi Pasteur, Inc.*, 2014 WL 1786500, at *2 (M.D. Pa. May 5, 2014) (cleaned up).

11

The authority cited by Plaintiff does not establish that this Court can disregard the circuit split in deciding whether reasonable jurists could disagree on the issue. (*See* Opp. 14.) The unelaborated dictum in *In re Cortuk*, 2019 WL 1418133, at *2 (D.N.J. Mar. 29, 2019), that "[e]ven conflicting decisions of other courts do not constitute a substantial ground for difference of opinion" rests on a citation to *Singh v. Daimler-Benz, AG*, 800 F. Supp. 260, 263 (E.D. Pa. 1992). That case, however, saw no substantial ground for disagreement because "only one other district court opinion in the country" had gone the other way. *Singh*, 800 F. Supp. at 263. Likewise, *Oyster v. Johns-Manville Corp.* deemed "a single case" from a state superior court insufficient—"against a plethora of orders and decisions"—to establish "*substantial*" grounds for disagreement. 568 F. Supp. 83, 88 (E.D. Pa. 1983). These decisions say nothing about the significance of a circuit split.

Plaintiff fares no better in arguing that the lack of an "intra-circuit split" among district courts in the Third Circuit somehow nullifies the indisputable existence of an inter-circuit split. (Opp. 2, 13.) If there is *Third Circuit precedent*, then the fact that other circuits have gone a different way cannot justify certification. *See Freedom Med., Inc. v. Gillespie*, 2013 WL 3819366, at *5 (E.D. Pa. July 24, 2013). But absent binding precedent, "[t]here is 'substantial ground for difference of opinion' where there is a divergence of opinion within a District, *or* where there is a Circuit split." *AstenJohnson v. Columbia Cas. Co.*, 2006 WL 1805979, at *1 (E.D. Pa. June 29, 2006) (emphasis added; citation omitted). This is an application of the principle that certification is warranted when an issue "has not been addressed by either the Supreme Court or the Third Circuit" and "there is no uniform consensus on [its] resolution." *Tennessee Gas Pipeline Co., L.L.C. v. Permanent Easement for 7.053 Acres*, 2017 WL 4954093, at *3 (M.D. Pa. Nov. 1, 2017). As Plaintiff finally admits on the last page of the Opposition, "the pleading standard [is an issue] which the Third Circuit has yet to address." (Opp. 20.)

12

Plaintiff invokes *Harris v. Kellog, Brown & Root Services, Inc.*, 2009 WL 1248060 (W.D. Pa. Apr. 30, 2009), to argue that the law must be deemed "well-settled within the Third Circuit" if its district courts are in accord (Opp. 13 (citation omitted)), but *Harris* did not so hold. Plaintiff has stitched together quotations from the district court's analysis of two separate issues. (*See id.*) As to "the applicable legal standard for the political question doctrine," the court cited *controlling circuit precedent* to rule that the standard was "well-settled within the Third Circuit." *Harris*, 2009 WL 1248060, at *2. Turning to the distinct "'combatant activities' exception to the Federal Torts Claims Act," the court explained that there were "no conflicting decisions from district courts within this Circuit" and only four out-of-circuit cases that had ever reached a different result from the court's decision. *Id.* at *3. The court reasoned that those cases did not represent a substantial ground for *legal* disagreement because it had "factually distinguished each of them." *Id.* Neither point says what Plaintiff suggests: that a lack of intra-circuit disagreement forecloses certification. *See Florence v. Board of Chosen Freeholders*, 657 F. Supp. 2d 504, 509 (D.N.J. 2009) (rejecting argument that "contrary authority must exist within the Court's District or Circuit").

### 2.    A Circuit Split Undeniably Exists

Plaintiff's efforts to initially deny—and then downplay—the existence of a circuit split are fruitless. The existence of a split is indisputable, and even if only two circuits apply a heightened pleading standard to loss causation, that would satisfy the second prong of Section 1292(b).

Initially, Plaintiff wrongly claims that it is "incorrect" that there is a circuit split over whether to apply Rule 8(a) or Rule 9(b) to loss causation, accusing Defendants of concocting "a supposed 'circuit split'" where none exists. (Opp. 13.) But then—buried in the middle of a paragraph—Plaintiff admits "the Ninth and Fourth Circuits have applied a heightened standard." (Opp. 14.) Pages later, this time in a mid-paragraph parenthetical, Plaintiff acknowledges they "appl[y] Rule 9(b) to loss causation allegations." (Opp. 18.) And Plaintiff concedes those circuits

13

stand in contrast to the Fifth and Sixth, which apply Rule 8(a). (Opp. 14.) In sum, Plaintiff's

"incorrect" and "supposed" pejoratives cannot change the fact that a circuit split clearly exists.

Plaintiff's effort to downplay the extent of the split is equally misplaced.[6] In opposing

Defendants' motion for judgment on the pleadings, *Plaintiff* told this Court that the lay of the land

regarding the debate over the proper pleading standard for loss causation was set forth in *Hall v.

Johnson & Johnson*, 2019 WL 7207491 (D.N.J. Dec. 27, 2019). (*See* ECF No. 110 at 7.) Plaintiff's

handpicked case rightly recognized that "the Fourth, Seventh, Ninth, and Eleventh Circuits apply

Rule 9(b) as the pleading standard for loss causation." *Hall*, 2019 WL 7207491, at *26. In

newfound disagreement with *Hall*, Plaintiff now argues that the Seventh and Eleventh Circuits *do

not* apply a heightened pleading standard for loss causation. *See* Opp. 13-14. Plaintiff is wrong.

To begin with—like *Hall* itself—both the Ninth Circuit and Fourth Circuit recognize that

the Seventh Circuit's decision in *Tricontinental* applied a heightened pleading standard. *See

Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014); *Katyle v.

Penn Nat. Gaming, Inc.*, 637 F.3d 462, 478 (4th Cir. 2011). And rightly so. In *Tricontinental*, the

Seventh Circuit held that "[t]o plead loss causation, the plaintiff must allege that it was the very

facts about which the defendant lied which caused its injuries," and *rejected* the plaintiff's

contention that it was unnecessary to plead "that the precise fraud that resulted in the underlying

transaction [was] the subject of a later correction in order to satisfy loss causation." 475 F.3d at

842-43 (citation omitted). Indeed, when discussing the common-law fraud claim, the Court

outright stated that "Rule 9(b) requires the plaintiff to state with particularity any circumstances

---

[6] It is also beside the point. *See In re GroupHealth P'ship, Inc.*, 1992 WL 96333, at *2 (E.D. Pa. Apr. 21, 1992) (ruling that the movant had "shown that substantial grounds for difference of opinion exist" because "at least facially, there is a split among courts in different circuits").

14

constituting fraud," including "loss causation." *Id.* at 844 (citation omitted). No surprise, then, that the leading treatise places the Seventh Circuit squarely in the camp of circuits in which "Rule 9(b) governs" loss-causation allegations. 5A WRIGHT & MILLER, FED. PRAC. & PROC. § 1301.1 n.8 (4th ed.); *accord* THOMAS L. HAZEN, LOSS CAUSATION, 4 LAW SEC. REG. § 12:93 n.24 (2025).

As for the Eleventh Circuit, *Sapssov v. Health Management Associates, Inc.*, 608 F. App'x 855 (11th Cir. 2015), seems to apply Rule 9(b), even if opaquely. In a section concluding that "the determinative factor … is whether plaintiffs-appellants adequately alleged loss causation," the decision begins by recognizing that "[a]n action alleging securities fraud is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Id.* at 860-61. It goes on to rigorously examine the loss-causation allegations, ultimately deeming them inadequate. *Id.* at 863-64. Like the court in *Hall*, Defendants read *Sapssov* as applying Rule 9(b),[7] though it is immaterial to the second prong of Section 1292(b) whether four circuits or three go this way.

In sum, "[t]he Circuits have split in the wake of *Dura* as to which rule applies to loss causation." *Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012).[8]

---

[7] Judge Martin concurred only in the judgment, doing so because he was bound by Eleventh Circuit precedent. 608 F. App'x at 864. If *not* so bound, he would have deemed loss causation adequately alleged—like courts that apply Rule 8(a) to loss causation, he interpreted *Dura* as establishing (rather than assuming) no heightened pleading requirements applied. *Id.* at 865-68. Thus, within *Sapssov* there appears to have been a microcosm of the overall circuit split.

[8] While Defendants have not attempted to catalogue them all, there are also district courts that apply Rule 9(b) in circuits where there is no controlling precedent. *See, e.g.*, *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 274 (D. Mass. 2013) ("Rule 9(b) governs loss causation pleading"); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 336 (S.D.N.Y. 2003) ("Rule 9(b) governs the pleading of … loss causation"); *Aquino v. Trupin*, 833 F. Supp. 336, 342 (S.D.N.Y. 1993) (complaint failed "for lack of pleading of loss causation" because it did not make "a showing required by Rule 9(b)"); *Ames v. Uranus, Inc.*, 1993 WL 106896, at *6 (D. Kan. Mar. 17, 1993) (complaint failed to "show 'loss causation'" for "failure to comply with rule 9(b)").

15

### 3.   Plaintiff Does Not Even Attempt to Address the Misinterpretation of *Dura* Underlying the Rule 8(a) Side of the Split

Finally, Plaintiff offers no answer to what the Motion explained: courts on the Rule 8(a) side of the split seemingly fail to recognize that *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), merely *assumed* no heightened pleading standard applied to loss causation, then proceeded to explain why the allegations were inadequate *even with* that assumption. (*See* Mot. 14-15.) Rather than addressing that error, Plaintiff doubles down on it, asserting the "application of Rule 8(a) to … loss causation allegations is well-settled" in light of *Dura*. (*See* Opp. 12.) Per Plaintiff, "faithfully following the Supreme Court's guidance in *Dura*" requires "apply[ing] Rule 8—not Rule 9(b)—to loss-causation allegations." (Opp. 2.) For all the reasons explained in the Motion, in *Katyle*, 637 F.3d at 471 n.5, and *Coyne*, 943 F. Supp. 2d at 274, this simply misreads *Dura*, which held only that loss-causation allegations are *inadequate* if they *do not* satisfy Rule 8(a), not that they are *adequate* if they *do* satisfy Rule 8(a). *See Dura*, 544 U.S. at 346-48.

Nor does Plaintiff make any effort to address the Ninth Circuit's reasoning, laid out in the Motion, for why Rule 9(b) *should* apply to loss-causation: the rule applies to "the circumstances constituting fraud" and loss causation is "part of the circumstances constituting fraud because, without it, a claim of securities fraud does not exist." *See Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 605 (cleaned up); *accord Coyne*, 943 F. Supp. 2d at 274 (same). The Solicitor General likewise urged the Supreme Court to hold in *Dura* that Rule 9(b) governed loss causation because it "is an element of a fraud cause of action," *Brief for the United States as Amicus Curiae Supporting Petitioners*, 2004 WL 2069564, at *14-15 (U.S. Sept. 13, 2004), though the Court declined to resolve the issue. The Seventh Circuit similarly noted that Rule 9(b) speaks to "'the who, what, when, where, *and how*'" of fraud, and loss causation falls within "the last requirement." *Tricontinental*, 475 F.3d at 844 (emphasis added; citation omitted).

16

That Plaintiff has no response to flaws underlying decisions applying Rule 8(a) or the reasons for applying Rule 9(b) further shows that there are reasonable grounds for disagreeing with the Order's application of Rule 8(a).

### C.    Immediate Appeal Would Materially Advance the Litigation

Appellate reversal and dismissal of Plaintiff's misrepresentation claim would materially advance the litigation. Plaintiff's contrary argument rests on three misunderstandings: (1) that Defendants must show an immediate appeal *will* materially advance the litigation, not merely that it *may* do so; (2) that elimination of just one claim cannot materially advance the litigation; and (3) that because an appeal takes time, certification cannot advance litigation. (Opp. 16.)

*First,* contrary to Plaintiff's contention (Opp. 16), Defendants are *not* required to show that "an immediate appeal definitively *will* advance the termination of the litigation," merely that "an immediate appeal *may* materially advance the termination of the litigation." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 2013 WL 6506570, at *3 (M.D. Pa. Dec. 12, 2013); *see* 28 U.S.C. 1292(b) ("may materially advance"); *accord Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.*, 2016 WL 7440471, at *2 (D. Del. Dec. 27, 2016).

*Second*, contrary to Plaintiff's assertion, certifying an issue that might eliminate the misrepresentation claim would be proper even if "[t]he scheme-liability claim [were] independently viable." (Opp. 16-17; *but see supra* pp. 5-6 (explaining why the scheme claim is not independently viable).) In *Mondelli v. United States*, 711 F.2d 567, 567-68 (3d Cir. 1983), the plaintiff brought both a Federal Torts Claims Act ("FTCA") claim and constitutional claims, and the government unsuccessfully moved to dismiss the FTCA claim. Even though it did not resolve the "disposition of [the] constitutional claims," the district court and Third Circuit certified "the question of the applicability of the FTCA claim" because "an interlocutory appeal on that issue

17

would 'materially advance the ultimate termination of the litigation.'" *Id.* at 568 (citation omitted). That is precisely what Plaintiff mistakenly argues is not allowed. (Opp. 16-17.) Indeed, even if an appeal might not dispose of a claim, it can be proper if it may "eliminate" or even "clarify at least one complex issue." *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 2691927, at *5 (E.D. Pa. June 22, 2017) (cleaned up).

*Third*, Plaintiff has it backwards in arguing that because an appeal might delay discovery during the months an appeal is pending, "certification would squander the very 'scarce resources of the court and the parties' that Defendants purport to safeguard." (Opp. 16.) "Certification is more likely to materially advance the litigation where the appeal occurs … before extensive discovery has taken place." *Bedoya*, 2017 WL 4330351, at *3. That is so because clarifying the legal issues and narrowing the claims in a case may save "significant time and resources" from being wasted on "what may be needless discovery." *See Pfizer*, 2017 WL 2691927, at *4-5.

Plaintiff's contention that delaying that discovery is presumptively wasteful depends on the inapposite premise that Plaintiff will inevitably "prevail[] on appeal." *See Crystallex*, 2016 WL 7440471, at *2. But to understand whether an appeal *may* materially advance the litigation, the relevant question is what would happen if *Defendants* prevail, *i.e.*, if the Complaint is deemed to inadequately allege loss causation for the sole remaining challenged statement. That would at a minimum narrow, if not end, the case. Avoiding unnecessary discovery on claims that could be eliminated is the efficiency that cases like *Pfizer* contemplate.

### D.      Further Exceptional Circumstances Are Not Required, But Exist Here

Because the three requirements of Section 1292(b) are met, Defendants have shown that this *is* an exceptional case in which interlocutory review is warranted. No further showing needs to be made to this Court. But, regardless, the Motion explained why certification is especially

warranted here: if Rule 9(b) should have been applied, certification is the only way for a defendant to vindicate the policy concerns behind the heightened pleading standards.

Section 1292(b) "is not limited by its language to 'exceptional' cases," and "it is often used in cases that do not meet the 'exceptional' test." 16 C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3929 (3d ed.). While many cases use the language of "exceptional circumstances," that language is best understood as *describing* the requirements of Section 1292(b), rather than *adding a further requirement to them*. In other words, "exceptional cases [are those] where the order in question 'involves a controlling question of law as to which there is substantial ground for difference of opinion and [where] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *United States v. Garner*, 749 F.2d 281, 286 (5th Cir.), *supplemented*, 752 F.2d 116 (5th Cir. 1985); *see also Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) (en banc) (reviewing the legislative history to describe the "exceptional cases" warranting certification in terms of the statute's "built-in safeguards," namely the three statutory requirements and the deadline for seeking permission from the appellate court). Plaintiff is thus wrong that "[t]he moving party must demonstrate that it meets *all three* independent statutory criteria set forth in § 1292(b) *and* that there are 'exceptional circumstances….'" Opp. 8 (citation omitted).[9]

But even accepting Plaintiff's notion of a fourth requirement, these *are* "exceptional circumstances" even within the universe of cases satisfying the three statutory requirements, because interlocutory appeal would be the only way to vindicate a protection that Congress deemed

---

[9] To be sure, after "*the district judge* certifies the order under § 1292(b), the appellant still 'has the burden of persuading *the court of appeals* that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citation omitted; emphasis added). But that reflects the more open-ended determination made by the appellate court.

19

critical in securities-fraud cases. Section 1292(b) was enacted to allow a means of avoiding "harm to litigants uncorrectable on appeal from a final judgment." *Katz*, 496 F.2d at 753. Certification is thus warranted "in exceptional cases where an immediate appeal may avoid protracted and expensive litigation." *Milbert*, 260 F.2d at 433. Such harm is at stake here:

- Rule 9(b)'s heightened pleading standard is critical to protecting defendants in securities-fraud cases because of the substantial cost of litigating such cases past the pleading stage. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 475-76 (2013); *Merrill Lynch*, 547 U.S. at 80-81; *Burlington*, 114 F.3d at 1418. (Mot. 2-3, 10-11.)

- The Third Circuit has made clear that Rule 9(b) must be "rigorously applied in securities fraud cases," *Burlington*, 114 F.3d at 1417, but has never addressed whether it applies to loss causation. In the absence of such direct precedent, district courts in the Circuit have rejected the strictures of Rule 9(b) in favor of the lenient Rule 8(a) standard. (Opp. 2.)

- Securities-fraud defendants cannot appeal such application of a lower pleading standard except by certification, since the issue becomes moot after the pleading stage. (Mot. 11 (citing *Palmer v. Sanderson*, 9 F.3d 1433, 1435 n.1 (9th Cir. 1993)).)

Surely "exceptional circumstances" exist where district courts are systematically denying what other courts deem a critical protection to which securities-fraud defendants are entitled, but those defendants cannot challenge that denial absent certification. If the Court concludes the three requirements of Section 1292(b) are satisfied, those are the exceptional circumstances here.

Additionally, whether to apply Rule 9(b) to loss causation "involves a split of authority and has the potential to arise in future disputes," which shows that "exceptional circumstances are present and certification is warranted." *See Miller*, 2013 WL 6506570, at *3. That is especially true given that Congress was concerned about uniformity in how Rule 9(b) was applied in securities-fraud cases. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319-20 (2007).

## <u>CONCLUSION</u>

Defendants respectfully request that the Court grant the Motion and certify the Order.

Dated: September 15, 2025

Respectfully submitted,

By: */s/ Mark R. Yohalem*
Mark R. Yohalem (CA 243596) (*pro hac vice*)
Madelyn Y. Chen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
mark.yohalem@wsgr.com

Nina F. Locker (*pro hac vice*)
Evan L. Seite (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
nlocker@wsgr.com

Sheryl Shapiro Bassin (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
sbassin@wsgr.com

William Pietragallo, II (PA I.D. # 16413)
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 263-1818
Facsimile: (412) 263-4200
wp@pietragallo.com

*Counsel for Defendants Mylan N.V., Heather Bresch, Rajiv Malik, and Kenneth Parks*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, a true and correct copy of the foregoing document was filed via the Electronic Case Filing (ECF) System, which will be forwarded to all counsel of record.

WILSON SONSINI GOODRICH & ROSATI, P.C.

By: *Mark R. Yohalem*
Mark R. Yohalem