**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE MYLAN, N.V. SECURITIES LITIGATION | Master File No. 2:20-cv-00955-NR<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ....................................................................................................................... 4

I.    PLAINTIFF'S COUNSEL ARE ENTITLED TO COMPENSATION FROM
      THE COMMON FUND ............................................................................................ 4

II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE
      COMMON FUND .................................................................................................... 5

III.  THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
      PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD ............ 6

      A.    The Requested Fee Is Reasonable Under the Percentage-of-Recovery
            Method .......................................................................................................... 6

      B.    The Reasonableness of the Requested Fee Is Confirmed by a Lodestar
            Cross-Check .................................................................................................. 8

IV.   THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT
      CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ................ 10

      A.    The Size of the Common Fund Created and the Number of Persons
            Benefited Support Approval of the Fee Request ................................................. 11

      B.    The Reaction of Settlement Class Members to the Settlement and Fee
            Request to Date Supports Approval of the Fee Request...................................... 11

      C.    The Skill and Efficiency of Plaintiff's Counsel Support Approval of the Fee
            Request.......................................................................................................... 12

      D.    The Complexity and Duration of the Litigation Support Approval of the Fee
            Request.......................................................................................................... 13

      E.    The Risk of Non-Payment Supports Approval of the Fee Request ...................... 14

      F.    The Significant Time Devoted to This Case by Plaintiff's Counsel Supports
            Approval of the Fee Request............................................................................ 15

      G.    The Requested Fee of 25% of the Settlement Fund Is Within the Range of
            Fees Typically Awarded in Actions of This Nature ............................................ 16

      H.    The Fact That the Benefits of the Settlement Are Attributable to the Efforts
            of Plaintiff's Counsel Supports Approval of the Fee Request............................. 16

I.      The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request .................................................................................................. 17

V.    LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED .................................................. 17

VI.   LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4) ...................................................................... 19

VII.  CONCLUSION ........................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE(S)**

*In re Advanced Auto Parts, Inc. Sec. Litig.*,
   No. 1:18-cv-0212-RTD-SRF, slip op. (D. Del. June 13, 2022), Dkt. No. 367 ..........................7

*In re Aetna Inc. Sec. Litig.*,
   2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...............................................................................7

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)...........................................................................................7, 12

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)...........................................................................................5, 8, 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).................................................................................................................4

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005).................................................................................................4, 6

*Chabot v. Walgreens Boots Alliance, Inc.*,
   2024 WL 3250930 (M.D. Pa. Feb. 7, 2024) .....................................................................7, 20

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................................................13

*Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
   739 F. Supp. 3d 270 (E.D. Pa. 2024) ......................................................................................6

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009)..............................................................................................10, 11

*In re EQT Corp. Sec. Litig.*,
   No. 2:19-cv-00754-RJC, slip op. (W.D. Pa. Nov 4. 2025), Dkt. No. 566 ...............................7

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*,
   2025 WL 3771284 (D.N.J. Dec. 31, 2025) ..............................................................................9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).......................................................................................................6

*In re Genta Sec. Litig.*,
   2008 WL 2229843 (D.N.J. May 28, 2008) .............................................................................13

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)................................................................................................5, 10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................................11

*Howard v. Arconic Inc.*,
    2023 WL 12126792 (W.D. Pa. Aug. 9, 2023) ....................................................................6, 20

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..................................................................................... *passim*

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
    No. 2:20-cv-02155-SRC-CLW, slip op. (D.N.J. Apr. 22, 2024), Dkt. No. 196 ........................6

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013).................................................................................................6

*Jackson v. Wells Fargo Bank, N.A.*,
    136 F. Supp. 3d 687 (W.D. Pa. 2015)......................................................................................9

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ...............................................................................6

*Lanni v. New Jersey*,
    259 F.3d 146 (3d Cir. 2001).....................................................................................................9

*In re Linerboard Antitrust Litig.*,
    2004 WL 1221350 (E.D. Pa. June 2, 2004) ............................................................................11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................................19, 20

*McDermid v. Inovio Pharms., Inc.*,
    2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ......................................................................7, 9, 20

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)................................................................................................................9

*In re Novo Nordisk Sec. Litig.*,
    No. 3:17-cv-00209-ZNQ-LHG, slip op. (D.N.J. July 13, 2022), Dkt. No. 361 ........................7

*In re Ocean Power Techs., Inc.*,
    2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................................................5, 17

*Odeh v. Immunomedics, Inc.*,
    No. 2:18-cv-17645-ESK, slip op. (D.N.J. June 15, 2023), Dkt. No. 286 .................................6

*Pelletier v. Endo Int'l plc*,
    2022 WL 888813 (E.D. Pa. Mar. 25, 2022)..............................................................................7

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)......................................................................8, 9, 10, 16

*In re Ravisent Techs., Inc. Sec. Litig.*,
2005 WL 906361 (E.D. Pa. Apr. 18, 2005) .............................................................10

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)........................................................................9

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................................7, 10

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)...................................................................................5, 8

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) ...........................................................................17

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*,
2017 WL 11917433 (D. Del. July 18, 2017) .............................................................7

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012)...............................................................15

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013)......................................................7, 8, 9, 20

*Schuler v. Medicines Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016) ..........................................................4, 11

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ...........................................................8, 9

*Strougo v. Mallinckrodt plc*,
2025 WL 1805498 (D.N.J. Apr. 25, 2025) ................................................................6

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2011)...................................................................................5, 8

*Trief v. Dun & Bradstreet Corp.*,
840 F. Supp. 277 (S.D.N.Y. 1993) ..........................................................................14

*In re U. S. Steel Consol. Cases*,
2023 WL 11997192 (W.D. Pa. Mar. 21, 2023) .....................................................7, 20

*In re ViroPharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016)....................................................11, 17, 18

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................12, 14

*In re Wilmington Tr. Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) ......................................................6, 7

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................5

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...........................................................18

**STATUTES**

The Private Securities Litigation Reform Act of 1995,
    15 U.S.C. § 78u-4 ................................................................................... *passim*

**OTHER AUTHORITIES**

Edward Flores, Svetlana Starykh & Ivelina Velikova, NERA ECONOMIC
    CONSULTING, RECENT TRENDS IN SECURITIES CLASS ACTION:
    2025 FULL-YEAR REVIEW (2026) ...........................................................7

Court-appointed Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Kessler Topaz Meltzer & Check, LLP ("KTMC"), respectfully submit this memorandum of law in support of their Motion for: (i) an award of attorneys' fees for all Plaintiff's Counsel[1] in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded; (ii) payment of $336,455.69 in litigation expenses reasonably and necessarily incurred by Plaintiff's Counsel in prosecuting and resolving the Action; and (iii) an award of $13,500 to reimburse Lead Plaintiff for the costs it incurred directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a $60 million cash payment for the benefit of the Settlement Class, is an excellent result that Lead Plaintiff the Public Employees' Retirement System of Mississippi ("Lead Plaintiff" or "MissPERS") achieved only after five years of hard-fought litigation by Plaintiff's Counsel. The Settlement is a direct result of the skill, tenacity, and effective advocacy of Plaintiff's Counsel who litigated this Action against highly skilled defense counsel on a fully contingent basis. Plaintiff's Counsel prosecuted the Action and obtained the

---

[1] "Plaintiff's Counsel" refers collectively to Lead Counsel, BLB&G and KTMC; Lead Plaintiff's current liaison counsel, Flannery Georgalis, LLC; Lead Counsel's former liaison counsel, Weiss Burkardt Kramer LLC; and additional counsel for Lead Plaintiff, Davidson Bowie, PLLC.

[2] Capitalized terms that are not defined in this memorandum of law have the same meanings as set forth in the Stipulation and Agreement of Settlement dated February 13, 2026 (Dkt. No. 149-1) ("Stipulation") or in the Joint Declaration of Katherine M. Sinderson and Andrew L. Zivitz in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶__" herein refer to paragraphs in the Joint Declaration and citations to "Ex. __" herein refer to exhibits to the Joint Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

Settlement in the face of significant challenges to proving both liability and damages that posed a serious risk that there might be no recovery at all.

As detailed in the accompanying Joint Declaration,[3] Plaintiff's Counsel vigorously pursued the claims in this Action for the benefit of the Settlement Class for more than five years. Among other things, Plaintiff's Counsel: (a) conducted an extensive investigation into the claims, which included interviewing over 400 potential witnesses and performing a thorough review of publicly available information about the claims; (b) drafted the detailed 129-page Consolidated Class Action Complaint ("Complaint") based on this extensive factual investigation; (c) opposed and defeated in part Defendants' Motion to Dismiss the Complaint through detailed briefing and oral argument; (d) fully briefed and argued additional pleading-stage motions, including a Motion to Clarify and in opposition to Defendants' Motion for Judgment on the Pleadings; (e) briefed Lead Plaintiff's opposition to Defendants' Motion to Certify a question for interlocutory appeal (which was pending at the time of settlement); (f) worked with experts in the areas of FDA regulation, loss causation, and damages; (g) conducted pre-mediation discovery; and (h) participated in vigorous arm's-length negotiations, which included the preparation and exchange of detailed mediation statements and a full-day mediation session before Jed Melnick of JAMS. ¶¶ 5, 16-45.

The Settlement achieved through Plaintiff's Counsel's efforts is a particularly favorable result when considered in light of the substantial litigation risks Lead Plaintiff faced, including the risks associated with proving Defendants' liability and establishing loss causation and the

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things, the history of the Action and a description of the services Plaintiff's Counsel provided for the benefit of the Settlement Class (¶¶ 16-46); the nature of the claims asserted (¶¶ 14-15, 20); the negotiations leading to the Settlement (¶¶ 40-45); the risks and uncertainties of the litigation (¶¶ 47-72); and the facts and circumstances underlying Lead Counsel's request for an award of attorneys' fees and expenses (¶¶ 87-117).

Settlement Class's full amount of damages. These risks are detailed in the Joint Declaration at paragraphs 47 to 72 and are summarized in the memorandum of law supporting the Settlement. These risks posed a real possibility from the outset of the Action that Lead Plaintiff and the Settlement Class might not recover anything at all.

As compensation for their efforts on behalf of the Settlement Class and for the risk of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel now seek an award of attorneys' fees for all Plaintiff's Counsel in the amount of 25% of the Settlement Fund, net of Litigation Expenses. As detailed herein, the requested fee is consistent with the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. Further, the requested fee represents a multiplier of approximately 2.03 on Plaintiff's Counsel's total lodestar, which is well within the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

The fee request also has the support of Lead Plaintiff, a sophisticated institutional investor that actively supervised and participated in the Action. *See* Declaration of Laken Ryals on behalf of MissPERS (Ex. 2) ("Ryals Decl."), at ¶¶ 3-6, 8. Lead Plaintiff fully supports the fee request as reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id.* ¶ 8. In addition, while the May 15, 2026 deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date no objections have been received. Lead Counsel will address any objections to the requested attorneys' fees and expenses in their reply papers, which will be filed by June 1, 2026.

Lead Counsel also seek to recover the Litigation Expenses that Plaintiff's Counsel incurred in prosecuting and resolving the Action, which total $336,455.69. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of this complex

3

litigation and are of the type that are routinely charged to clients in non-contingent litigation. The largest component of these expenses, roughly 54%, relate to expert costs, including experts in FDA regulation, loss causation, and damages. Finally, Lead Counsel also request that Lead Plaintiff be granted an award as provided for under the PSLRA in the amount of $13,500 in reimbursement for the substantial time that MissPERS's representatives in the Mississippi Office of the Attorney General dedicated to the Action.

For all the reasons set forth herein and in the Joint Declaration, Lead Counsel respectfully submit that the requested attorneys' fees and Litigation Expenses are fair and reasonable under applicable legal standards and, therefore, should be awarded by the Court.

## ARGUMENT

### I.   PLAINTIFF'S COUNSEL ARE ENTITLED TO COMPENSATION FROM THE COMMON FUND

It is well settled that an attorney who maintains a lawsuit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that common fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation"); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009)); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here

4

is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

Indeed, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

## II.     THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Settlement Class and utilize a lodestar cross-check to confirm that the fee is reasonable. In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund. *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure'"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016). Moreover, the use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C.

§ 78u-4(a)(6); *see also Cendant Corp.*, 404 F.3d at 188 n.7 ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### III.    THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD

#### A.    The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested 25% fee is reasonable and consistent with typical requests for awards of attorneys' fees under the percentage-of-recovery method. While there is no absolute rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D. at 194. Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery"); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same); *see also In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (finding 28% to be a "typical fee percentage" in the Third Circuit).

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in this Circuit supports the reasonableness of the requested 25% fee. *See, e.g.*, *Strougo v. Mallinckrodt plc*, 2025 WL 1805498, at *1 (D.N.J. Apr. 25, 2025) (awarding 33.3% of $46 million settlement); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, No. 2:20-cv-02155-SRC-CLW, slip op. at 2 (D.N.J. Apr. 22, 2024), Dkt. No. 196 (Ex. 8A) (awarding 25% of $85 million settlement); *Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 739 F. Supp. 3d 270, 285 (E.D. Pa. 2024) (awarding 25% of $60.83 million settlement, including $51 million in cash and stock valued at $9.83 million); *Howard v. Arconic Inc.*, 2023 WL 12126792, at *1 (W.D. Pa. Aug. 9, 2023) (awarding 33.3% of $74 million settlement); *Odeh v. Immunomedics, Inc.*, No. 2:18-

6

cv-17645-ESK, slip op. at 2 (D.N.J. June 15, 2023), Dkt. No. 286 (Ex. 8B) (awarding 29.5% of $40 million settlement); *In re U. S. Steel Consol. Cases*, 2023 WL 11997192, at *1 (W.D. Pa. Mar. 21, 2023) (awarding 33.3% of $40 million settlement); *McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *11-12 (E.D. Pa. Jan. 18, 2023) (awarding 27.5% of $44 million settlement); *In re Advanced Auto Parts, Inc. Sec. Litig.*, No. 1:18-cv-0212-RTD-SRF, slip op. at 2 (D. Del. June 13, 2022), Dkt. No. 367 (Ex. 8C) (awarding 25% of $49.25 million settlement); *Pelletier v. Endo Int'l plc*, 2022 WL 888813, at *3 (E.D. Pa. Mar. 25, 2022) (awarding 25% of $63.4 million settlement); *San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 2017 WL 11917433, at *1 (D. Del. July 18, 2017) (awarding 25% of $74 million settlement); *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *14-16 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.5 million settlement).

Indeed, fee awards of 25% or more are common even in considerably larger settlements in this Circuit. *See, e.g.*, *In re EQT Corp. Sec. Litig.*, No. 2:19-cv-00754-RJC, slip op. at 2 (W.D. Pa. Nov 4. 2025), Dkt. No. 566 (Ex. 8D) (awarding 28% of $167.5 million settlement); *Chabot v. Walgreens Boots Alliance, Inc.*, 2024 WL 3250930, at *1 (M.D. Pa. Feb. 7, 2024) (awarding 30% of $192.5 million settlement); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-ZNQ-LHG, slip op. at 2 (D.N.J. July 13, 2022), Dkt. No. 361 (Ex. 8E) (awarding 29% of $100 million settlement); *Wilmington Tr.*, 2018 WL 6046452, at *9 (awarding 28% of $210 million settlement); *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *57 (D.N.J. Oct. 1, 2013) (awarding 28% of $215 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 130-31 (D.N.J. 2002) (awarding 28% of $194 million settlement); *Ikon*, 194 F.R.D. at 192-97 (awarding 30% of $111 million settlement). *See also* Edward Flores, Svetlana Starykh & Ivelina Velikova, NERA ECONOMIC CONSULTING, RECENT TRENDS IN

7

SECURITIES CLASS ACTION: 2025 FULL-YEAR REVIEW, at 31 (2026) (Ex. 8F) (analysis showing that, from 2016 through 2025, the median fee award in all securities class action settlements between $25 million and $100 million was 25%).

### B.      The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[4] "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *Schering-Plough*, 2013 WL 5505744, at *33.

In complex contingent litigation such as this Action, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (lodestar multipliers "compensate counsel for the risk of assuming the representation on a contingency fee basis"). Courts typically approve fees in class cases that correspond to *positive* multiples of one to four times the lodestar, and sometimes more. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent*

---

[4]  Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

8

*Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

Here, the lodestar cross-check supports the reasonableness of the requested fee percentage. As detailed in the Joint Declaration, Plaintiff's Counsel spent a total of 9,018.9 hours of attorney and other professional time prosecuting the Action. ¶ 96. Plaintiff's Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney, paralegal, or other professional by his or her current hourly rate, is $7,358,731.50. *Id.* [5] The requested fee of 25% of the Settlement Fund, net of Litigation Expenses, will come to $14,912,511, if Litigation Expenses are awarded in the amount requested, plus interest earned on that amount at the same rate earned on the Settlement Fund. *Id.* Thus, the requested fee represents a multiplier of approximately 2.03 on Plaintiff's Counsel lodestar.

The requested 2.03 multiplier is well within the range commonly awarded in comparable cases. *See Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, 2025 WL 3771284, at *17 (D.N.J. Dec. 31, 2025) (approving a 2.15 multiplier, over objection, and finding it to be "within the range of multipliers used by courts within this Circuit"); *Inovio Pharms.*, 2023 WL 227355, at *13 (approving fee representing a multiplier of 2.69 and finding it "well within the range of reasonableness recognized by courts"); *Stevens*, 2020 WL 996418, at *13 (approving multiplier of 6.16); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 717 (W.D. Pa. 2015) (a 2.83 multiplier "confirms the reasonableness" of the requested fee); *In re Rent-Way Sec. Litig.*, 305 F.

---

[5] The Supreme Court, Third Circuit, and district courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Schering-Plough*, 2013 WL 5505744, at *33 n.28 ("In utilizing the blended billing rates to calculate the lodestar, the courts allow the use of current billing rates at the time the calculation is made rather than the billing rates actually in effect at the time the hours were recorded.").

Supp. 2d 491, 517 (W.D. Pa. 2003) ("A multiplier of 2.36 is well within the range typically approved by federal courts in this circuit."); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at \*12 (E.D. Pa. Apr. 18, 2005) (approving 3.1 multiplier and nothing that multipliers of "less than four are well within the range awarded by courts in this Circuit"); *Rite Aid*, 362 F. Supp. 2d at 589-90 (reaffirming fee award of 25% of $126.6 million settlement with 6.96 multiplier); *Ikon*, 194 F.R.D. at 195 (approving a 2.7 multiplier and noting it was "well within the range of those awarded in similar cases").

Accordingly, the 25% fee requested here is reasonable under both the percentage-of-recovery method and the lodestar cross-check.

## IV.    THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court should consider the following factors in determining a fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541 (citing *Gunter*, 223 F.3d at 195, n.1; *Prudential*, 148 F.3d at 336-40).

These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor

10

may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *see Schuler*, 2016 WL 3457218, at \*9. Each

of these factors supports the 25% fee requested by Lead Counsel here.

> **A.    The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request**

Courts have consistently recognized that the result achieved is a major factor to be

considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most

critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, 2016 WL

312108, at \*16 (E.D. Pa. Jan. 25, 2016).

Here, Plaintiff's Counsel secured a Settlement that provides for a substantial, certain, and

near-term payment of $60 million. To date, the Claims Administrator, JND Legal Administration

("JND"), has mailed or emailed 366,113 copies of the Postcard Notice to potential Settlement

Class Members and their nominees. *See* Declaration of Luiggy Segura (Ex. 5) ("Segura Decl."), at

¶ 11. Accordingly, while the claim-submission deadline is not until July 10, 2026, a large number

of Settlement Class Members can be expected to benefit from the Settlement. *See In re Linerboard

Antitrust Litig.*, 2004 WL 1221350, at \*5 (E.D. Pa. June 2, 2004), *amended*, 2004 WL 1240775

(E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities

that were sent the notice describing the [Settlement]").

> **B.    The Reaction of Settlement Class Members to the Settlement and Fee Request to Date Supports Approval of the Fee Request**

Notice of the Settlement has been sent to over 366,000 potential Settlement Class Members

or their nominees, published in *The Wall Street Journal* and over *PR Newswire*, and posted on the

Settlement website as well as on Lead Counsel's websites. All of the notices stated that Lead

Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the

Settlement Fund and advised Settlement Class Members that they could object to the Settlement

or fee request. *See* Postcard Notice (Segura Decl. Ex. 1), at 2; Notice (Segura Decl. Ex. 2), at ¶¶ 5,

51; Summary Notice (Segura Decl. Ex. 3). While the May 15, 2026 objection deadline set by the Court has not yet passed, as noted above, no objections have been received to date.

### C. The Skill and Efficiency of Plaintiff's Counsel Support Approval of the Fee Request

Plaintiff's Counsel's efforts have resulted in a favorable outcome for the benefit of the Settlement Class. *See AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)). The substantial and certain recovery obtained for the Settlement Class is the direct result of the significant efforts of highly-skilled attorneys who possess substantial experience in the prosecution of complex securities class actions.[6] Plaintiff's Counsel's success in identifying confidential witnesses through their investigation and overcoming in part Defendants' Motion to Dismiss and other pleading motions in a case with very substantial risks, all created the circumstances under which Lead Plaintiff was able to obtain the $60 million cash Settlement. In addition, Plaintiff's Counsel's reputation as attorneys who will zealously pursue a meritorious case through trial further enabled them to negotiate the favorable recovery for the benefit of the Settlement Class.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Plaintiff's Counsel. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendants were represented ably by Wilson Sonsini Goodrich & Rosati, P.C., who

---

[6] The experience of Lead Counsel, Flannery Georgalis, LLC, and Davidson Bowie, PLLC is set forth in their firm resumes, which are attached to the Joint Declaration within Exhibits 6A, 6B, 6C, and 6D.

vigorously opposed Lead Counsel at every step of the Action. ¶ 99. The ability of Lead Counsel to obtain a favorable outcome for the Settlement Class in the face of this formidable legal opposition further confirms the quality of Lead Counsel's representation.

### D. The Complexity and Duration of the Litigation Support Approval of the Fee Request

The complexity and duration of the litigation also support approval of the requested fee. Securities litigation, like this Action, is regularly acknowledged to be particularly complex and expensive, usually requiring expert testimony on several issues, including loss causation and damages. *See, e.g.*, *In re Genta Sec. Litig.*, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would [be] lengthy and costly to the parties.").

Here, the $60 million recovery is very favorable in light of the complexity of this Action and the significant risks that the Settlement Class has already faced and would continue to face by litigating their claims to trial. At the time of settlement, this Action had already advanced through a hard-fought and extended pleadings stage, but in the absence of settlement, Lead Plaintiff and its counsel would have been required to engage in substantial additional work, including through extensive fact and expert discovery, a class certification motion, an expected summary judgment motion, pretrial motions, and then the trial itself, which would be expensive and uncertain, and would require a substantial amount of fact and expert testimony.

Finally, even if the jury returned a favorable verdict at trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process.

Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the expected length, expense, and complexity of this securities case—especially when compared to the significant and certain recovery achieved by the Settlement—Lead Counsel's fee request is reasonable and this factor weighs in favor of its approval.

### E.    The Risk of Non-Payment Supports Approval of the Fee Request

Lead Counsel undertook this Action on an entirely contingent basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. As explained in detail in the Joint Declaration, Lead Counsel faced significant risks in this case from the outset that could have resulted in no recovery or a recovery smaller than the Settlement Amount, namely with regard to proving falsity, scienter, loss causation, and damages. ¶¶ 53-64. Moreover, substantial risks remained when the Settlement was reached. *Id.*

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases). This is particularly true in securities litigation, such as this Action, because securities litigation has long been regarded as "notably difficult and notoriously uncertain." *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Plaintiff's Counsel have not been compensated for any of their time or expenses since the case began—more than five years ago. Since that time, Plaintiff's Counsel have expended over 9,000 hours in the prosecution of this Action with a resulting lodestar of approximately $7.4

million and have incurred over $340,000 in Litigation Expenses. ¶¶ 96, 107. "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that a successful result would be realized only after considerable and difficult effort. This factor strongly favors approval of the requested fee.

**F.      The Significant Time Devoted to This Case by Plaintiff's Counsel Supports Approval of the Fee Request**

As set forth above, since the inception of the case, Plaintiff's Counsel have expended over 9,000 hours prosecuting this Action for the benefit of the Settlement Class. ¶ 96. As more fully discussed above and in the Joint Declaration, this Action was vigorously litigated and defended. This includes, *inter alia*: (a) filing the initial complaint in the Action in June 2020; (b) conducting an extensive investigation into the alleged fraud, including interviewing over 400 potential witnesses (*i.e.*, former employees of Mylan and other industry participants), and thoroughly reviewing publicly-available information about the claims, including Mylan's filings with the SEC, analyst reports, conference call transcripts, and news articles; (c) drafting the detailed 129-page Complaint based on Lead Counsel's extensive factual investigation; (d) opposing Defendants' Motion to Dismiss the Complaint, through extensive briefing and oral argument; (e) fully briefing and arguing additional pleading-stage motions, including Lead Plaintiff's Motion to Clarify and Defendants' Motion for Judgment on the Pleadings; (f) briefing Lead Plaintiff's opposition to Defendants' Motion to Certify a question for interlocutory appeal; (g) working with experts in the areas of FDA regulation, loss causation, and damages during various stages of the litigation; (h) conducting pre-mediation discovery consisting of the review of tens of thousands of

15

pages produced by Mylan; (i) preparing and exchanging detailed mediation statements; (j) participating in vigorous arm's-length settlement negotiations, including a formal mediation session with Jed Melnick of JAMS; and (k) drafting and negotiating a Term Sheet, the Stipulation setting out the terms of the Settlement, and related documentation. ¶¶ 16-46. At all times, Lead Counsel conducted their work with skill and efficiency, conserving resources and avoiding duplication of efforts. The foregoing represents a significant commitment of time, personnel, and out-of-pocket expenses by Plaintiff's Counsel while taking on the substantial risk of recovering nothing for their efforts.

### G. The Requested Fee of 25% of the Settlement Fund Is Within the Range of Fees Typically Awarded in Actions of This Nature

As discussed above in Part III, the requested 25% fee is well within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor strongly supports approval of the requested fee.

### H. The Fact That the Benefits of the Settlement Are Attributable to the Efforts of Plaintiff's Counsel Supports Approval of the Fee Request

In determining the appropriate fee, Third Circuit courts also consider whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing. *See Prudential*, 148 F.3d at 338. Here, there were no parallel enforcement actions or prosecutions by the SEC or the U.S. Department of Justice that benefitted counsel. Accordingly, Lead Counsel respectfully submit that creation of the Settlement here is the result of Plaintiff's Counsel's vigorous pursuit of Lead Plaintiff's claims through more than five years of litigation, not the by-product of any governmental investigation. This factor further supports the reasonableness of the requested fee award. *See AT&T*, 455 F.3d at 173 ("Here, class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing

16

to class members is properly attributable to the efforts of class counsel. This strengthens the . . . conclusion that the fee award was fair and reasonable.").

### I. The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request

A 25% fee is also consistent—or below—typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Thus, Lead Counsel's requested fee of 25% of the Settlement Fund is fully consistent with these private standards.

*    *    *

Accordingly, when considered under the Third Circuit's factors, Lead Counsel's requested fee of 25% of the Settlement Fund is fair and reasonable.

### V. LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Counsel also respectfully request that this Court approve payment of $336,455.69 for Litigation Expenses that Plaintiff's Counsel incurred in connection with this Action. All of these expenses, which are set forth in declarations submitted by Plaintiff's Counsel, were reasonably necessary for the prosecution and settlement of this Action. Counsel in a class action are entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

17

The expenses for which Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, expert/consultant fees, mediation fees, document management costs, online legal and factual research, photocopying, and postage expenses. *See Viropharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

The largest category of Plaintiff's Counsel's expenses was for the retention of Lead Plaintiff's experts and consultants, which totaled $182,862.62, or approximately 54% of Plaintiff's Counsel's Litigation Expenses. Plaintiff's Counsel also incurred a total of $105,293.58 for the costs of on-line factual and legal research, which together accounted for approximately 31% of the total expenses. Lead Plaintiff's share of the mediation costs paid to JAMS for the services of Mr. Melnick totaled $23,715.00 or 7% of Plaintiff's Counsel's Litigation Expenses.

A complete breakdown by category of the expenses incurred by Plaintiff's Counsel is set forth in Exhibit 7 to the Joint Declaration. These expense items are recorded separately by Plaintiff's Counsel, and such charges are not duplicated in the firms' hourly rates.

The notices informed potential Settlement Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $500,000. *See* Postcard Notice (Segura Decl. Ex. 1), at 2; Notice (Segura Decl. Ex. 2), at ¶¶ 5, 51; Summary Notice (Segura Decl. Ex. 3). The total amount of Litigation Expenses requested is $349,955.69, which includes Plaintiff's Counsel's request for $336,455.69 and Lead Plaintiff's request for $13,500 under the

18

PSLRA, as discussed below, and this amount is well below the maximum expense figure included in the notices. To date, there has been no objection to the maximum expense figure in the notices.

## VI.  LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS UNDER 15 U.S.C. § 78u-4(a)(4)

In connection with their request for an award of Litigation Expenses, Lead Counsel also seek an award to Lead Plaintiff for the costs it incurred directly related to its representation of the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Here, Lead Plaintiff seeks an award of $13,500 based on the substantial amount of time that attorneys in the Mississippi Office of the Attorney General ("OAG") who represented MissPERS dedicated to furthering and supervising the Action. *See* Ryals Decl. (Ex. 3) at ¶¶ 6, 9-11.

Lead Plaintiff took an active role in the Action and has been fully committed to pursuing the claims on behalf of the Settlement Class since the outset. During the course of the Action, OAG personnel dedicated a substantial number of hours to the Action by, among other things: meeting and communicating with Lead Counsel regarding case strategy and developments; reviewing and commenting on pleadings and briefs filed in the Action; consulting with Lead Counsel regarding settlement negotiations; and evaluating and approving the proposed Settlement. *See* Ryal Decl. ¶¶ 6, 10-11. These efforts required Lead Plaintiff's representatives to dedicate considerable time and resources to the Action that they would otherwise have devoted to their regular duties.

Numerous courts have approved reasonable awards to compensate plaintiffs for the time and effort they spent on behalf of a class. In *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney

General's Office and $70,000 to certain Ohio pension funds to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at \*21. As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Id.*; *see also Walgreens Boots*, 2024 WL 3250930, at \*2 (awarding a total of $50,000 to Lead Plaintiffs for "time they spent directly related to their representation of the Class"); *Inovio Pharms*., 2023 WL 227355, at \*13 (awarding a total of $153,000 in PSLRA awards to two plaintiffs); *Arconic*, 2023 WL 12126792, at \*2 (approving awards of $65,000 in total to lead plaintiffs in PSLRA action); *U.S. Steel*, 2023 WL 11997192, at \*1 (approving awards of $80,000 in total to plaintiffs in PSLRA action); *Schering-Plough*, 2013 WL 5505744, at \*37-38 (approving awards of $102,447 to lead plaintiffs in PSLRA action).

The award sought by Lead Plaintiff is reasonable and justified under the PSLRA based on the significant amount of time OAG employees devoted to the Action on behalf of MissPERS and should be granted.

## VII.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, net of Litigation Expenses awarded; $336,455.69 in payment of the Plaintiff's Counsel's Litigation Expenses; and $13,500 in reimbursement of Lead Plaintiff's costs incurred in representing the Settlement Class in the Action.

Dated: May 1, 2026                    Respectfully submitted,

                                      **BERNSTEIN LITOWITZ BERGER &**
                                      **GROSSMANN LLP**

                                      By: */s Katherine M. Sinderson*
                                      Katherine M. Sinderson (admitted *Pro Hac Vice*)
                                      Salvatore J. Graziano (admitted *Pro Hac Vice*)
                                      1251 Avenue of the Americas
                                      New York, NY 10020
                                      Telephone: (212) 554-1400
                                      Facsimile: (212) 554-1444
                                      Email: katiem@blbglaw.com
                                              salvatore@blbglaw.com

                                      **KESSLER TOPAZ MELTZER**
                                      **& CHECK, LLP**

                                      By: */s Andrew L. Zivitz*
                                      Andrew L. Zivitz (PA I.D. # 76554) (*Pro Hac Vice*)
                                      David A. Bocian (PA I.D. # 315542) (*Pro Hac Vice*)
                                      Nathaniel C. Simon (PA I.D. # 326467)
                                      280 King of Prussia Road
                                      Radnor, PA 19087
                                      Telephone: (610) 667-7706
                                      Facsimile: (610) 667-7056
                                      Email: azivitz@ktmc.com
                                              dbocian@ktmc.com
                                              nsimon@ktmc.com

                                      Jennifer L. Joost (PA I.D. # 204193) (*Pro Hac Vice*)
                                      One Sansome Street, Suite 1850
                                      San Francisco, CA 94104
                                      Telephone: (415) 400-3000
                                      Facsimile: (415) 400-3001
                                      Email: jjoost@ktmc.com

                                      *Lead Counsel for Lead Plaintiff*
                                      *and the Settlement Class*

21

**DAVIDSON BOWIE, PLLC**
John Davidson (admitted *Pro Hac Vice*)
1062 Highland Colony Parkway, Suite 275
Ridgeland, MS 39157
Telephone: (601) 932-0028
Email: jdavidson@dbslawfirm.net

*Additional Counsel for Lead Plaintiff*


**FLANNERY GEORGALIS, LLC**
Colin Callahan (PA I.D. # 328033)
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 254-8602
Email: ccallahan@flannerygeorgalis.com

*Liaison Counsel for Lead Plaintiff*
*and the Settlement Class*

22

## CERTIFICATE OF SERVICE

I, Katherine M. Sinderson, hereby certify that on May 1, 2026, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's CM/ECF automated filing system.

*/s/ Katherine M. Sinderson*
Katherine M. Sinderson

23